**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DOUGLAS K. JOOS, JR., and
CPR LLC,

Plaintiffs, Case No. 8:25-cv-03368-TPB-AEP

v.

SAMI HALABI and
CPR CERTIFICATION, LLC,

Defendants.
_______________________________/

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Douglas K. Joos, Jr., and CPR LLC, by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, Local Rule 3.01, and the Court's Order permitting summary judgment motions pertaining to liability (Doc. 44), move for partial summary judgment on liability as to Counts I, II, V, VI, VIII, IX, and X of the Second Amended Complaint (Doc. 38) and as to Defendants' affirmative defenses to liability, and state as follows:

## I. INTRODUCTION

This dispute is about the two logos below, and the persistent marketplace confusion between them:

When Joos and Halabi dissolved their partnership, the Dissolution Agreement gave Joos sole ownership of the business's logo (left) and required Halabi to adopt a different design that could not incorporate it. Doc. 38-1 ¶ 7. Halabi instead began using the logo on the right. Plaintiffs contend that Defendants' use of that logo is not only a breach of the Agreement but also infringement of CPR LLC's trademark rights in the Logo. Plaintiffs ask the Court to rule as a matter of law that Defendants are liable on Counts I, II, V, VI, VIII, IX, and X, and that their affirmative defenses to liability fail, leaving damages for trial.

## II. STATEMENT OF MATERIAL AND UNDISPUTED FACTS

### <u>The Parties and the Logo</u>

1. Joos runs CPR LLC, a nationwide CPR training company. **Ex. 1** ¶¶ 2-4.

2. Defendant Sami Halabi is the sole member and owner of Defendant CPR Certification, LLC ("Defendant Company"). Doc. 45 ¶¶ 3-4, 27. The two companies sell "related goods and services." **Ex. 2** at 26:10-13.

3. From 2015, Joos and Halabi operated a CPR training business, later Fit Industries, LLC ("Fit"), under the logo below (the "Logo"):

CERTIFICATION CPR

Joos created the Logo from a design Halabi commissioned from a Fiverr artist on September 8, 2015, and it was in use by January 2016. **Ex. 1** ¶¶ 6-8; **Ex. 3**; Doc. 45 ¶¶ 12-14; **Ex. 4** ¶¶ 8-9; **Ex. 5**, No. 5, at 5.

## The Dissolution Agreement

4. On February 8, 2021, Joos and Halabi entered into a Partnership Dissolution Agreement (the "Agreement"), which Defendants admit is "valid and enforceable." Doc. 38 ¶ 15; Doc. 45 ¶ 15; Doc. 38-1.

5. Paragraph 7 provides that Fit's logo "shall become the sole and exclusive property of Joos," and that Halabi's new design, "as used in other documents and materials for the operation of the business," "cannot incorporate the logo and must be different than the one currently used by Fit." Doc. 38-1 ¶ 7. Under Paragraph 8, "[i]n addition to changing the logo" Halabi was to change the hero picture and icons on his websites "so that a reasonable person viewing websites operated by Halabi will not be confused that the websites are operated by the same company as the ones operated by Fit." *Id.* ¶ 8. Paragraph 12 requires written notice and fifteen days to cure. *Id.* ¶ 12.

6. Halabi agreed that Paragraph 7 gave Joos "everything the eye sees" in Fit's logo, including "the heart as it was used by Fit." **Ex. 2** at 32:8-33:1. Asked whether Paragraph 7 gave him any rights to the Logo, he answered, "that means I could not use Douglas' logo," anywhere in the United States. **Ex. 6** at 45:7-21.

## CPR LLC's Ownership and Use of the Logo

7. The parties stipulated that the Logo "became the sole and exclusive property of Plaintiff Joos." **Ex. 7** § II ¶ 3. Joos assigned all rights in the Logo, including its goodwill, to CPR LLC. **Ex. 1** ¶ 15.

8. Since February 22, 2021, CPR LLC has used the Logo continuously on its websites and Google listings and has made sales through its websites. **Ex. 1** ¶¶ 16-17; **Ex. 8**.

9. Neither Plaintiff has licensed or consented to Defendants' use of the Logo or any logo incorporating it, and Joos knows of no one else using a confusingly similar logo. **Ex. 1** ¶ 19.

10. Joos has complied with the Agreement, and Halabi testified that, to his knowledge, Joos did not solicit customers or set up training sites in his territories during the restricted period. *Id.* ¶ 20; **Ex. 6** at 69:15-70:5.

**The Infringing Logo**

11. Defendant Company admitted "[t]he Mark was commissioned by an artist on Fiverr, Antonclevela97, on September 08, 2015. In order to be compliant with the Dissolution Agreement, CPR Certification, LLC modified the Mark accordingly." **Ex. 5**, No. 11, at 7; *see* **Ex. 9**, Definition K.

12. Halabi began work on the Infringing Logo at the end of 2020, before he signed the Agreement, knowing that "Doug would be inheriting the logo." **Ex. 2** at 30:9-11, 33:2-11. He testified that "the confusion of customers didn't really cross [his] mind." *Id.* at 37:24-38:3, 44:16-20.

13. Halabi made the "final decision" that the Infringing Logo is different from the Logo, selected the design, and holds all decision-making power over Defendant Company's logo. **Ex. 2** at 31:17-22; **Ex. 10** at 87:12-24; **Ex. 11**, Nos. 5, 6, 20. He was "the ultimate decision maker on all significant CPR Certification

matters, including adopting and using [the Infringing Logo] . . . and the name 'CPR Certification' with the city name." **Ex. 12**, No. 7.

14. Since February 22, 2021, Defendants have operated as "CPR Certification" followed by a city name, using the logo below (the "Infringing Logo"):

CPR CERTIFICATION

**Ex. 7** § II ¶¶ 4-5; **Ex. 1** ¶ 21. Defendant Company's only claimed Paragraph 8 changes were a new hero picture and three icons. **Ex. 11**, No. 15.

15. The only difference Halabi identified in the logos' color is "a different type of red. . . . [D]ifferent hex." **Ex. 2** at 24:24-25:2. Defendant Company told the Trademark Trial and Appeal Board that under Paragraph 7 "the differences required related solely to the design elements." **Ex. 13** at 11.

16. Defendant Company is the entity through which Defendants offer training under the Infringing Logo. It has maintained 107 training site locations and provided an estimated 50,000 training sessions to almost 500,000 students, and it maintains 86 websites. **Ex. 14**, Nos. 1, 3; **Ex. 12**, No. 10. Since the Agreement, Defendant Company has grown from eleven locations to more than a hundred. **Ex. 5**, No. 17; **Ex. 15** ¶ 26; **Ex. 14**, No. 3. As of October 28, 2026, 86 of Defendants' websites displayed the Infringing Logo. **Ex. 1** ¶ 24.

17. Halabi agreed that his companies are "all controlled by" him. **Ex. 6** at 54:7-10. He controls his companies' Google Business Profiles and websites. *See id.* at 50:6-17.

## The Logo on Halabi's YouTube Channels

18. On February 25, 2021, when Halabi asked for the logins to Fit's Houston and Orlando YouTube channels, Joos wrote that "those videos on their [sic] contain my logo so you will have to redo them." **Ex. 1** ¶¶ 25-26; **Ex. 16**. Halabi replied the next day that the old logo was "gone off of the video." **Ex. 1** ¶ 27; **Ex. 16**.

19. Both channels still displayed the Logo through at least November 18, 2025; after this action was filed, Defendants switched them to the Infringing Logo. Docs. 38-2, 38-3; **Ex. 1** ¶¶ 28-29; **Ex. 17**.

## The Parties' Overlapping Markets and Customers

20. Halabi named CPR LLC first among his competitors and called Joos "a major competitor." **Ex. 6** at 39:11-18, 52:7.

21. Both companies obtain most customers online, through Google searches and city websites. *Id.* at 33:15-18; **Ex. 2** at 27:18-21; **Ex. 1** ¶¶ 4, 22. Defendant Company's operations head testified that the internet is its "principal vehicle" for marketing, that CPR LLC "offers parallel services," and that the two companies' "trade channels are competing and overlap in nature, as they are the same." **Ex. 15** ¶¶ 9, 18-19, 22.

22. Defendant Company entered five of CPR LLC's markets, including Tampa, in 2022 and 2023. **Ex. 11**, No. 22; **Ex. 1** ¶ 23; **Ex. 18**.

23. Halabi testified that customers are "[n]ot terribly" sophisticated and that they are "not very savvy." **Ex. 2** at 27:9, 28:3-5.

## Actual Confusion

24. There has been repeated consumer and marketplace confusion between the two companies. Halabi has acknowledged it: "I believe people have been confused." **Ex. 2** at 26:17-18; *see* **Ex. 1** ¶¶ 38-49.

25. Customers have pointed out that the logos are the same: "The logo is the exact same on your website"; "The logos appear to be the same, is the first link you guys?" **Ex. 1** ¶¶ 42, 46; **Exs. 19, 20**.

26. Customers have contacted one company about the other's classes, including a customer who wrote, "Confusing that there are two companies with the same name and logo." **Ex. 1** ¶¶ 38-39, 49; **Exs. 21-23**.

27. Reviewers have posted the same review on both companies' Google listings, as if believing both listings belong to the same company, though in each instance the reviewer was not CPR LLC's customer. **Ex. 1** ¶¶ 43-44; **Exs. 24, 25**.

28. When a student of CPR LLC's Clearwater instructor said she had "mistakenly paid for two classes," the instructor found Defendants' competing listing and reported, "Also the logo is the same." A former CPR LLC instructor applied for a job through Defendants' website, believing it was CPR LLC's. **Ex. 1** ¶¶ 47-48; **Ex. 26**.

29. A competitor sent CPR LLC a cease-and-desist letter that attributed Defendants' website to CPR LLC. CPR LLC's training center contacted it about a student from Defendant Company's Houston class, writing, "it is so confusing

sometimes," and about a compliance notice for Defendant Company's San Diego website. **Ex. 1** ¶¶ 40-41, 45; **Exs. 27-29**.

30. In January 2022, Google marked CPR LLC's Louisville listing as a duplicate, and the co-working space that housed CPR LLC's Louisville office wrote to Halabi's operations manager that "you guys claimed an already existing Google business in my building." CPR LLC's listing was taken down, and CPR LLC lost the listing and its reviews. **Ex. 1** ¶¶ 50-53; **Exs. 30, 31**.

31. From at least May 2022 through March 14, 2026, Defendant Company's Chicago website, chicagocprclasses.org, displayed the Infringing Logo and the name "CPR Certification Chicago" and listed a location at 4707 N. Broadway. By April 15, 2026, it listed CPR LLC's address, 4554 N. Broadway, Suite 309, instead. **Ex. 1** ¶¶ 54-55, 57; **Exs. 32, 33**. As a result, on May 20, 2026, Google flagged CPR LLC's listing as a duplicate, CPR LLC lost access to it, and the listing at its address began directing customers to Defendant Company's website and telephone number. **Ex. 1** ¶¶ 56, 58; **Exs. 34, 35**. That day, Plaintiffs' counsel gave Halabi's counsel written notice. **Ex. 1** ¶ 56. The next day, the website still listed CPR LLC's address. **Ex. 1** ¶ 57; **Ex. 33**. The listing has not been restored; CPR LLC's last Chicago order was on May 22, 2026. **Ex. 1** ¶ 59.

32. Defendants' use of the Infringing Logo has cost CPR LLC control over the reputation attached to the Logo and diverted its customers to Defendants. **Ex. 1** ¶¶ 60-61.

## Notice and Prior Proceedings

33. On February 24, 2021, two days after Halabi began using it, Joos's counsel raised with Halabi's counsel whether the Infringing Logo was sufficiently different from the Logo. **Ex. 7** § II ¶¶ 5-6; **Ex. 1** ¶ 30; **Ex. 36**.

34. CPR LLC applied to register the Logo on September 8, 2021. **Ex. 1** ¶ 31. On March 17, 2022, Joos's counsel served Halabi with Paragraph 12 notice of breach of Paragraphs 7 and 8, asserting trademark rights and demanding that Defendants "cease all use of the infringing logos." **Ex. 1** ¶ 32; **Ex. 37**; Doc. 45 ¶ 33. Halabi did not change the Infringing Logo and continues to use it. **Ex. 1** ¶ 32.

35. The Trademark Trial and Appeal Board ("TTAB") dismissed Defendant Company's opposition to CPR LLC's application to register the Logo, holding that under Paragraph 7 "[Defendant Company] is prohibited from using [CPR LLC's] logo and must use a different one," and on reconsideration that the Agreement "prohibits [them] from being users of the 'same or similar' marks." **Ex. 38** at 10 n.14; **Ex. 39** at 9. Defendant Company's appeal is pending. Doc. 45 ¶¶ 36-37, 71.

36. On July 10, 2023, while the opposition was pending, Joos sued Halabi in state court for breach of the Agreement, including Paragraphs 7 and 8, based on his use of the Infringing Logo. **Ex. 1** ¶ 34. After the TTAB ruled, he voluntarily dismissed that action and refiled his contract claims in this action with CPR LLC's trademark claims. *Id.* ¶ 35.

37. Defendant Company applied on May 9, 2022, to register "a fanciful heart with a sinusoidal wave appearing horizontally therein," claiming first use on February 21, 2021; Registration No. 7,831,024 issued June 17, 2025. **Ex. 40**; Doc. 38 ¶ 76; Doc. 45 ¶ 76.

38. Defendants have asserted no counterclaim, and the only breach they attribute to Joos is the alleged failure to give notice under Paragraph 12 before suing on Counts II, III, and IV. *See* Doc. 45; *id.* ¶¶ 185, 187, 188. Plaintiffs filed this action on December 11, 2025. Doc. 1.

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must then "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. ARGUMENT

### A. Halabi breached Paragraphs 7 and 8 of the Agreement (Counts I and II).

Paragraph 7 gave Joos the Logo and required Halabi to adopt something different. Instead, his company admits it modified the same design, and the result is still a red heart with a sinusoidal wave beside the letters "CPR." He also

left the Logo itself on his YouTube channels for years and produced the very confusion Paragraph 8 required him to prevent. The Court should rule that Halabi breached the Agreement as alleged in Counts I and II.

The Agreement is governed by Florida law. Doc. 38-1 ¶ 19. Where "the determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment." *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 131 (Fla. 2000) (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1096 (Fla. 1st DCA 1999)). "The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs." *Lalow v. Codomo*, 101 So. 2d 390, 393 (Fla. 1958). "All the various provisions of a contract must be so construed, if it can reasonably be done, as to give effect to each." *Paddock v. Bay Concrete Indus., Inc.*, 154 So. 2d 313, 315 (Fla. 2d DCA 1963).

Defendants admit the Agreement is "valid and enforceable." *Supra* Section II ¶ 4. "[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (quoting *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir. 1941)). Defendants' admission establishes the Agreement's existence "beyond the power of evidence to controvert." Joos complied with the Agreement, and Halabi testified that Joos did not solicit

customers or set up training sites in his territories during the restricted period. *Supra* Section II ¶ 10. The only breach Defendants attribute to Joos is a claimed failure to give notice before suing. *Supra* Section II ¶ 38. That is a condition precedent, not performance, and it fails for the reasons in Section A.2.

***1. The Infringing Logo is not different, and Defendants' websites confuse consumers (Count I).***

Paragraph 7 requires that Halabi's new design "cannot incorporate the logo and must be different." Paragraph 8 ties that change, which concerns "appearance only," to a standard: Halabi's changes had to be made "so that a reasonable person viewing websites operated by Halabi will not be confused that the websites are operated by the same company as the ones operated by Fit." *Supra* Section II ¶ 5. "The court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement." *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987). "[I]f one construction would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability." *Paddock*, 154 So. 2d at 316.

Paragraph 7 required a different logo, not a different hex code. Halabi agreed that Paragraph 7 gave Joos "everything the eye sees" in the Logo, including "the heart as it was used by Fit." *Supra* Section II ¶ 6. Yet Defendant Company admits it made the Infringing Logo by modifying the same 2015 design

from which the Logo was created. *Supra* Section II ¶¶ 3, 11. The result keeps what the eye sees: the letters "CPR" beside a red heart crossed by a sinusoidal wave, in the same red. *Supra* Section II ¶ 14. The only color change Halabi identified is "a different type of red. . . . [D]ifferent hex." *Supra* Section II ¶ 15. No customer can see that difference. Reading Paragraph 7 to be satisfied by nominal changes would let Halabi keep everything Paragraph 7 gave away, an absurd result Florida law does not permit.

Even if the Court perceived some difference, Paragraph 7 cannot be read alone. Paragraph 8 makes the logo change, which concerns "appearance only," part of the changes that had to keep a reasonable person from confusing Halabi's websites with Fit's. *Supra* Section II ¶ 5. Florida law requires reading the Agreement as a whole, and read that way, it required a logo different enough to prevent that confusion. A token difference gives Paragraph 8 no effect. The confusion Paragraph 8 was written to prevent followed: customers, instructors, CPR LLC's training center, and Google have all treated the two companies as one. *Supra* Section II ¶¶ 24-31. Because the undisputed record shows that the Infringing Logo is not different from the Logo and that Defendants' websites have confused consumers, there is no genuine dispute of material fact that Halabi breached Paragraphs 7 and 8, and Joos is entitled to summary judgment on liability on Count I.

Defendants' First Defense asserts that Count I is barred by waiver, estoppel, acquiescence, and ratification because the logos are "different" and

Paragraph 8 addresses only confusion with Fit's websites. Doc. 45 ¶ 184. Both arguments read Paragraphs 7 and 8 in isolation. Read together, as shown above, the two paragraphs required a logo different enough to prevent confusion, and the Infringing Logo is not. The First Defense therefore fails as a matter of law.

***2. The Logo remained on Halabi's YouTube channels (Count II).***

Paragraph 7's bar on incorporating the Logo reaches anything "used in other documents and materials for the operation of the business." *Supra* Section II ¶ 5. A party is bound by the contract's plain terms, and the Court cannot "rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995).

Count II does not turn on how different the Infringing Logo is. Paragraph 7 made the Logo Joos's "sole and exclusive property," and Halabi agreed that he could not use it anywhere. *Supra* Section II ¶ 6. In February 2021, Joos told him that the Houston and Orlando YouTube videos "contain my logo so you will have to redo them," and Halabi replied that the old logo was "gone off of the video." *Supra* Section II ¶ 18. It was not. Both channels displayed the Logo itself through at least November 18, 2025, and Defendants replaced it only after this action was filed. *Supra* Section II ¶ 19. Paragraph 7 has no exception for videos, and the Court cannot write one in. Halabi controls his companies and their websites. *Supra* Section II ¶ 17. His use of the Logo for nearly five years breached

Paragraph 7, and Joos is therefore entitled to summary judgment on liability for Count II.

Defendants' Second Defense asserts that Joos never gave written notice concerning the YouTube channels before suing on Count II. Doc. 45 ¶ 185. He did, twice. In February 2021, Joos wrote to Halabi that the videos "contain my logo so you will have to redo them." *Supra* Section II ¶ 18. In March 2022, Joos's counsel served Paragraph 12 notice that Halabi was in breach of Paragraph 7 and demanded that Defendants "cease all use of the infringing logos." *Supra* Section II ¶ 34. A notice of default "may explain default in general terms and is not required to particularize all defaults." *See Creative Choice Homes XXX, LLC v. Amtax Holdings 690, LLC*, 162 F.4th 1083, 1100 (11th Cir. 2025) (citing *Hous. Inv. Corp. v. Am. Bancshares Mortg. Co.*, 367 So. 2d 645, 646-47 (Fla. 3d DCA 1979)). Neither notice needed to list every channel, and Halabi had years, not fifteen days, to cure. *Supra* Section II ¶ 19. The Second Defense fails.

**B. Defendants infringed CPR LLC's Logo (Counts V, VI, and IX).**

CPR LLC owns the Logo, and Defendants' use of the Infringing Logo is likely to cause, and has caused, confusion. The Court should rule as a matter of law that Defendants, including Halabi personally, are liable on Counts V, VI, and IX. To establish trademark infringement under § 43(a), "a plaintiff must show (1) that it had trademark rights in the mark . . . and (2) that the other party had adopted a mark . . . that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Tana v. Dantanna's*, 611 F.3d

767, 773 (11th Cir. 2010) (internal quotation marks and citation omitted). "To satisfy the first element of § 43(a) . . . a plaintiff need not have a registered mark." *Id.*[1]

A mark is in use in commerce on services "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127. A § 43(a) claim requires "that the defendant made unauthorized use of [the mark]." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (internal quotation marks and citation omitted). Defendants have used the Infringing Logo to sell CPR training since February 22, 2021. *Supra* Section II ¶ 14. Defendant Company offers that training under the Infringing Logo at 107 training sites and through 86 websites, in markets nationwide. *Supra* Section II ¶¶ 16, 22. Neither Plaintiff has licensed or consented to that use. *Supra* Section II ¶ 9. Defendants use the Infringing Logo in commerce without authorization. Defendants' Seventh Defense asserts that the Agreement licensed or authorized Halabi's use of the mark. Doc. 45 ¶ 190. It did the opposite. Paragraph 7 made the Logo Joos's "sole and exclusive property" and barred any design that incorporates it, and Halabi agreed he could not use the Logo "[a]nywhere." *Supra* Section II ¶¶ 5-6. Plaintiffs objected two days after the

[1] The same likelihood-of-confusion test governs infringement and false designation of origin. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 935 n.16 (11th Cir. 2010). Counts V and VI are therefore decided together. The Eleventh Circuit applies the same legal analysis to Lanham Act claims and to Florida common-law claims for trademark infringement and unfair competition. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (affirming application of the same analysis to Lanham Act and Florida common-law claims against alleged contributory infringers). The analysis in this Section therefore also establishes Defendants' liability on Count IX, and the analysis in Section C establishes Halabi's liability on Count X.

Infringing Logo launched and have contested it ever since. *Supra* Section II ¶¶ 9, 33-36; *see also infra* Section D. The Seventh Defense fails.

***1. CPR LLC owns the Logo, which is distinctive.***

"Common-law trademark rights are appropriated only through actual prior use in commerce." *Crystal*, 643 F.3d at 1321 (internal quotation marks and citation omitted). "[R]egistration of a trademark confers only procedural advantages and does not enlarge the registrant's rights, for ownership of the trademark rests on adoption and use, not on registration." *Turner v. HMH Publ'g Co.*, 380 F.2d 224, 228 (5th Cir. 1967). An assignee "step[s] into [the assignor's] shoes by virtue of the assignment," even without "evidence of a written assignment." *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1136 (11th Cir. 2018). Fit used the Logo by January 2016. *Supra* Section II ¶ 3. The parties stipulated that the Logo became Joos's sole and exclusive property, and Joos assigned the Logo and its goodwill to CPR LLC. *Supra* Section II ¶ 7. CPR LLC has used the Logo continuously since February 22, 2021, applied to register it in its own name, and prevailed when Defendant Company opposed that application. *Supra* Section II ¶¶ 8, 34-35. Defendants' Sixth Defense asserts that CPR LLC lacks standing. Doc. 45 ¶ 189. Because CPR LLC owns the Logo, the Sixth Defense fails.

Suggestive, arbitrary, and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*,

505 U.S. 763, 768 (1992). CPR LLC's Logo joins the letters "CPR" to a red heart crossed by a sinusoidal wave. That design at most suggests cardiac care; it does not describe CPR training, and suggestive marks are inherently distinctive. Defendant Company itself called the heart-and-wave design "fanciful" when it applied to register its own version. *Supra* Section II ¶ 37. The Logo is inherently distinctive.

Defendants' Eighth and Ninth Defenses rely on Defendant Company's 2025 registration. Doc. 45 ¶¶ 191-92. That registration covers only a heart design. It is not the Infringing Logo Defendants use, and it is not the Logo at issue in this case. *Supra* Section II ¶ 37. Even as to the heart, the registration claims first use five years after Fit first used the Logo, and registration cannot displace that prior use. *Supra* Section II ¶¶ 3, 37. Defendants' Fifteenth Defense, that CPR LLC cannot establish prior use, ignores the same five years. Doc. 45 ¶ 198. These defenses fail.

**2. *Confusion is likely and has occurred.***

Courts consider seven factors in assessing whether a likelihood of consumer confusion exists:

> (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016). "Of these factors, the type of mark and the evidence of actual confusion are

the most important." *Id.* "[W]hile generally likelihood of confusion raises a question of fact, when appropriate, it may be determined as a matter of law." *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1281 (11th Cir. 2020).

On similarity, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999). On strength, "[t]he less that third parties use the mark, the stronger it is, and the more protection it deserves." *Id.* at 1336. On intent, "[i]f it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Id.* at 1340. Even without evidence of actual confusion, where the parties use the same mark "in the same territory directed to the same entities by the same means," the "risk of confusion [is] self-evident." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1206 (11th Cir. 2008).

Actual confusion is "the best evidence of a likelihood of confusion." *Frehling*, 192 F.3d at 1340. The record is full of it. Defendant Company's corporate representative admits that "people have been confused." *Supra* Section II ¶ 24. Customers, instructors, CPR LLC's own training center, a competitor, and even Google have confused the two companies and acted on the belief that they are the same company. *Supra* Section II ¶¶ 25-31. Customers and instructors

have said so directly: "The logo is the exact same on your website"; "The logos appear to be the same . . . ?"; "Confusing that there are two companies with the same name and logo"; "Also the logo is the same." *Supra* Section II ¶¶ 25-26, 28. "[T]he quantum of evidence needed to show actual confusion is relatively small." *Fla. Int'l Univ.*, 830 F.3d at 1264 (quoting *Caliber*, 605 F.3d at 937). The record of actual confusion here far exceeds that low bar.

The remaining factors point the same way. The marks create the same overall impression for the reasons stated in Section A.1. *Supra* Section II ¶¶ 3, 14-15. The Logo is strong, since no third party uses a confusingly similar logo and Defendant Company itself called the design "fanciful." *Supra* Section II ¶¶ 9, 37. The companies sell the same services to the same unsophisticated customers through the same online channels in the same cities. *Supra* Section II ¶¶ 2, 20-23. Defendants created the Infringing Logo knowing that "Doug would be inheriting the logo," gave no thought to customer confusion, and expanded and continued their use after Plaintiffs objected, gave written notice, and prevailed before the TTAB. *Supra* Section II ¶¶ 12, 16, 33-35. That conduct supports the inference that Defendant Company adopted the Infringing Logo to benefit from the Logo's reputation, which "alone may be enough to justify the inference that there is confusing similarity." *Frehling*, 192 F.3d at 1340.

Where nearly identical marks are used in the same cities, for the same customers, through the same means, the risk of confusion is self-evident. *Angel Flight*, 522 F.3d at 1206. Defendants' use of the Infringing Logo is likely to cause

confusion and has caused it. Defendants' Sixteenth and Seventeenth Defenses assert that "CPR Certification" is descriptive and that its use is fair use. Doc. 45 ¶¶ 199-200. CPR LLC claims the Logo's design, not those words. Doc. 38-1 ¶ 7. Defendants use the Infringing Logo as a mark, not "otherwise than as a mark." 15 U.S.C. § 1115(b)(4); *supra* Section II ¶ 14. The Eighteenth Defense fails because no third party uses a confusingly similar logo. Doc. 45 ¶ 201; *supra* Section II ¶ 9. The Twentieth Defense fails because CPR LLC need not show actual confusion arising from the YouTube channels; they displayed the Logo itself, for the same services and to the same customers, and the risk of confusion from that use is self-evident. Doc. 45 ¶ 203; *Angel Flight*, 522 F.3d at 1206; *supra* Section II ¶ 19.

***3. Halabi is personally liable.***

"If an individual actively and knowingly caused the infringement, he is personally liable." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). "[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) (per curiam).

Halabi is the moving force behind Defendant Company's infringement. He is its sole member and owner, selected the Infringing Logo's final design, and was "the ultimate decision maker" on adopting and using it. *Supra* Section II ¶¶ 2, 13. He controls Defendant Company and its websites and Google listings. *Supra*

Section II ¶ 17. Halabi directed and controlled the infringement, so he is personally liable without regard to piercing the corporate veil. Because CPR LLC owns the Logo and Defendants' use of the Infringing Logo is likely to cause and has caused confusion, there is no genuine dispute that Defendants are liable on Counts V, VI, and IX, and Plaintiffs are entitled to summary judgment on liability on those counts.

**C. Halabi is contributorily liable (Counts VIII and X).**

Halabi controls Defendant Company, chose its logo, and expanded that logo to 107 training sites after Plaintiffs repeatedly objected. He did not merely participate in Defendant Company's infringement; he directed and controlled it. A claim for contributory trademark infringement is established where "a person or entity commits direct trademark infringement under the Lanham Act" and the defendant "'intentionally induces' the direct infringer to commit infringement . . . ." *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1312 (11th Cir. 2019). "A person who knowingly participates in furthering the trade dress infringement is liable as a contributing party." *Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991) (per curiam) (claim under 15 U.S.C. § 1125(a)).

Defendant Company's direct infringement is established in Section B. Halabi intentionally induced it. He started work on the Infringing Logo before he signed the Agreement, knowing that "Doug would be inheriting the logo," made the "final decision" that it was different from the Logo, and, as "the ultimate decision maker," caused Defendant Company to adopt and use it. *Supra* Section

II ¶¶ 12-13. He did so with full knowledge of Plaintiffs' rights. Joos's counsel questioned the logo two days after its launch, Halabi received written notice of infringement in March 2022, and Defendant Company lost before the TTAB. *Supra* Section II ¶¶ 33-35. Through all of it, Defendant Company expanded its use of the Infringing Logo to 107 training sites and continues to use it. *Supra* Section II ¶¶ 16, 34. There is no genuine dispute that Halabi intentionally induced and knowingly furthered Defendant Company's infringement, and Plaintiffs are entitled to summary judgment on liability on Counts VIII and X.[2]

**D. Defendants' delay-based defenses fail (Tenth through Thirteenth Defenses).**

Defendants cannot carry their burden on laches, limitations, or unclean hands.[3] Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"The Lanham Act does not contain a statute of limitations." *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). "The continuing torts doctrine is recognized under [Florida] state law." *Suarez v. City of Tampa*, 987 So. 2d 681, 685 (Fla. 2d DCA 2008) (internal quotation

---

[2] Defendants' Nineteenth Defense asserts that contributory infringement claims are limited to registered marks under 15 U.S.C. § 1114. Doc. 45 ¶ 202. They are not. Contributory liability extends to claims under § 43(a). *Bauer Lamp*, 941 F.2d at 1171. Section 43(a) "protects qualifying unregistered trademarks." *Tana*, 611 F.3d at 773 n.5. The Nineteenth Defense fails.

[3] Defendants' Third, Fourth, and Fifth Defenses go to counts not before the Court, and the Twenty-First goes to relief. The Fourteenth limits common-law rights to markets where the mark is known, which goes to the scope of relief, and Defendants entered five of CPR LLC's markets, including Tampa. *Supra* Section II ¶ 22.

marks and citation omitted). "Where the doctrine applies, a plaintiff may recover damages for tortious acts committed within the limitations period prior to the filing of suit." *Id.* A continuing tort is "established by continual tortious acts, not by continual harmful effects from an original, completed act." *Id.* at 686 (internal quotation marks and citation omitted). Defendants' Tenth and Eleventh Defenses assert that CPR LLC's claims are time-barred. Doc. 45 ¶¶ 193-94. The Lanham Act claims have no statute of limitations. The Florida common-law claims rest on Defendants' use of the Infringing Logo, which continues today, so every use within four years before this action is timely. *Supra* Section II ¶¶ 16, 34.

Laches requires "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Kason*, 120 F.3d at 1203. "[T]he [limitations] period for analogous state law claims" serves "as the touchstone for laches," and in Florida that period is four years. *Pinnacle Adver. & Mktg. Grp., Inc. v. Pinnacle Adver. & Mktg. Grp., LLC*, 7 F.4th 989, 1005-06 (11th Cir. 2021) (alteration in original) (quoting *Kason*, 120 F.3d at 1203). "Courts excuse delay when, for example, a trademark owner delays in suing because it is attempting to resolve the dispute through settlement negotiations." *Id.* at 1009. Laches fails where defendants "knew of plaintiff's objections but nevertheless proceeded to enlarge their use of the term," because then defendants "have not relied on the delay of plaintiffs in expanding their use of the mark." *Citibank, N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1546-47 (11th Cir. 1984).

Defendants' Tenth and Twelfth Defenses assert laches. Doc. 45 ¶¶ 193, 195. Plaintiffs never sat on their rights. They objected two days after the Infringing Logo launched and served written notice in March 2022. *Supra* Section II ¶¶ 33-34. CPR LLC then defended its application through the TTAB's ruling, Joos sued in state court while the opposition was pending, and Plaintiffs filed this action after the TTAB ruled. *Supra* Section II ¶¶ 35-36, 38. Any delay is excused, and Defendants cannot claim prejudice from it, because they expanded their use of the Infringing Logo knowing of Plaintiffs' objections. *Supra* Section II ¶ 16.

For unclean hands, "the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted," and "the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 451 (11th Cir. 1993). Defendants' Thirteenth Defense rests on the same delay and on the claim that the Agreement authorized the Infringing Logo. Doc. 45 ¶ 196. Neither is wrongdoing by Plaintiffs, and Defendants identify no injury caused by Plaintiffs' conduct. Each delay-based defense therefore fails as a matter of law.

## V. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court enter partial summary judgment on liability in their favor on Counts I, II, V, VI, VIII, IX, and X, and on the affirmative defenses addressed above, and reserve damages for trial.

Dated: October 28, 2026.

Respectfully submitted,

/s/ Julia Hannah Weber
Julia Hannah Weber
Florida Bar No. 1045592
Joseph F. Southron, Esq.
Florida Bar No. 122109
**SOUTHRON FIRM, P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Phone: (813) 773-5105
Fax: (813) 683-4338
julia.weber@southronfirm.com
joe@southronfirm.com
eservice@southronfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Julia Hannah Weber
Julia Hannah Weber