# EXHIBIT 13

Opposer's Motion for Reconsideration and Modification of Final Decision (TTAB Mar. 25, 2025)

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA1424099** |
| Filing date: | **03/25/2025** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding no. | 91276058 |
| Party | Plaintiff<br>CPR Certification LLC |
| Correspondence address | BRITTANY J. MAXEY-FISHER<br>MAXEY-FISHER, PLLC<br>7650 COURTNEY CAMPBELL CAUSEWAY<br>SUITE 1100<br>TAMPA, FL 33607<br>UNITED STATES<br>Primary email: ttab@maxeyfisher.com<br>Secondary email(s): laura@ucpra.org, rich@ucpra.org, JSchifino@gunster.com, bmaxeyfisher@maxeyfisher.com, director@ucpra.org, hkebler@maxeyfisher.com<br>727-230-4949 |
| Submission | Request for Reconsideration of Final Board Decision |
| Filer's name | Brittany J. Maxey-Fisher |
| Filer's email | ttab@maxeyfisher.com, bmaxeyfisher@maxeyfisher.com |
| Signature | /Brittany J. Maxey-Fisher/ |
| Date | 03/25/2025 |
| Attachments | 20250325_857024_Request_for_Reconsideration.pdf(572331 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

In the matter of Application Serial No. 97/016,512
Published: March 08, 2022

| | |
|---|---|
| CPR Certification, LLC,<br>Opposer,<br><br>v.<br><br>CPR, LLC,<br><br>Applicant. | Proceeding No. 91276058 |

**OPPOSER'S MOTION FOR RECONSIDERATION AND MODIFICATION OF FINAL DECISION**

Pursuant to 37 CFR § 2.129 and TBMP § 543, Opposer CPR Certification, LLC ("Opposer") respectfully requests reconsideration and modification of the Trademark Trial and Appeals Board's ("the Board") Final Decision dated February 25, 2025 ("the Decision"). 44 TTABVUE. This Opposition relates to Federal Trademark Application Number 97/016,512 ("the Application") and CPR, LLC's ("Applicant") Mark related thereto ("Applicant's Mark").

The Board erroneously concluded Opposer's claim failed, and that Applicant is entitled to an unrestricted registration despite also determining Applicant's use of Applicant's Mark was restricted. This inherent contradiction undermines the Decision. Opposer believes that, based on the evidence of record and the prevailing authorities, the Board's reasoning in the Decision is premised on reversible errors. Opposer respectfully requests the Board reconsider, or at least modify, the Decision given the reasoning below.

## I. BACKGROUND

At issue is a Dissolution Agreement ("the Agreement"), which included restrictions as to competitive activities between Opposer and Applicant. In the Board's consideration of Applicant's Motion

to Dismiss, the Board interpreted Opposer's claim as "one that Applicant cannot lawfully use the applied-for mark and is not entitled to an unrestricted registration, rather than lack of ownership." 11 TTABVUE 12. The Board noted that "an applicant may not seek registration of a mark which it cannot use." *Id*. After Trial Periods, briefing by both parties, and Oral Hearing, the Board issued the Decision ultimately dismissing the Opposition.

The Board determined Applicant was geographically restricted in Applicant's right to use Applicant's Mark. 44 TTABVUE 9. Nevertheless, the Board held Applicant was entitled to an unrestricted, nationwide registration placing emphasis on the impact—or lack thereof—of the geographic restriction. *Id*. at 9-10. Opposer's claim involves the implication of restrictions within a private agreement on Applicant's right to use Applicant's Mark. Applicant contracted away Applicant's right to use Applicant's Mark in certain geographic areas and therefore cannot lawfully use Applicant's Mark nationwide, but the Decision focuses on the definition of "use in commerce" under the Trademark Act and whether Applicant has any lawful use at all. Illustrating the need for reconsideration, if the Board found in favor of Opposer on the facts the Board found necessary to properly plead the claim (emphasized in 11 TTABVUE 8-12), Opposer should prevail, and the Opposition should be sustained. Opposer believes the Decision relied upon some findings of fact and legal conclusions surrounding the impact of contractual restrictions on Applicant's right to use Applicant's Mark nationwide that are unsupported by evidence and prevailing authorities. Opposer believes the Board erred in concluding Applicant is entitled to an unrestricted registration and respectfully requests the Board reconsider and/or modify the Decision.

## II. LEGAL STANDARD

The premise underlying a request for reconsideration under Trademark Rule § 2.129(c), 37 CFR § 2.129(c) is that, based on the evidence of record and the prevailing authorities, the Board erred in reaching the decision it issued. The request may not be used to introduce additional evidence, nor should it be devoted simply to a re-argument of the points presented in the requesting party's brief on the case. *See Scotch Whisky Assoc. Ltd. v. ASW Distillery*, *LLC*, 2021 USPQ2d 179, at *3 (TTAB 2021). Rather, the request normally should be limited to a demonstration that, based on the evidence properly of record and

the applicable law, the Board's ruling is in error and requires appropriate change. *Id.*; *see also* TBMP § 543.

**III. ARGUMENT**

For the reasons set forth below, Opposer respectfully requests the Board reconsider and/or modify the Decision.

**A. The Board Erred in Concluding Applicant is Entitled to an Unrestricted Registration.**

The Board concluded that Applicant is entitled to an unrestricted registration. In support, the Board reasoned that the contractual restrictions on Applicant's right to use Applicant's Mark "during that time, did not restrict Applicant to only intrastate commerce, it merely prohibited use in eleven counties in the United States. In view thereof, the [A]pplication is in compliance with the Trademark Act as to the 'restricted' services because they could still be performed in more than one state." 44 TTABVUE 9. The rationale and holding in the Decision is contrary to applicable law, unsupported by substantial evidence, and in some instances, contrary to other Board findings. Opposer believes the Decision is premised on reversible error and respectfully requests the Board's reconsideration or modification.

**1. The Board Erred in Concluding Applicant is Entitled to an Unrestricted Registration Despite Finding Applicant's Right to Use was Restricted.**

The Board begins its analysis by explaining when one is entitled to seek registration under Section 1(a) of the Trademark Act. 44 TTABVUE 9. The Board then defines "use in commerce" as it is understood under the Trademark Act. *Id*. The Board only examined whether Applicant, as owner of Applicant's Mark, has *any* use of Applicant's Mark within the framework of the definition of "use in commerce."[1] *Id*. That should not be the only inquiry by the Board, as private agreements fundamentally impact one's right to lawfully use a mark in commerce. By stopping the inquiry at the definition, the Board improperly grants broader rights than Applicant actually possesses under the Agreement. This

[1] Opposer notes that the Board cited Section 45 of the Trademark Act as 15 U.S.C. § 1045. Opposer believes this was inadvertent and the Board intended to cite 15 U.S.C. § 1127.

critical oversight creates an untenable legal contradiction: the Board explicitly acknowledged Applicant faces geographic restrictions on its mark's use yet paradoxically awarded an unrestricted registration.

This decision directly undermines established trademark principles requiring that registrations accurately reflect actual marketplace rights. The Board's approach elevates form over substance, creating a registration that misrepresents Applicant's legitimate commercial scope and potentially misleads the public. Proper analysis demands examination of all factors affecting lawful use—including binding private agreements that explicitly limit geographic scope—to ensure registrations reflect true marketplace realities rather than theoretical rights that exceed contractual limitations. The Board found Applicant was geographically restricted in using Applicant's Mark yet still held Applicant is entitled to an unrestricted registration.

Section 7(b) of the Trademark Act provides, a "certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, *subject to any conditions or limitations stated in the certificate*." 15 U.S.C. § 1057(b)(emphasis added). These conditions or limitations that must be stated in the certificate include geographic restrictions. *In re Sun Refining and Marketing Co*., 23 USPQ2d 1072, 1073-74 (TTAB 1991). "[A]greements to cease use of a mark or not to use a mark in a certain format are routinely upheld and enforced to the extent a party may not obtain a registration" where it has contracted certain rights away. TBMP § 605.03(d). "The right to register a mark flows from the right to use it." *Weiner King, Inc. v. Wiener King Corp*., 204 USPQ 820, 828 fn.5 (C.C.P.A. 1980). It follows that an applicant is not entitled to the presumptions under Section 7(b) when restrictions on an applicant's use exist and are not stated in the certificate. Compared to the findings in *In Re Sun*, where being barred from six (6) states was enough to prevent an unrestricted registration, the Board did not discuss or give weight to the boundaries and focuses only on the existence of any restriction of use. 23 USPQ2d at 1073-74. The Decision is

inconsistent with applicable law insofar as the Board finding Applicant's right to use Applicant's Mark was geographically restricted but also awarding Applicant an unrestricted registration.

In effect, the Board is granting broader rights considering the presumptions under Section 7(b) than Applicant possessed at the time of filing the Application. These rights under Section 7(b) are inconsistent with the Board's findings. Opposer's claim is not challenging whether Applicant has "use in commerce" in the general sense, but rather how the Agreement limits that lawful use. This, of course, does not include the other presumptions provided under 15 U.S.C. § 1057, such as priority in subsection (c).

In the Decision, the Board justified Applicant's entitlement to an unrestricted registration by finding the geographic restriction was nominal. In doing so, the Board is still admitting that Applicant's services were restricted. The Board allowed registration because Applicant could be in more than one (1) state, satisfying the interstate commerce requirement of 15 U.S.C. § 1051(a). However, the Board overlooks controlling law dictating the right to registration flows from the right to use. The Board's holding is inconsistent with the Board's determination on the underlying factual and legal issues.

**2. The Board Erred in Its Rationale Regarding the Impact of the Geographic Restrictions on Applicant's Entitlement to an Unrestricted Registration.**

The Board erred in concluding that the impact of geographic restrictions under the Agreement as insignificant enough to preclude Applicant's entitlement to an unrestricted registration. The Board's conclusion that Applicant is geographically restricted yet nevertheless entitled to an unrestricted registration is unsupported and contrary to applicable law. The factual underpinnings the Board relied upon in reaching its conclusion are not supported by substantial evidence. As such, Opposer respectfully requests the Board reconsider the Decision.

**i. The Board's Conclusion that Applicant is Geographically Restricted Yet Nevertheless Entitled to an Unrestricted Registration is Unsupported and Contrary to Applicable Law.**

In determining Applicant is geographically restricted under the Agreement, the Board found these same geographic restrictions have "merely" nominal effect. 44 TTABVUE 9-10, fn14. The Board asserts that these restrictions do not limit Applicant to intrastate commerce only and reasons that Applicant could use Applicant's Mark in more than one (1) state. 44 TTABVUE 9. This analysis gives improper weight to Applicant's self-serving characterization of the geographic restrictions as insignificant simply because they do not extend to *every single state*. 44 TTABVUE 9-10 (emphasis added). The Board misplaced emphasis on the definition of "use in commerce" while failing to properly consider the fundamental concept of lawful use as it relates to the rights to use that Applicant deliberately contracted away. The Board's implemented rationale cannot be the barometer for whether geographic restrictions preclude entitlement to unrestricted registration because it conflicts with the applicable law.

Registrations awarded the presumptions under Section 7(b) discussed above are considered unrestricted in the absence of specified restrictions on the certificate. 15 U.S.C. § 1057(b). The existence of geographic restrictions by nature preclude entitlement to an unrestricted registration. *In re Sun Refining and Marketing Co*., 23 USPQ2d at 1073-74 (where applicant has contracted away its right to use its mark in certain geographic areas under private agreement, "[the Board] absolutely fail[s] to comprehend how applicant can expect the Office to nevertheless issue geographically unrestricted registrations"); *In re Bay State Brewing Co*., 117 USPQ2d 1958, 1964-65 (TTAB 2016). "In light of applicant's acknowledgment of another's rights…and its own agreement to refrain from using its marks in six states, applicant is not entitled to this presumption under Section 7(b)." *In re Sun Refining and Marketing Co*., 23 USPQ2d at 1073-74. Additionally, intrastate uses can qualify as "use in commerce" in certain instances. TMEP § 901.03. Geographical restrictions, as found here by the Board, and any impact related thereto cannot be determined in an Opposition Proceeding. 37 C.F.R. § 2.133(c); *In re Bay State Brewing Co*., 117 USPQ2d at 1964-65; *Bionetics Corp. v. Litton Bionetics, Inc*., 218 USPQ 327, 331 (TTAB 1983).

The Board dispenses of Applicant's geographic restrictions by finding the impact is not enough to preclude entitlement to the presumptions under Section 7(b). The presumptions provide for nationwide rights, subject to *any* conditions on the certificate. 15 U.S.C. § 1057(b). The Application seeks registration

with all presumptions under Section 7(b), nationwide, with no conditions or limitations specified on the registration. The Board found Applicant did not have nationwide right to use Applicant's Mark given the exclusion from eleven (11) major metropolitan areas. The Board still concluded the impact of the restrictions did not warrant precluding Applicant from an unrestricted registration. There is no distinction between the impact or type of condition or limitation under Section 7(b).

If there is any restriction, there should be no entitlement to unrestricted registration with all presumptions under Section 7(b). Applicable law does not require a restriction to meet a particular threshold, nor does a geographical limitation need to limit an applicant strictly to intrastate commerce to preclude nationwide presumptions under Section 7(b). Here, Applicant seeks an unrestricted registration. The Board found Applicant was, in-fact, restricted at the time of filing the Application. Allowing the Application to register unrestricted will reflect incorrect information on the Register.

Moreover, the applicant *In Re Sun* would have been entitled to registration if the Board applied its measure of impact requiring limitations to only intrastate commerce and other reasoning relied upon in the Decision. 23 USPQ2d at 1073-74. In that case, the applicant could use its mark in more than one (1) state. The applicant was not limited to intrastate commerce. The applicant did not have restrictions in every state. The Board never explored the impact of those six (6) states; the existence of the restriction unequivocally meant the applicant was not entitled to an unrestricted registration.

Even if geographic restrictions limit an applicant to intrastate use only, Applicant could still qualify for "use in commerce," underscoring the Board's error in application of the law. TMEP § 901.03. Limiting use to only intrastate or observing that Applicant can use Applicant's Mark in more than one (1) state is not an appropriate baseline to determine whether geographic restrictions preclude unrestricted registrations because it conflicts with applicable law. Had Applicant been limited to intrastate commerce only, that would not prevent Applicant from satisfying the definition of "use in commerce." Therefore, requiring a geographical restriction to limit an applicant to intrastate commerce is not the appropriate gauge for any impact of the geographical restrictions on Applicant's entitlement to an unrestricted

registration. There is no relevant authority requiring the impact of any conditions or limitations to be part of the inquiry as to whether an otherwise restricted applicant is still entitled to unrestricted registration.

Underscoring the error in the law applied by the Board, there are other scenarios that could meet entitlement to an unrestricted registration using the Board's framework. An applicant could be barred in forty-eight (48) states and be entitled to an unrestricted registration so long as the applicant is not limited to intrastate commerce, can use in more than one (1) state, and do not have restrictions in every state. An applicant can be barred from forty-nine (49) state capitals and be entitled to an unrestricted registration; the applicant can use in more than one (1) state, is not limited to intrastate commerce, and does not have restrictions in every state. Understanding these scenarios would generally not lead to unrestricted registration, at least in the first instance regarding a bar in forty-eight (48) states, the Decision overlooks a key component of the analysis: the Agreement restricted Applicant's lawful right to use Applicant's Mark nationwide irrespective of whether Applicant's use meets the definition of "use in commerce."

The Board acknowledges a clear geographic restriction exists but improperly dismisses this contractual limitation as too insignificant to matter. This fundamentally flawed approach creates a dangerous precedent—establishing an arbitrary threshold where some contractual restrictions warrant enforcement while others can be disregarded based on subjective assessments of their minimal impact. By categorizing legitimate contractual obligations as inconsequential rather than binding legal constraints, the Board undermines the integrity of private agreements. This dismissive treatment of documented geographic limitations directly contradicts established principles requiring registrations to accurately reflect actual marketplace rights. The Board cannot legitimately grant broader rights than Applicant possesses merely because it deems contractual limitations insufficiently comprehensive. Partial geographic restrictions represent real, enforceable constraints on lawful use not to be overlooked in registration determinations. Moreover, the Board found there to be restrictions, and any determination is improper in this forum. 37 C.F.R. § 2.133(c).

This brings the analysis back to the fact that Applicant could not use Applicant's Mark nationwide, yet the Application seeks unrestricted registration for nationwide use. The disclosure of these

restrictions is included with the other requirements in Section 1(a) ignored in the Decision. The Board should not stop the analysis at the definition of "use in commerce." Applicant was excluded from these geographic areas regardless of Opposer's rights, Opposer's Mark, or Applicant's ownership of Applicant's Mark. Ownership aside, Applicant's right to use Applicant's Mark nationwide is restricted. Applicant is prohibited from use in commerce in eleven (11) major metropolitan areas and the counties in which they sit; the Agreement prohibits Applicant's use of Applicant's Mark nationwide regardless of the "impact." 44 TTABVUE 10, fn 14. Opposer respectfully requests the Board reconsider its analysis and application of law in the Decision and ultimately sustain Opposition.

**ii. The Factual Underpinnings the Board Relied Upon in Reaching Its Conclusion are not Supported by Substantial Evidence.**

To the extent the Board determined the impact of the geographic restrictions were nominal, this factual finding lacks support by substantial evidence. The restricted territories encompass major metropolitan centers that drive significant commercial activity nationwide. The major metropolitan areas wherein Applicant could not use Applicant's Mark included cities such as Dallas, Texas; Houston, Texas; Austin, Texas; San Antonio, Texas; Atlanta, Georgia; Tucson, Arizona; Phoenix, Arizona; Charlotte, North Carolina; Orlando, Florida; Ft. Lauderdale, Florida; West Palm Beach, Florida; and the counties in which they sit. 19 TTABVUE 134.

These markets represent critical commercial hubs with massive consumer populations and substantial business opportunities. Dismissing restrictions in these economically vital regions as nominal defies marketplace reality. These prohibited territories constitute prime commercial centers that any reasonable business would consider essential to national market penetration. The Board's characterization of these exclusions as insignificant ignores the concentrated economic importance of metropolitan markets and fundamentally misrepresents the severe commercial limitations these restrictions imposed on Applicant's actual rights to lawfully use its mark in commerce.

Here, the eleven (11) counties, at the time of the restriction, made up twenty-two (22) million of the three hundred and thirty (330) million in the United States. 20 TTABVUE 95-122. This is equivalent

to 6.7% of the United States' population. Analogizing holistically, 6.7% of the fifty (50) states in the United States is equal to roughly 3.4 states. This 6.7% of the population can be translated in many ways, but the point being Applicant was restricted from a large portion of the United States. The Board found the Agreement "merely prohibited use" in these eleven (11) counties but decided that was not enough. The Agreement's geographic limitations are undoubtedly an impactful or significant restriction on Applicant's right to use Applicant's Mark by any measure. This view shows the vast impact that the restrictions had on Applicant's right to use Applicant's Mark, even if not state specific.

Additionally, all competitive activities were restricted in these geographic areas under Section 5 of the Agreement. "Nothing herein shall prevent Members from competing with each other in geographic market *other than the geographic markets that comprise the Restricted Territories…*" 44 TTABVUE 7 (emphasis added); 19 TTABVUE 126 (emphasis added). The services Applicant offers are prohibited in these geographically restricted areas. Even for services that were permitted under the Agreement, neither party could advertise for those services in their restricted areas. Neither party could own, work for, or in any other way be affiliated with a business engaging in the Application's identified services in these restricted areas. The plain language of Section 5 definitively establishes both the substantial impact of the restrictions and their critical significance to the parties. The Agreement allows Section 5 to be diminishable into independent agreements segmented granularly by both time and location. 19 TTABVUE 126. The conclusion the restriction was of minimal impact is not supported by the plain language of the Agreement.

By any measure and in light of the plain language of the Agreement, the impact of the restrictions on Applicant's use of Applicant's Mark is significant. Any factual finding that the geographic restrictions had no practical effect on Applicant's right to use Applicant's Mark nationwide without restriction is not supported by substantial evidence.

3. **The Board Erred in Finding Opposer was Not an Excepted User.**

An excepted user includes parties that have rights recognized by a court decree, registration, or in this instance, terms of an agreement. *Rosso & Mastracco, Inc. v. Giant Food, Inc.,* 720 F.2d 1263, 1266

(Fed. Cir. 1983). Once these rights recognized by an agreement are clearly established, the party with these rights is considered an excepted user. *Id.* The remainder of Section 1(a) absent from the Decision states that an applicant must verify "to the *best of the verifier's knowledge* and belief, *no other person has the right to use such mark* in commerce either in the identical form thereof or *in such near resemblance thereto as to be likely*, when used on or in connection with the goods of such other person, *to cause confusion, or to cause mistake, or to deceive*, except that, in the case of every application claiming concurrent use, the applicant shall specify, to the extent of the verifier's knowledge any concurrent use by other." 15 U.S.C. § 1501 (a)(3)(D)(i) (emphasis added). An applicant has a duty to disclose this information under Section 1(a) in a verified statement where it knows of a user with clearly established rights recognized by an agreement with the applicant.

The Board found there is no excepted user under the Agreement. 44 TTABVUE 10, fn14. The Board relied upon the plain language of Section 7 of the Agreement in reaching this determination; however, this determination is not supported by substantial evidence. On the contrary, the evidence proves Opposer is an excepted user under the plain language of the contract. Under Section 7 of the Agreement, Opposer is permitted to use, in perpetuity without restrictions, *all* literal elements present in Applicant's Mark nationwide. 19 TTABVUE 129. Opposer respectfully requests the Board reconsider its position on Opposer as an excepted user.

Section 7 of the Agreement specifically allows for Opposer to create a mark, using the terms "CPR" and "CERTIFICATION" along with unique city names, with the only requirement that the design be "different". 19 TTABVUE 129; 44 TTABVUE 8. Therefore, the Agreement permitted Opposer to use all literal elements found in Applicant's Mark. Opposer is an excepted user whether admitted by Applicant or not. While Opposer was required to use a "different" logo under Section 7 of the Agreement, the differences required related solely to the design elements.

Opposer has express permission under the Agreement to use *all* literal elements in Applicant's Mark. The rights are clearly established and recognized by the Agreement permitting use of all of Applicant's literal elements regardless of Applicant's ownership of Applicant's Mark. Opposer notes that

Applicant deems Opposer's use similar due to the literal elements. 26 TTABVUE 28. The Board's determination that Opposer is not an excepted user is contrary to the plain language of the Agreement and not supported by substantial evidence.

Thus, the Board erred, as Opposer is an excepted user which Applicant should have disclosed under 15 U.S.C. § 1501(a). Regardless of Applicant's opinion on the similarities of the marks, Opposer's right to use the literal elements is clearly established and recognized under Section 7 of the Agreement, and that right belongs to Opposer whether or not Applicant decides to disclose Opposer as an excepted user. Opposer respectfully requests the Board reconsider its determination that Opposer is not an excepted user because this factual finding is not supported by substantial evidence or the plain language of the Agreement, and in doing so, reconsider the arguments advanced by Opposer related thereto in the briefings.

**B. The Board Should Modify the Decision and Remand to the Examining Attorney Considering the Evidence of Record.**

The Board has discretion to remand the Application back to the Examining Attorney for additional review considering the evidence of record. "If, during the course of an opposition, concurrent use, or interference proceeding involving an application under Trademark Act § 1, 15 U.S.C. § 1051, or Trademark Act § 44, 15 U.S.C. § 1126, facts are disclosed which appear to render the mark of the involved application unregistrable, and the matter has not been tried under the pleadings as filed by the parties or as they might be deemed to be amended pursuant to Fed. R. Civ. P. 15(b), the Board, in its decision on the proceeding, may, in addition to determining the pleaded matters, remand the application to the examining attorney for further examination in light of the disclosed facts. That is, the Board may include in its decision a recommendation that in the event the applicant ultimately prevails in the inter partes proceeding, the examining attorney reexamine the application in light of the disclosed facts." TBMP § 805.

1. **The Board Should Modify the Decision to Remand the Application Back to the Examining Attorney in Light of the Evidence of Nonuse.**

The Board found that Opposer's assertion of an additional claim of nonuse was untimely as raised for the first time in its brief and has not been tried by implied consent. 44 TTABVUE 2. Opposer did not advance this theory as its basis for Opposition, but rather presented the evidence discovered during the Trial Period to signal to the Board that amendment of the Application to be consistent with presumptions under Section 7(b) was not a viable resolution. Simply striking the restricted services and leaving, for instance, "phlebotomy," would have provided Applicant rights and presumptions to which it was not entitled. Opposer felt it was a necessary discussion given the mixed bag of services (including both restricted and unrestricted under the Agreement) and the competing theories offered by Applicant (identified in Application as "live and online," and later characterized as a hybrid offer rather than both live and online as separate offers). Had Opposer not raised the issue, the Board may have been misled into what would otherwise appear as a viable resolution.

Opposer proved, and Applicant admitted, that not all services identified in the Application are in use. The only services in use are restricted, and the only services permitted nationwide under the Agreement are not in use. Despite the uncontroverted evidence, the Board is allowing the Application to move forward simply due to the procedural timing of when the issue was raised. This will award Applicant with presumptions under Section 7(b) to which it is not entitled and will cloud the Register with incorrect information, which is against public policy. *See Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1568-1569 (Fed. Cir. 1983); *In re Bay State Brewing Co.*, 117 USPQ2d at 1965.

The Board has a vehicle to ensure clarity on the Register and should exercise its discretion to remand the Application back to the Examining Attorney for further investigation. TBMP § 805. Public policy plays a significant role in how the Board should have ruled on this Opposition—specifically, the prevention of incorrect information existing on the Register. There are mechanisms available for the Board to use, and the Board should exercise them due to the public policy concerns outlined in the briefings. 33 TTABVUE 41-49; 35 TTABVUE 15-21. Opposer respectfully requests the Board, at minimum, modify the Decision and exercise its discretion to remand the Application back to the

Examining Attorney in light of evidence of nonuse. This measured approach properly balances interests while preserving the accuracy of the Register.

**2. The Board Should Modify the Decision to Remand the Application Back to the Examining Attorney to Investigate the Impact of Opposer's Recognized Rights In and to All Literal Elements and the Impact of the Geographic Restrictions on Applicant's Entitlement to Registration.**

The Board should exercise its discretion to remand the Application back to the Examining Attorney to investigate the impact of the Agreement on Applicant's entitlement to registration. The Examining Attorney did not have the opportunity to review and consider the Agreement during the initial prosecution. Both the geographic restrictions and Opposer's right in and to all literal elements in Applicant's Mark should be considered, at the very least, to determine if the verified statement under Section 1(a) of the Trademark Act requires amendment.

The Board found Applicant was geographically restricted. While the Board determined the impact of these restrictions were insignificant, the Board should remand the Application back to the Examining Attorney for further investigation of this impact should the Board not be convinced by Opposer's arguments above. The geographic restrictions coupled with Opposer's clearly established rights in Section 7 of the Agreement should have been considered by the Examining Attorney. Geographical restrictions and any impact related thereto cannot be determined in Opposition Proceedings. 37 C.F.R. § 2.133(c).

Additionally, Opposer has a recognized right that is clearly established under the Agreement in and to the right to use all literal elements in Applicant's Mark, as discussed above. Applicant believes the marks to be similar due to those literal elements. Disclosure of these rights is part of the requirement for Section 1(a) the Board did not feel it needed to be discussed. The registration and presumptions under Section 7(b) that will result are inconsistent with Opposer's rights in and to all literal elements in perpetuity, even if the Board is not convinced on Opposer's concurrent use argument.

The Agreement and information related thereto was not available or disclosed to the Examining Attorney. The Examining Attorney should have the opportunity decide how the Agreement and respective

rights impacts Applicant's entitlement to an unrestricted registration. As such, Opposer respectfully requests the Board remand the Application back to the Examining Attorney to investigate the Agreement's impact on Applicant's entitlement to an unrestricted registration.

**IV. CONCLUSION**

In conclusion, Opposer respectfully requests that the Board reconsider its decision and enter judgment in favor of Opposer, and/or alternatively, modify the Decision to remand the Application back to the Examining Attorney.

Dated: March 25, 2025

Respectfully submitted,

*/Brittany J. Maxey-Fisher/*
Brittany J. Maxey-Fisher, Esq.
Florida Bar Number: 44,586
Patent Bar Number: 57,621
Maxey-Fisher, PLLC
Waterford Plaza
7650 West Courtney Campbell Causeway
Suite 1100
Tampa, Florida 33607
(727) 230-4949
bmaxeyfisher@maxeyfisher.com
ttab@maxeyfisher.com
*Attorneys for Opposer*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 25th day of March, 2025, a true and correct copy of OPPOSER'S MOTION FOR RECONSIDERATION AND MODIFICATION OF FINAL DECISION has been served via email to the following:

Joseph F. Southron Esq.
Florida Bar Number: 122109
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Tel.: 813.773.5105
Fax. 813.773.5103
Primary: joe@fourriverslaw.com
Secondary: eservice@fourriverslaw.com
Attorney for Applicant

Dated: <u>March 25, 2024</u>

*<u>/Brittany J. Maxey-Fisher/</u>*
Brittany J. Maxey-Fisher, Esq.
Florida Bar Number: 44,586
Patent Bar Number: 57,621
Maxey-Fisher, PLLC
Waterford Plaza
7650 West Courtney Campbell Causeway
Suite 1100
Tampa, Florida 33607
(727) 230-4949
bmaxeyfisher@maxeyfisher.com
ttab@maxeyfisher.com
*Attorneys for Opposer*