# EXHIBIT 38

Final Decision, Opp. No. 91276058 (TTAB Feb. 25, 2025)

This Opinion Is Not A
Precedent Of The TTAB

Mailed: February 25, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

*CPR Certification LLC*
*v.*
*CPR, LLC*

Opposition No. 91276058

Brittany J. Maxey-Fisher of Maxey-Fisher, PLLC
for CPR Certification LLC

Joseph F. Southron of Four Rivers Law Firm
for CPR, LLC

Before Kuhlke, Coggins and Stanley,
Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Applicant, CPR, LLC seeks registration on the Principal Register of the mark (CPR CERTIFICATION disclaimed) for "Education services, namely, providing live and on-line classes, courses, workshops, seminars and conferences in the field of cardiopulmonary resuscitation, Automated External Defibrillator (AED), first aid, Machine Training, Bloodborne Pathogen, Certified Nursing Assistant (CNA), Emergency Medical Technician (EMT), and

PHLEBOTOMY; Educational services, namely, conducting classes, courses, workshops, seminars and conferences in the field of cardiopulmonary resuscitation, Automated External Defibrillator (AED), first aid, Machine Training, Bloodborne Pathogen, Certified Nursing Assistant (CNA), Emergency Medical Technician (EMT), and PHLEBOTOMY," in International Class 41.[1]

Opposer, CPR Certification LLC, has opposed registration of Applicant's mark on the ground, as construed by the Board, that Applicant cannot claim use to support an unrestricted registration in view of the terms in the Dissolution Agreement between the parties.[2] Applicant admitted certain allegations pertaining to the subject

---

[1] Serial No. 97016512 was filed on September 8, 2021, based on allegations of first use and first use in commerce on November 4, 2015 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a).

[2] Not. of Opp., 1 TTABVUE. In the October 31, 2022 order determining Applicant's motion to dismiss the opposition, the Board construed Opposer's "lack of ownership claim" as an "improper use claim under the parties' Dissolution Agreement." 11 TTABVUE 13, 21. To the extent Opposer seeks to assert an additional claim of non use for the first time in its brief, it is untimely and has not been tried by implied consent.

Citations in this opinion to the briefs and other materials in the case docket refer to TTABVUE, the Board's online docketing system. *See New Era Cap Co. v. Pro Era, LLC*, Opposition No. 91216455, 2020 WL 2853282, at *1 n.1 (TTAB 2020).

As part of an internal Board pilot citation program on broadening acceptable forms of legal citation in Board cases, cites in this opinion are in a form provided in the TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") 101.03 (2024). This opinion cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals only by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board, this opinion cites to the **Westlaw (WL)** database. Practitioners should adhere to the practice set forth in TBMP § 101.03. Precedential decisions of the Board, and precedential decisions of the Federal Circuit involving Board decisions that issued January 1, 2008, or after may be viewed in TTABVUE by entering the proceeding number, application number, registration number, expungement/reexamination number, mark, party, or correspondent. Many precedential Board decisions that issued from 1996 to 2008 are available online from the TTAB Reading Room by entering the same information. Most TTAB decisions that issued prior to 1996 are not available in USPTO databases.

application and formation of Applicant, acknowledged that several documents speak for themselves, including the Dissolution Agreement, otherwise denied the allegations and asserted various affirmative defenses, including contractual estoppel.[3]

## I. RECORD

The record includes the pleadings and, by operation of Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1), the file of the application subject to the notice of opposition. In addition, the record includes:

- Opposer's Notices of Reliance on 1) excerpts from the discovery deposition of Douglas Joos;[4] Applicant's responses to certain Requests for Admission, Interrogatories and Request for Production of Documents;[5] printout of the file history of Applicant's application Serial No. 97187126;[6] TSDR printouts of Opposer's mark; printouts from Official State of Florida website; USPTO Working Paper from the Office of the Chief Economist; printouts from websites showing Applicant's mark;[7]

[3] Answer, 14 TTABVUE. Applicant did not brief its affirmative defenses of abandonment, acquiescence and unclean hands, and these defenses are waived or forfeited. *TiVo Brands LLC v. Tivoli, LLC*, Opp. No. 91221632, 2018 WL 6921323, at *3 (TTAB 2018).

[4] 19 TTABVUE; 20 TTABVUE.

[5] 19 TTABVUE. Responses to document requests are not admissible absent an admission or self-authentication under Trademark Rule 2.122, 37 C.F.R. § 2.122. Applicant's response to the document request indicating no documents exist is properly of record. *See City National Bank v. OPGI Management GP Inc./Gestion OPGI Inc.*, 106 USPQ2d 1668, 1674 n.10 (TTAB 2013) (responses to document production requests are admissible solely for purposes of showing that a party has stated that there are no responsive documents); *ShutEmDown Sports Inc. v. Lacy*, 102 USPQ2d 1036 n.7 (TTAB 2012) (written responses to document requests indicating that no documents exist may be submitted by notice of reliance).

[6] 19 TTABVUE.

[7] 20 TTABVUE. It was unnecessary to include Applicant's application as that is automatically part of the record Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b).

- Opposer's Testimony Declarations, with exhibits, of Mr. Sami Halabi, Opposer's founder and CEO;[8] Laura Ahammer, Opposer's COO;[9]

- Applicant's Notice of Reliance on Opposer's responses to certain Interrogatories; TSDR printout of Opposer's applications Serial Nos. 97401683 and 97016512; printouts from the Official State of Florida website; printouts of archived and current web pages;[10] Applicant's Notice of Reliance on the discovery deposition of Mr. Halabi;[11]

- Applicant's Testimony Declaration, with exhibits, of Mr. Douglas K. Joos, Applicant's officer, director, manager and executive; Richard Bussey, Opposer's former employee;[12] and

- Opposer's Rebuttal Notice of Reliance on excerpts from the discovery deposition of Douglas Joos; Applicant's responses to Request for Admission.[13]

The parties filed relevance and hearsay objections to testimony and evidence introduced into the record. Because an opposition proceeding is akin to a bench trial, the Board is capable of assessing the proper evidentiary weight to be accorded the testimony and evidence, taking into account the imperfections surrounding the admissibility of such testimony and evidence. This precludes the need to strike the testimony and evidence. Given the circumstances, we choose not to make specific rulings on each objection. As necessary and appropriate, we will point out any

[8] 21, 23 TTABVUE.

[9] 22 TTABVUE.

[10] 25 TTABVUE.

[11] 24 TTABVUE (confidential); 32 TTABVUE (public).

[12] 26 TTABVUE.

[13] 30 TTABVUE.

limitations applied to the evidence or otherwise note that we may not rely on the testimony or evidence in the manner sought.

## II. PARTIES

As explained by Opposer, "[t]he principals [Halabi and Joos] of Opposer and Applicant are former business partners previously operating as Fit Industries, Halabi and Joos, through the Parties, continue to operate businesses in the cardiopulmonary resuscitation ('CPR') and related-trainings industry." Opp. Brief, 33 TTABVUE 15; Halabi Decl. 23 TTABVUE 2. Halabi and Joos formed Fit Industries which performed services related to providing training and certification in CPR and First Aid. Opp. Brief, 33 TTABVUE 17; Halabi Decl., 23 TTABVUE 4; Joos Decl., 26 TTABVUE 3. After four years, on February 8, 2021, Fit Industries was dissolved by Dissolution Agreement, which is discussed in further detail below. Halabi Decl., 23 TTABVUE 5; Joos Decl., 26 TTABVUE 3. Thereafter Applicant was formed and is solely operated by Joos; Opposer is owned and operated by Halabi. Halabi Decl., 21 TTABVUE 2; 23 TTABVUE 7; Joos Decl., 26 TTABVUE 2. There is no dispute that Opposer and Applicant are competitors. 21 TTABVUE 3; 26 TTABVUE 2, 5. On March 17, 2022, Joos (Applicant's sole operator) sent Opposer a cease and desist letter demanding Opposer cease use of Opposer's new logo. Halabi Decl., 23 TTABVUE 14.

## III. ENTITLEMENT TO A STATUTORY CAUSE OF ACTION

Entitlement to a statutory cause of action is a requirement that must be proven by the plaintiff in every inter partes case. *See Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1372 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). A party in the

position of plaintiff may oppose registration of a mark where doing so is within the zone of interests protected by the statute, and it has a reasonable belief in damage that would be proximately caused by registration of the mark. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303-05 (Fed. Cir. 2020).

The parties are competitors, and Opposer received a cease and desist letter from Applicant. In view thereof, Opposer's entitlement to a statutory cause of action to oppose registration of Applicant's mark is established. *Milwaukee Elec. Tool Corp. v. Freud Am., Inc.*, Canc. No. 92059634, 2019 WL 6522400, at *5 (TTAB 2019) (entitlement established because parties are competitors); *Miller v. Miller*, Opp. No. 91184841, 2013 WL 2329829, at *4 (TTAB 2013) (competitive need and cease and desist letter establish entitlement). Applicant does not dispute Opposer's entitlement.

## IV. IMPROPER USE CLAIM

Opposer frames the issue as "[w]hether Applicant's Application for the applied-for mark claiming unrestricted, nationwide exclusive use, when applied for during a contractually agreed-to Restricted Period, is invalid due to Applicant's attempt to obtain trademark rights it is not entitled to." Opp. Brief, 33 TTABVUE 15. Specifically, Opposer argues that:

> Applicant could not lawfully use Applicant's Mark in the manner applied for at the time of filing due to contractual limitations. Applicant is therefore not entitled to registration for Applicant's Application for Applicant's Mark. To allow registration would be in direct conflict with the rights and obligations negotiated in a private agreement by former business partners dissolving a former entity …. Specifically, the Parties agreed to geographic and temporal limitations regarding use of the applied-for mark. … Applicant could not use Applicant's Mark in certain geographic locations with respect to specified services in

> the Dissolution Agreement. Temporally, Applicant was restricted from using Applicant's Mark during the negotiated Restricted Period from February 08, 2021, to February 08, 2022. These geographical and temporal limitations prohibited Applicant's entitlement to an unrestricted, nationwide, exclusive right to use Applicant's Mark. Despite these restrictions, Applicant filed Applicant's Application under Section 1(a) on September 08, 2021, with the Restricted Period. Applicant's Application claims use in commerce and ascribes to a declaration that Applicant had the exclusive right to use the applied-for mark nationwide. Applicant's Application is improper as it seeks an unrestricted registration when Applicant cannot lawfully use Applicant's Mark in commerce nationwide at the time of filing and submission of the allegation of use due to restrictions geographically. Applicant filed Applicant's Application incongruous with the Dissolution Agreement attempting to take advantage of the USPTO's process and procedure to obtain rights it is not entitled to.

Opp. Brief, 33 TTABVUE 10-11.

In response, Applicant argues:

> Applicant has and always had the exclusive right to use Applicant's Mark in commerce nationwide, in every state in the United States. Applicant's exclusive rights in and to Applicant's Mark were not limited by the operation of the Restrictive Covenant, which for a period of one year restricted Applicant's ability to engage in certain defined activities in eleven (11) counties in the entire country, but did not prohibit use in commerce in those counties or anywhere else within the United States.

App. Brief, 34 TTABVUE 12.

The pertinent parts of the Dissolution Agreement are set forth below:

> 5. Post Dissolution Restrictive Covenant
>
> Members hereby agree that they will not, in any Restricted Territory, during the twelve (12) month period following the Effective Date of this Agreement ("Restricted Period") engage in, be associated with, employed by, perform

services for or have any type of ownership interest in, directly or indirectly, a business in any manner similar to, or in competition with, the Company's business of providing training and certification for CPR, First Aid, and Bloodborne Pathogen ("Fit's Business Services"), or other acts of competition which include, (i) the pursuit of customers through the use of websites or by any other means where such customers are solicited for any Fit's Business Services in the other Member's Restricted Territory, and (ii) setting up training sites in the other Member's Restricted Territory (collectively "Prohibited Activities"). Prohibited Activities do not include the ownership of domain names that are not in active use. For sake of clarity, this Agreement does not prohibit either Member from selling CPR training as part of a more expansive training program such as Certified Nurse Assistant in the other Member's Restricted Territory, and does not prohibit either Member from conducting online CPR training. Halabi and Joos agree that they will not advertise for online training for any of Fit's Business Services in the other Member's Restricted Territory. …

Nothing herein shall prevent Members from competing with each other in geographic markets other than the geographic markets that comprise the Restricted Territories and there will be no competitive restrictions for any customer, consultant, supplier or other business relationship if any such stakeholder applies for training in a Member's geographic market or would prefer to conduct business with a Member in their markets. …

7. Ownership of Company Logo

The Members agree that the Company's current logo as seen on the websites currently operated by Fit shall become the sole and exclusive property of Joos. Halabi may use the words "CPR," "Certification," and the unique city name in a new logo, but the design (as used for the websites operated by Halabi, and as used in other documents and materials for the operation of the business, such as Certificates of Completion and business cards) cannot incorporate the logo and must be different than the one currently used by Fit. Joos and Halabi agree that both members may use existing printed material for a period of 14 days from the Effective Date for their Distributed

> Websites, thus allowing them sufficient time to order and obtain new printed materials for their Distributed Websites.

Joos Decl. Exh. A, 26 TTABVUE 11.

Under the terms of the Dissolution Agreement, Applicant was barred from eleven metropolitan areas in the United States for one year, but free to use the mark otherwise throughout the United States. Opposer is barred from using the mark.

Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a) provides that an "owner of a trademark used in commerce may request registration of its trademark on the principal register." Section 45 of the Trademark Act, 15 U.S.C. § 1045 defines commerce as meaning "all commerce which may lawfully be regulated by Congress." And "use in commerce" is defined as "the bona fide use of a mark in the ordinary course of trade, … a mark shall be deemed to be in use in commerce-- … (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rending the services is engaged in commerce in connection with the services." There is no dispute that on September 8, 2021, Applicant's filing date, Applicant could use the mark in commerce in more than one State. The restrictions that applied during that time, did not restrict Applicant to only intrastate commerce, it merely prohibited use in eleven counties in the United States. In view thereof, the application is in compliance with the Trademark Act as to the "restricted" services because they could still be performed by Applicant in more than one state. As Applicant posits "[e]ven with the Restrictive Covenant, both Applicant and Opposer were nonetheless entitled to engage in other

competitive activities, including using their respective marks in commerce, without restrictions in every single state in the United States." App. Brief, 34 TTABVUE 17.[14]

In view thereof, Opposer's claim fails.

**DECISION:** The opposition is dismissed.

[14] Opposer further asserts that the Dissolution Agreement did not confer Fit Industries' goodwill in the mark, i.e., Fit Industries' trademark rights were abandoned upon dissolution, presumably to support the idea that Applicant could not rely on Fit Industries' prior unrestricted use. However, given our determination with regard to the impact of the restrictions, Applicant need not rely on Fit Industries' prior unrestricted use. Thus, we do not reach the issue of whether the mark was abandoned by Fit Industries.

Opposer's suggestion that Applicant should have filed a concurrent use application is misplaced. A concurrent use application is used when there is an excepted user of the same or similar mark. Here, there is no excepted user; under paragraph 7 of the Dissolution Agreement Opposer is prohibited from using Applicant's logo and must use a different one.

In view of our decision we do not reach the estoppel defense.