# EXHIBIT 39

Order on Request for Reconsideration, Opp. No. 91276058 (TTAB June 4, 2025)

This Opinion Is Not A Precedent Of The TTAB

Mailed: June 4, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

*CPR Certification LLC*
*v.*
*CPR, LLC*

Opposition No. 91276058

Brittany J. Maxey-Fisher of Maxey-Fisher, PLLC
for CPR Certification LLC

Joseph F. Southron of Four Rivers Law Firm
for CPR, LLC

Before Pologeorgis, Elgin, and Stanley,[1]
Administrative Trademark Judges.

Opinion by Stanley, Administrative Trademark Judge:

**On Request for Reconsideration**

On February 2, 2025, the Board issued a decision dismissing the opposition (the "Decision"). The Board dismissed Opposer's sole claim of improper use because Applicant's application for an unrestricted registration was in compliance with the

[1] Administrative Trademark Judge Kuhlke, who authored the Board's decision issued on February 2, 2025, and Administrative Trademark Judge Coggins, who was on the panel for the Board's final decision, have both retired from the Board. Administrative Trademark Judges Pologeorgis and Elgin have been substituted for Judges Kuhlke and Coggins.

Trademark Act notwithstanding the Post Dissolution Restrictive Covenant in the parties' Dissolution Agreement.[2]

Opposer now seeks reconsideration of the Decision under Trademark Rule 2.129(c), 37 C.F.R. § 2.129(c).[3] Opposer contends that: (1) the Board should modify the Decision to enter judgment in favor of Opposer because the Board erred in concluding that Applicant is entitled to an unrestricted registration;[4] and (2) in the event the Board does not enter judgment in favor of Opposer, the Board should remand Applicant's application to the Examining Attorney to consider Opposer's evidence of nonuse and the impact of the restrictions set forth in the Dissolution Agreement.[5] Although Applicant was not required to respond to Opposer's request for reconsideration, Applicant has chosen to do so.[6] *See Volkswagenwerk AG v. Ridewell Corp.*, 1979 TTAB LEXIS 4, at *1 (TTAB 1979) ("there is no requirement in Rule 2.129(c) that the prevailing party must file a response to a request for reconsideration in order to preserve a victory").[7]

---

[2] Decision, 44 TTABVUE. Citations to the appeal record are to TTABVUE, the Board's online docketing system.

[3] Opposer's Mot. For Reconsideration, 45 TTABVUE.

[4] *Id.* at 4-13.

[5] *Id.* at 13-16.

[6] Applicant's Opp. to Mot. for Reconsideration, 46 TTABVUE.

[7] As part of an internal Board pilot program, this opinion cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals by the pages on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board, this opinion uses citations to the LEXIS legal database and cites only precedential decisions, unless otherwise noted. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 101.03(a)(2) (2024) for acceptable citation forms to TTAB cases.

The standard for reconsidering final decisions under Trademark Rule 2.129(c), 37 C.F.R. § 2.129(c), is set forth in § 543 of the TBMP:

> Generally, the premise underlying a request for rehearing, reconsideration, or modification under 37 C.F.R. § 2.129(c) is that, based on the evidence of record and the prevailing authorities, the Board erred in reaching the decision it issued. … [T]he request normally should be limited to a demonstration that, based on the evidence properly of record and the applicable law, the Board's ruling is in error and requires appropriate change.

For the reasons explained below, we deny Opposer's motion for reconsideration and its alternative request to remand.

## I. The Board Did Not Err in Concluding that Applicant Is Entitled to an Unrestricted Registration

Opposer argues, among other things, that the Board erred in concluding that Applicant is entitled to an unrestricted registration because: (1) "[t]he Board only examined whether Applicant, as owner of Applicant's Mark, has any use of Applicant's Mark within the framework of the definition of 'use in commerce' … [and] [b]y stopping the inquiry at the definition, the Board improperly grant[ed] broader rights than Applicant actually possesses under the [Dissolution] Agreement";[8] (2) "[t]he Decision is inconsistent with applicable law insofar as the Board [found] Applicant's right to use Applicant's Mark was geographically restricted but also award[ed] Applicant an unrestricted registration";[9] (3) "[t]he Board erred in concluding that the impact of geographic restrictions under the [Dissolution] Agreement [was] insignificant enough to preclude Applicant's entitlement to an

[8] Opposer's Mot. For Reconsideration, 45 TTABVUE 4.

[9] *Id.* at 5-6.

unrestricted registration";[10] (4) "[l]imiting use to only intrastate or observing that Applicant can use Applicant's Mark in more than one state is not an appropriate baseline to determine whether geographic restrictions preclude unrestricted registrations because it conflicts with applicable law";[11] and (5) "the Decision overlooks a key component of the analysis: the [Dissolution] Agreement restricted Applicant's lawful right to use Applicant's Mark nationwide irrespective of whether Applicant's use meets the definition of 'use in commerce.'"[12]

Opposer's arguments are misplaced. First, the Board's finding that Applicant is entitled to an unrestricted registration is not based solely on Applicant meeting the definition of "use in commerce" under the Trademark Act. While that is a requirement, and Applicant would not be entitled to register Applicant's mark without meeting that requirement, the Decision also is based on the Board's review of the express provisions of the Dissolution Agreement. The Decision quotes Section 5 ("Post Dissolution Restrictive Covenant") and Section 7 ("Ownership of Company Logo") of the Dissolution Agreement[13] and further notes that "'[e]ven with the Restrictive Covenant, both Applicant and Opposer were nonetheless entitled to engage in other competitive activities, including using their respective marks in commerce, without restrictions in every single state in the United States.'"[14]

[10] *Id.* at 6.

[11] *Id.* at 8.

[12] *Id.* at 9.

[13] Decision, 44 TTABVUE 7-9.

[14] *Id.* at 9-10 (quoting Applicant's Br., 34 TTABVUE 17).

Taking a closer look at these provisions, Section 7 granted Joos (Applicant's officer, director, manager and executive)[15] "sole and exclusive" ownership of Applicant's mark. Section 5 prohibited the parties from engaging in certain activities for a limited period of time in certain cities and counties in the United States. With respect to Applicant, Applicant was prohibited, for a period of one year, from "providing training and certification for CPR, First Aid, and Bloodborne Pathogen ('Fit's Business Services'), or other acts of competition which include, (i) the pursuit of customers through the use of websites or by any other means where such customers are solicited for any Fit's Business Services in the other Member's Restricted Territory, and (ii) setting up training sites in the other Member's Restricted Territory (collectively 'Prohibited Activities')[,]"[16] with Applicant's "Restricted Territories" comprising "eleven metropolitan areas in the United States."[17] Section 5 further provides that:

> Prohibited Activities do not include the ownership of domain names that are not in active use. For sake of clarity, this Agreement **does not prohibit** either Member from selling CPR training **as part of a more expansive training program** such as Certified Nurse Assistant **in the other Member's Restricted Territory**, and **does not prohibit** either Member from conducting online CPR training. Halabi and Joos agree that **they will not**

[15] *Id.* at 4 (citing Joos Decl., 26 TTABVUE).

[16] *Id.* at 8 (quoting Section 5 of the Dissolution Agreement).

[17] *Id.* at 9. We note that the Restrictive Covenant applied between February 8, 2021 and February 8, 2022 (*id.* at 7) (quoting Opposer's Br., 33 TTABVUE 10-11), and therefore not only is the Restrictive Covenant expired now, but it had expired by the time Opposer filed its Notice of Opposition on May 9, 2022.

> **advertise for online training** for any of Fit's Business Services **in the other Member's Restricted Territory**.[18]

Section 5 is silent on the use of trademarks. That is not surprising. While Applicant may have been precluded from engaging in the "Prohibited Activities" in the eleven counties during the one-year Restrictive Period (and a result, was precluded from using Applicant's mark in connection with those "Prohibitive Activities"), the carveouts to the "Prohibited Activities" allow Applicant to provide services (including services encompassed by the identification of services in Applicant's application) in a "Restricted Territory" during the "Restricted Period" in certain circumstances (e.g., CPR training as part of a more expansive training program such as Certified Nurse Assistant). As a result, Applicant was not precluded from using Applicant's mark in connection with those carved-out services anywhere in the country. The fact that Applicant may not have engaged in any of the activities covered by the carveout in a Restricted Territory during the Restricted Period is irrelevant. Applicant satisfied the requirement for use in commerce under the Trademark Act and Applicant was not prohibited from using Applicant's mark in any state, and could even use the mark in the Restricted Territory under certain circumstances.

Second, the Decision is not inconsistent with established precedent. Opposer does not cite any new case law (or even different case law than cited in its main brief). In its motion, Opposer relies heavily on the Board's decision in *In re Sun Ref. & Mktg.*

[18] *Id.* at 8 (quoting Section 5 of the Dissolution Agreement) (emphasis added).

*Co.*, 1991 TTAB LEXIS 58 (TTAB 1991). There, registration of the applicant's marks were opposed, and as part of a settlement agreement that resulted in the withdrawal of the opposition and submission of amended declarations to the involved applications, the applicant acknowledged the opposer's "right to use the term ULTRA for gasoline and gasoline related products and automotive service station services in the area comprising the states of California, Nevada, New Mexico, Arizona, Oregon and Hawaii" and "agreed 'to refrain from itself making any use of a mark either including or comprising [sic] of, or consisting of, the term ULTRA in [Opposer's territorial area], in connection with the sale of products and/or services through automotive service stations.'" *Id.* at *2-3. In its amended declarations, the applicant "acknowledged that it would refrain from using its mark in the states of California, Nevada, New Mexico, Arizona, Oregon and Hawaii" but nevertheless sought an unrestricted registration. *Id.* at 3. The examining attorney refused the registrations because the settlement agreement "preclude[d] applicant from entitlement to a geographically unrestricted registration." *Id.* The Board agreed that the applicant was not entitled to an unrestricted registration. *Id.* at *6.

Unlike *Sun Ref. & Mktg.*, Applicant here did **not** agree to refrain from using its mark in any state. It agreed to refrain from engaging in the "Prohibited Activities" for a limited period of time in certain defined metropolitan areas, but as already discussed, the restriction included carveouts that allowed what would otherwise be a "Prohibited Activity" to take place within a Restricted Territory during the Restricted Period provided certain conditions were satisfied (e.g., CPR training as part of a more

expansive training program such as Certified Nurse Assistant). Opposer fails to cite a single case that required a restriction in the identification of goods and services under a comparable scenario; nor are we are of any such case.[19]

In short, the Dissolution Agreement did not restrict, as Opposer puts it, "Applicant's lawful right to use Applicant's Mark nationwide."[20] The Board did not err in concluding that Applicant's application satisfied the requirement of "use in commerce" of the Trademark Act and that the Dissolution Agreement did not preclude Applicant from obtaining an unrestricted registration.

## II. The Board Did Not Err in Concluding that Opposer Is Not an "Excepted User"

Opposer also argues that the Board erred in determining that Applicant was not an "excepted user" such that Applicant had "a duty to disclose this information under Section 1(a) [of the Trademark Act, 15 U.S.C. § 1051(a)]".[21] Opposer argued at trial that Applicant should have filed a concurrent use application,[22] and Opposer now expands on that argument, arguing that it is an "excepted user" because "[u]nder Section 7 of the [Dissolution] Agreement, Opposer is permitted to use, in perpetuity without restrictions, **all** literal elements present in Applicant's Mark nationwide."[23]

---

[19] If Applicant violated Section 5 of the Dissolution Agreement at any time, Opposer was not without recourse. *See, e.g.,* 19 TTABVUE 130-132 (Dissolution Agreement Sections 12 (Future Disagreements), 19 (Governing Law), 22 (Jurisdiction and Venue), and 23 (Enforcement Costs)).

[20] Opposer's Mot. for Reconsideration, 45 TTABVUE 9.

[21] *Id.* at 12.

[22] Opposer's Brief, 33 TTABVUE 50-53.

[23] Opposer's Mot. for Reconsideration, 45 TTABVUE 12 (emphasis in original).

As explained in the Decision, "[a] concurrent use application is used when there is an excepted user of the same or similar mark."[24] *See* TBMP § 1102.01 ("A concurrent use application is an application in which the applicant concedes that its use of the mark is not exclusive and provides the USPTO with all the information the applicant has regarding others who are using the same or similar mark."). Section 7 of the Dissolution Agreement allows Opposer to create a mark, using the terms "CPR" and "CERTIFICATION" along with unique city names, but the design must be "**different**" than Applicant's mark.[25] As such, the Dissolution Agreement prohibits Opposer and Applicant from being users of the "same or similar" marks, and therefore, the Board did not err in concluding that Opposer is not an "excepted user" and that Applicant was not required to file a concurrent use application or otherwise identify Opposer as an excepted user.

## III. Remand to the Examining Attorney Is Not Appropriate

In the alternative to entering judgment in favor of Opposer, Opposer requests that the Board remand Applicant's application to allow the Examining Attorney to consider: (1) evidence of nonuse;[26] and (2) the impact of the Dissolution Agreement on Applicant's entitlement to registration, including both the geographic restrictions and Opposer's rights in and to the literal elements in Applicant's mark.[27] The Board

---

[24] Decision, 44 TTABVUE 10 n. 14.

[25] Decision, 44 TTABVUE 8-9 (quoting Section 7 of Dissolution Agreement) (emphasis added).

[26] Opposer's Mot. for Reconsideration, 45 TTABVUE 13-15.

[27] *Id.* at 15-16.

did not err by not remanding the application in the Decision, and we find that remand is not appropriate now.

Trademark Rule 2.131, 37 C.F.R. § 2.131, provides:

> If, during an inter partes proceeding involving an application under Section 1 or 44 of the Act, facts are disclosed which appear to render the mark unregistrable, but such matter has not been tried under the pleadings as filed by the parties or as they might be deemed to be amended under Rule 15(b) of the Federal Rules of Civil Procedure to conform to the evidence, the Trademark Trial and Appeal Board, in lieu of determining the matter in the decision on the proceeding, may remand the application to the trademark examining attorney for reexamination in the event the applicant ultimately prevails in the inter partes proceeding. Upon remand, the trademark examining attorney shall reexamine the application in the light of the matter referenced by the Board. If, upon reexamination, the trademark examining attorney finally refuses registration to the applicant, an appeal may be taken as provided by §§ 2.141 and 2.142.

"If a party to an opposition, concurrent use, or interference proceeding involving an application under Trademark Act § 1, 15 U.S.C. § 1051, or Trademark Act § 44, 15 U.S.C. § 1126, believes that the facts disclosed therein appear to render the mark of the involved application unregistrable, but the matter was not pleaded or tried by the express or implied consent of the parties pursuant to Fed. R. Civ. P. 15(b), the party may request that the Board include, in its decision in the proceeding, a 37 C.F.R. § 2.131 remand to the examining attorney." TBMP § 805. "The request may be made in the party's brief on the case, or by separate motion." *Id.*

Opposer never pleaded a claim of nonuse. Opposer raised the issue of nonuse for the first time in its trial brief, and Opposer did not at that time request in its brief or

by separate motion that the Board remand in view of the alleged new evidence.[28] In the Decision, the Board explained: "To the extent Opposer seeks to assert an additional claim of nonuse for the first time in its brief, it is untimely and has not been tried by implied consent."[29] The Board did not err in so holding, and we find that remand for alleged evidence of nonuse is not appropriate.

Likewise, Opposer's rights in and to the literal elements in Applicant's mark ("CPR" and "CERTIFICATION") are irrelevant to the registrability of Applicant's mark, which is a composite mark. The literal elements of Applicant's mark have been disclaimed by Applicant. Trademark Act Section 6(a), 15 U.S.C. § 1056(a). "A disclaimer is a statement that the applicant or registrant does not claim the exclusive right to use a specified element or elements of the mark in a trademark application or registration." TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1213 (May 2025). Therefore, Opposer's rights "in and to the literal elements in Applicant's mark" are the same as anyone else's rights, and the alleged "rights" in those terms granted to Opposer under Section 7 of the Dissolution Agreement do not impact the registrability of Applicant's mark.

And finally, for the reasons already discussed, the (now-expired) limited geographic restrictions in the Dissolution Agreement do not preclude Applicant from

---

[28] Opposer states that it only brought up the issue of nonuse "to signal to the Board that amendment of the Application [as proposed by Applicant in the event the opposition was sustained] … was not a viable resolution." Opposer's Mot. for Reconsideration, 45 TTABVUE 14. The Board did not sustain the opposition and therefore did not address Applicant's alternative motion to amend its application.

[29] Decision, 44 TTABVUE 2 n.2.

obtaining an unrestricted registration, and therefore, there is no need to remand the application to the Examining Attorney to consider those restrictions.

In short, remand is appropriate when "facts are disclosed which appear to render the mark unregistrable." Trademark Rule 2.131, 37 C.F.R. § 2.131. Opposer does not identify facts that would render Applicant's mark "unregistrable." Accordingly, we deny Opposer's alternative request to remand Applicant's application to the Examining Attorney.

**Decision:** Opposer's request for reconsideration and its alternative request to remand Applicant's application to the Examining Attorney are **denied**.