**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DOUGLAS K. JOOS, JR. and
CPR LLC,

Plaintiffs,

v. Case No.: 8:25-cv-03368-TPB-AEP

SAMI HALABI and CPR
CERTIFICATION, LLC

Defendants.
_________________________________/

**DEFENDANTS' VERIFIED MOTION FOR**
**SUMMARY JUDGMENT AS TO LIABILITY**

Defendants, Sami Halabi ("Halabi") and CPR Certification, LLC ("CPR Certification") (collectively, "Defendants"), by counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, Local Rule 3.01, and this Court's August 4, 2026 Order [Doc. 44], move this Court for entry of summary judgment against Plaintiffs, Douglas K. Joos, Jr. ("Joos") and CPR LLC (collectively, "Plaintiffs"). The grounds upon which this motion is based are set forth below.

## INTRODUCTION

On February 8, 2021, Halabi and Joos entered into a Partnership Dissolution Agreement (the "Dissolution Agreement" or "Agreement") pursuant to which they dissolved their prior joint business, Fit Industries, LLC ("FIT").[1] The dissolution was

---

[1] A true and correct copy of the Dissolution Agreement is attached as **Exhibit A**.

not an amicable one, by any measure. Fortunately, the parties were able to resolve their disagreements at the time and agreed upon a very detailed method by which they would divide and dissolve FIT.

A principal issue in this action, and one carefully addressed by the parties in the Dissolution Agreement, is Halabi and Joos's agreement on the use of FIT's company logo post-dissolution. The parties agreed that Joos would keep the existing FIT logo for his new business, and Halabi would use a different logo for his new business. The parties agreed that Halabi could use "CPR," "Certification," and the unique city name in his logo for his new company. And the parties expressly agreed to only one limitation for Halabi's logo – "the design . . . must be different than the one currently used by Fit." Halabi and Joos included no other qualification.

On February 22, 2021, at 12:01 a.m., Joos began operating his new company, CPR LLC, with the former FIT logo, and Halabi simultaneously began operating his new company, CPR Certification, with his different logo. The two logos for the parties' respective training sites post-dissolution are below:

Joos's logo:

CERTIFICATION CPR

Halabi's logo:

CPR CERTIFICATION

Words in contracts matter. The Dissolution Agreement did not prohibit Halabi from using a heart. It did not prohibit Halabi from using any particular hue of red. And it did not require Halabi's logo to be "substantially," "sufficiently," or "substantively" different. The singular requirement was different. As is clear from the above, and as discussed in more detail below, Halabi's logo is different from Joos's logo in eight separate ways. Joos cannot now rely on statutory or common law claims to try to alter, undo, or rewrite his contractual commitments and obligations.

Instead of moving promptly to raise any purported Lanham Act claims in February of 2021, when Halabi began to use his logo, Plaintiff, CPR LLC, waited almost five years to file this action, and to raise its federal and state trademark claims in a bid to protect what is, at best, a descriptive mark without secondary meaning. CPR LLC's inexcusable delay, waiting until CPR Certification grew into a successful business, unduly prejudices Defendants, and it should be rejected by this Court.

## UNDISPUTED FACTS

### I. The Parties' February 8, 2021, Dissolution Agreement

1. On February 8, 2021, Halabi and Joos entered into the Dissolution Agreement. Pursuant to the Dissolution Agreement, Halabi and Joos agreed to dissolve their jointly owned company, FIT. **Exhibit A,** ¶1.

2. As part of the dissolution, Halabi and Joos agreed to divide equally FIT's twenty-two existing websites. **Exhibit A,** ¶¶3, 6. On February 22, 2021, at 12:01 a.m., Joos began operation of his separate new company with eleven FIT websites, and Halabi simultaneously began operation of his new company with eleven FIT websites.

3. Also as part of the dissolution, the parties agreed to the following:

> Ownership of Company Logo. The Members agree that the Company's current logo as seen on the websites currently operated by Fit shall become the sole and exclusive property of Joos. **Halabi may use the words "CPR," "Certifications," and the unique city name in a new logo, but the design** (as used for the websites operated by Halabi, and as used in other documents and materials for the operation of the business, such as Certificates of Completion and business cards) cannot incorporate the logo and **must be different than the one currently used by Fit**. . . . **Exhibit A,** ¶7 (emphasis added).

4. The "different" requirement in paragraph 7 constitutes the entire agreed-upon universe of limitations on Halabi's logo.

5. Prior to the February 22, 2021, dissolution date, Halabi retained freelance digital designers on Fiverr, an online marketplace where freelance designers sell digital services and products, to design a new CPR logo. With the designers' help, Halabi chose his logo, which is set forth on page 2, above.

6. Halabi and Joos's logos have the following differences:

a. The word placement on Plaintiffs' logo is different than Halabi's logo. Plaintiffs' logo reads "Certification CPR." Halabi's logo reads "CPR Certification."

b. The heart on Plaintiffs' logo is a material part of the "R" in its "CPR." The heart in Halabi's logo does not touch the "CPR."

c. The "R" on Plaintiffs' logo is almost closed, with a small circle in the middle. Halabi's "R" is an open and traditional letter.

d. The sinusoidal wave through Plaintiffs' heart begins inside the "R" in "CPR," is a thin line, has several peaks and valleys and irregular bumps in the pulse, and looks like an actual sinusoidal wave. Halabi's sinusoidal wave does not begin in the "R," is a thicker line, and is much simpler and representative, with only one peak and valley.

e. The heart on Plaintiffs' logo is plump and round. The heart in

Halabi's logo is lean and angular.

f. The top of the heart on Plaintiffs' logo is above the "CPR" letters. The top of the heart on Halabi's logo is even with the "CPR" letters.

g. Halabi uses a different and thinner font in his logo. His font, London Bridge, is thinner than Plaintiffs' font.

h. The red color used in Halabi's logo is lighter than the color used by Plaintiffs in their logo.

7. The Dissolution Agreement also contains a condition precedent to either party maintaining an action for an alleged breach of the Agreement:

> Future Disagreements. The Members [Halabi and Joos] agree that should there be a dispute in the future regarding the obligations and prohibitions in this Agreement and for any other matter arising out of or connected to this Agreement, **the non-breaching party will first contact the alleged breaching party directly in writing to resolve the dispute short of litigation**. The alleged breaching party will then be given fifteen (15) days to cure the alleged breach condition. **Exhibit A,** ¶12. (Emphasis added).

## II. Joos's Communications Regarding Halabi's Logo.

8. On February 24, 2021, Joos, through counsel, sent correspondence to Halabi, through counsel, stating the following:

> Also, Doug thinks there is a legitimate question of whether Sami's new logo is **sufficiently** different from the Company logo that Doug was awarded under the Dissolution Agreement. (Emphasis added).[2]

9. Because Halabi maintained that his different logo complied with the plain language of the Dissolution Agreement, and the Dissolution Agreement does not contain the word "sufficiently" to modify "different," Halabi did not change his logo

[2] A true and correct copy of the February 24, 2021, correspondence is attached as **Exhibit B**.

in response to Joos's February 24, 2021, request.[3]

10. On March 17, 2022, more than one year after his initial February 24, 2021, email regarding Halabi's logo, Joos sent correspondence to Halabi, titled "Written Notice," pursuant to the "Future Disagreements" and condition precedent provision in the Dissolution Agreement (the "Written Notice").[4] In his Written Notice, Joos stated that "[p]ursuant to Section 12 of the Agreement, you will have fifteen (15) days to cure the breaches identified below." **Exhibit C**, p.1.

11. As for the breach Joos identified in the Written Notice, Joos alleged that Halabi's new logo was "essentially identical to the logo used by Mr. Joos," and Halabi's use of his "essentially identical" logo put Halabi in breach of paragraphs 7 and 8 of the Dissolution Agreement. **Exhibit C**, p.2. Joos identified no other purported colorable breaches in his Written Notice.[5]

12. In his Written Notice, Joos also wrote that "[i]t has come to our attention that you are responsible for infringement of certain copyrights that are owned and controlled by Mr. Joos." Joos relied on Halabi's "essentially identical" logo as the basis of his allegation, and cited to his (Joos's) CPR Certification Tampa website as an example of the logo upon which Halabi allegedly infringed. **Exhibit C, p.1.**

13. Joos also wrote: "Mr. Joos treats copyright infringement as a very serious

[3] After February 24, 2021, CPR Certification grew from 11 training locations to 107 training locations.
[4] A true and correct copy of Joos's March 17, 2022, Written Notice is attached as **Exhibit C**.
[5] Joos also wrote in his Written Notice that Halabi's websites violated Paragraph 8 of the Agreement because "a reasonable person viewing your websites would be confused that they are operated by the same company as the ones operated by Mr. Joos." **Exhibit C**, p. 2. As discussed below, this statement was nonsensical. The Agreement does not require Halabi to maintain a website that will not be confused with Joos's website.

matter and is prepared to fully enforce his rights against all infringers." **Exhibit C, p.1.**

14. On April 6, 2022, Halabi responded to Joos's Written Notice (the "Response").[6] Regarding Joos's allegations, Halabi responded as follows:

> Section 7 of the Dissolution Agreement provides, in part, as follows:
>
> > The Members agree that the Company's current logo as seen on the websites currently operated by Fit shall become the sole and exclusive property of Joos. Halabi may use the words "CPR," "Certification," and the unique city name in the new logo, but the design . . . cannot incorporate the logo and must be different than the one currently used by Fit.
>
> The parties' agreement does not require that the logos be "materially" different, "substantively" different, "substantially" different, or different so that "a reasonable person viewing your websites would be confused that they are operated by the same company as the one operated by Mr. Joos." The parties negotiated the Dissolution Agreement over several months and painstakingly negotiated every provision in the agreement, including Section 7. If Mr. Joos intended Mr. Halabi's logo to be anything other than different, the Dissolution Agreement would require that. It does not. As you can see from the below, Mr. Halabi's logo is, in fact, different. Those difference include the spacing and location font of the letters, the line through the heart, and the location of "certification." Also, Mr. Halabi is using a different color red. **Exhibit D, pp. 1-2.**

15. Regarding Joos's allegation that he engaged in some type of copyright infringement by using his new logo, Halabi responded as follows:

> As set forth above, Mr. Halabi's websites and logo are not identical to the websites and logo now used by Mr. Joos. Further, Mr. Joos contractually agreed to Mr. Halabi using the above website layout and above logo. Mr. Joos cannot now rely on copyright and trademark laws to try to alter or undo his contractual commitments and obligations. **Exhibit D, p 4.**

## III. The Parties' State Court Litigation

16. On July 7, 2023, over a year after his Written Notice, and over two years after his February 24, 2021, email, Joos filed suit against Halabi in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida in a case styled *Joos v. Halabi*, Case No. 23-CA-013691 (the "State Court Action").

[6] A true and correct copy of Halabi's April 6, 2022, Response is attached as **Exhibit D**.

17. In his three-count complaint, Joos sued Halabi for breach of paragraphs 7 and 8 of the Dissolution Agreement, for Tortious Interference with Business Relationship, and for Injunctive Relief.[7] **Exhibit E, pp. 6-10.**

18. Joos based his paragraph 7 breach of contract claim on his allegation that Halabi's logo is "indistinguishable" from Joos's logo. **Exhibit E, ¶¶ 8, 10-13.**

19. Joos based his paragraph 8 breach of contract claim on Halabi's use of his "indistinguishable" logo on his websites, and his alleged failure to make required changes to his hero picture and icons on his websites. **Exhibit E, ¶20.** Joos raised no other alleged breaches in his complaint.

20. Despite his statement in his March 17, 2022, Written Notice that "Mr. Joos treats copyright infringement as a very serious matter and is prepared to fully enforce his rights against all infringers," Joos did not raise a copyright infringement or intellectual property infringement claim in his State Court Action complaint, and CPR LLC was not a party to the State Court Action.

21. It was not until December 11, 2025, almost five years after Joos first raised his concern over Halabi's alleged "not sufficiently different" logo on February 24, 2021, did Joos's company, CPR LLC, assert claims here based on Halabi's alleged violation of the Lanham Act, 15 U.S.C. §§ 1501, *et seq.*, and related claims.

## MEMORANDUM OF LAW

Defendants understand the Court is well-versed in the standard for granting

---

[7] A true and correct copy of Joos's July 7, 2023, complaint filed in the State Court Action, without exhibits, is attached as **Exhibit E**.

summary judgment pursuant to Rule 56(a), Federal Rules of Civil Procedure, and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). *See also Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256 (11th Cir. 2004). They do not restate it here.

Regarding the contract at issue in this case, the operative provisions of the Dissolution Agreement, paragraphs 7, 8, and 12, contain no ambiguities. Thus, the Court need not employ any special rule of contract construction. *See N. Pointe Cas. Ins. Co. v. M & S Tractor Servs., Inc.*, 62 So. 3d 1281, 1282 (Fla. 2d DCA 2011) (holding that where a contract's language "is plain and unambiguous, no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses").

To the extent exhibits to a complaint refute a plaintiff's conclusory and speculative contentions, the court does not credit such contentions. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (granting summary judgment because exhibits to complaint contradicted plaintiff's conclusory allegations). When exhibits "contradict the general and conclusory allegations of [a] pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

## I. Halabi is entitled to Summary Judgment as to Count I of Joos's Second Amended Complaint (Halabi's alleged breach of Paragraph 7 of the Dissolution Agreement based on Halabi's "indistinguishable" logo).

Joos alleges Halabi breached the Dissolution Agreement by: (1) failing to use a logo that is different from his logo, and using one that is "confusingly similar" to his; and (2) failing to make changes to his websites and causing customer confusion between the parties' websites. Doc. 38, ¶¶28, 87.

### A. Halabi's logo complies with the Dissolution Agreement.

Joos contends that "Halabi breached Paragraph 7 (Ownership of Company Logo) by continuing to use logos that were not different from [Joos's] Logo and by adopting confusingly similar branding." Doc. 38, ¶87.

As to Joos's contention that Halabi's logo is not "different" than his, Joos ignores the plain meaning of the word. Merriam Webster defines "different" as "partly or totally unlike in nature, form, or quality;" or "not the same."[8] Black's Law Dictionary defines "difference" as follows: "[a]s respects contract specifications or material described therein, a state of being unlike."[9] As set forth above on pages 4 and 5, Halabi's logo is "unlike in nature, form, or quality," and the two logos are "not the same" in eight separate ways.

Simply alleging the two logos are not different does not make it so. A plaintiff cannot put a picture of a nickel and a quarter next to each other, similar though they may be, and allege that they are not different. This Court "need not accept as true internally inconsistent factual allegations." *Steward v. Int'l Longshoremen's Ass'n, Local No. 1408*, No.: 3:16-cv-1194-J-39PDB, 2019 WL 5188524, at *10 (M.D. Fla. Aug. 2, 2019).[10] This Court should rejects Plaintiffs' internally inconsistent contentions and

---

[8] Different, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/different (accessed October 26, 2026). *See also Dictionary.Cambridge.org*, https://dictionary.cambridge.org/us/dictionary/english/different (accessed Oct. 25, 2026) (Different – "Not the same"). "Dictionaries aid us in establishing the publicly understood plain meaning of a word whose relevant definition is contested, and we look to them when a contractual term is undefined within a contract." *Parrish v. State Farm Fla. Ins. Co.*, 356 So. 3d 771, 776 (Fla. 2023).

[9] BLACK'S LAW DICTIONARY 313 (6th ed. 1990).

[10] *See also Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F.Supp. 1052, 1058 (S.D. Fla. 1997) (holding that courts "need not accept factual claims that are internally inconsistent; . . . conclusory

unwarranted deductions here.

Joos's "confusingly similar" language is entirely of his own making. Paragraph 7 of the Agreement does not contain these words (or any derivation thereof). Joos is improperly attempting the rewrite paragraph 7 to include an obligation to which the parties did not agree. If Joos wanted to attach "confusingly similar" to Halabi's logo and branding obligations, he should have considered that before signing the Dissolution Agreement. He chose to execute the Dissolution Agreement as is, and he is bound by the clear language of the Agreement. Because the Dissolution Agreement contradicts Joos's allegations, Halabi is entitled to summary judgment as to Count I of Joos's Second Amended Complaint.[11]

**B. Joos cannot establish a breach of paragraph 8.**

Joos alleges Halabi also breached paragraph 8 of the Dissolution Agreement. Joos's allegation is undermined by the plain language of the Dissolution Agreement and by a simple review of Halabi's websites. The Dissolution Agreement provides:

---

allegations; unwarranted deductions; or mere legal conclusions asserted by a party") (citations omitted).

[11] Equally revealing, the parties did use the word "confused" in a different provision of the Dissolution Agreement. While paragraph 7 expressly provides that Halabi's logo must be "different" than FIT's logo and nothing more, Paragraph 8 provides that the hero picture and icons on Halabi's new websites must be changed "so that a reasonable person viewing websites operated by Halabi will not be confused that the websites are operated by the same company as the ones operated by Fit." **Exhibit E**, ¶8. Thus, the use of different language, namely the word "different" in Paragraph 7 and the word "confused" in Paragraph 8, demonstrates that the parties intended a different meaning to apply to each paragraph. *See Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006) (holding that paragraphs in an agreement that use different terms are presumed to have different meanings); *see also Leisure Resorts, Inc. v. City of W. Palm Beach,* 864 So. 2d 1163, 1166 (Fla. 4th DCA 2003) ("Sophisticated lawyers must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so.") (alterations adopted and quotation omitted); *Campbell v. Campbell,* 489 So.2d 774, 777 (Fla. 3d DCA 1986).

> Additional Changes to the Websites. For their respective Distributed Websites, **the Members agree to make changes to all of their websites. In addition to changing the logo as set forth above (i.e., appearance only and not the words)**, Halabi agrees to change the hero picture on his websites, and change the icons above the words "BLS CPR Classes," "CPR + First Aid Training," and "Group Lessons and Private Training" **so that a reasonable person viewing websites operated by Halabi will not be confused that the websites are operated by the same company as the ones operated by Fit**. Joos agrees to change the text on his websites **so that a reasonable person viewing the websites operated by Joos will not be confused that the websites are operated by the same company as the ones operated by Fit**.

**Exhibit A**, ¶8 (emphasis added). Paragraph 8 thus required Halabi and Joos to make changes so that persons viewing the websites would "not be confused that the websites are operated by the same company **as the ones operated by Fit**." *Id.* (Emphasis added).

Curiously, Joos does not attach to his complaint a copy of Halabi's website and FIT's website. For the Court's review, attached as **Exhibit F** is a screenshot of CPR Certification's website for Tampa as of August 6, 2025, and as **Exhibit G** FIT's website for Tampa as of December 2, 2020. **Exhibits F** and **G** confirm what Joos was afraid to reveal with exhibits to his complaint – that Halabi complied with the Agreement. His hero picture is different than FIT's. His icons are different than FIT's. And no reasonable person viewing websites operated by Halabi would confuse his for FIT's.

## II. Halabi is entitled to Summary Judgment as to Count II of Joos's Second Amended Complaint (Halabi's alleged breach of Paragraph 7 of the Dissolution Agreement relating to CPR Certification Houston and CPR Certification Orlando).

Joos contends Halabi breached the Dissolution Agreement because one video on CPR Certification Houston's YouTube channel, and one video and profile image on CPR Certification Orlando's YouTube Channel, contained Joos's exact logo. Doc.

38, ¶154. Houston and Orlando were 2 of the 11 websites divided by the parties in the Dissolution Agreement on February 22, 2021, and conveyed to Halabi. The CPR Certification Houston video and CPR Certification Orlando video and image identified by Joos in his complaint were legacy products conveyed at the time of the parties' dissolution. Since February 22, 2021, the CPR Certification Houston video has had 0.1 hours of watch time, the CPR Certification Orlando video has had 0.2 hours, and the CPR Certification Orlando YouTube channel has 1 subscriber.

### A. Joos has failed to comply with the contractually agreed upon condition precedent to maintain his claim in Count II.

Halabi and Joos agreed to a condition precedent in the Dissolution Agreement. Before filing litigation for breach of the Agreement, the non-breaching party must first provide written notice to the alleged breaching party of the breach, and then allow him "fifteen (15) days to cure the alleged breach condition." **Exhibit A**, ¶12. As demonstrated by Joos's March 17, 2022, Written Notice and opportunity to cure, Joos failed to comply with this condition precedent as to Count II of the Second Amended Complaint. Joos's failure to comply with his contractual obligation to provide written notice and the 15-day opportunity to cure is fatal to his claim.

A plaintiff must comply with a contractual obligation to provide written notice of breach and an opportunity to cure before defendant's breach becomes actionable. *Morris v. Knox Corp.*, 13 So. 2d 914, 915 (Fla. 1943).[12]

---

[12] This fundamental and basic principle has been applied repeatedly in Florida's state and federal courts. *See Saunders Leading Sys., Inc. v. Gulf Cent. Dist. Ctr., Inc.*, 513 So. 2d 1303, 1307 (Fla. 2d DCA 1987) (reversing judgment against defendant because the plaintiff had never given the defendant the

Joos was clear in his March 17, 2022, Written Notice to Halabi. Halabi's alleged "breach condition" had nothing to do with CPR Certification Houston and CPR Certification Orlando's YouTube channels. **Exhibit C**. Because Joos's Written Notice did not satisfy paragraph 12 of the Dissolution Agreement as to CPR Certification Houston and CPR Certification Orlando, Halabi is entitled to summary judgment as to Count II of Joos's complaint.

## III. Halabi is Entitled to Summary Judgment as to Count III of Joos's Second Amended Complaint (Halabi's Alleged Breach of Paragraph 11 of the Dissolution Agreement).

Joos contends that Halabi breached the Dissolution Agreement's non-disparagement provision by making disparaging statements about Joos and his businesses. Doc. 38, p. 26. Whether Halabi used disparaging language about Joos and his businesses (he did not) is irrelevant for purposes of this motion for summary judgment. For the reasons set forth below, Halabi is entitled to summary judgment as to Joos's Count III as well.

### A. Joos has failed to comply with the contractually agreed upon condition precedent to maintain his claim in Count III.

As set forth above, a plaintiff must comply with a contractual obligation to

---

contractually required written notice of default or thirty days to cure); *Infinity Gen. Constr. Servs., Inc. v. Argonaut Ins. Co.*, 781 F.Supp.3d 1291, 1296 (M.D. Fla. 2025) (holding that general contractor's failure to comply with a condition precedent meant surety's contractual obligation was never triggered); *Cooper v. PennyMac Loan Sevrs., LLC*, 509 F.Supp.3d 1325, 1329-30 (S.D. Fla. 2020) (dismissing plaintiff's breach of contract claim because plaintiff/borrower failed to abide by mortgage's notice-and-cure provision, holding the failure to provide pre-suit notice was fatal to plaintiff's breach of contract claim); *Abecassis v. Eugene M. Cummings, P.C.*, 467 F. App'x 809, 812-13 (11th Cir. 2012) (holding that a client could not recover as a matter of law for breach of a retainer agreement based on untimely written notice).

provide written notice of breach and an opportunity to cure before defendant's breach becomes actionable. *Morris*, 13 So. 2d at 915. Joos's Written Notice is clear – he makes no mention about paragraph 11 of the Dissolution Agreement, or of any purported disparaging comments. **Exhibit C**. Because Joos's Written Notice did not satisfy paragraph 12 of the Agreement as to paragraph 11 if the Agreement, Halabi is entitled to summary judgment as to Count III of Joos's complaint.

## IV. Halabi is Entitled to Summary Judgment as to Count IV of Joos's Second Amended Complaint (Halabi's Alleged Breach of Paragraphs 5 and 8 of the Dissolution Agreement).

### A. Joos has failed to comply with the contractually agreed upon condition precedent to maintain his claim in Count IV.

As set forth above, a plaintiff must comply with a contractual obligation to provide written notice of breach and an opportunity to cure before defendant's breach becomes actionable. *Morris*, 13 So. 2d at 915. Joos's Written Notice is clear – he makes no mention whatsoever of any purported "prohibited competitive activities" by Halabi in the context of paragraph 5 or 8 of the Dissolution Agreement. **Exhibit C**. Because Joos's Written Notice did not satisfy paragraph 12 of the Dissolution Agreement as to Halabi's alleged "prohibited competitive activities," Halabi is entitled to summary judgment as to Count IV of Joos's complaint.

## V. CPR Certification is entitled to Summary Judgment as to CPR LLC's Counts V, VI, VIII, IX, and X of the Second Amended Complaint.

"[I]t is settled law that . . . Florida trademark infringement claims rise or fall with federal infringement and unfair competition claims." *Barrco Consumer Prods. v. Raman Bajaj*, No. 8:23-cv-01180-TPB-TGW, 2025 WL 1021375, at *7 (M.D. Fla. Apr.

7, 2025) (Barber, J.) (citing *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016)). Because these claims share similar elements and legal standards, courts analyze them together. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991); *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991).

To prevail on a common law infringement or unfair competition claim, a plaintiff must plead and prove that: (1) its mark has priority, and (2) the defendant's mark is likely to cause consumer confusion. *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1309 (11th Cir. 1999)*; Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997). A party acquires common law trademark rights only through actual prior use in commerce. *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011); *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022-23 (11th Cir. 1989).

Critically, common law rights extend only to the geographic markets where the mark has actually been used and become known. *Junior Food Stores of W. Fla. v. Junior Food Stores, Inc.*, 226 So. 2d 393, 396 (Fla. 1969); *Tally-Ho*, 889 F.2d at 1023. CPR LLC must therefore establish (1) prior use of the unregistered mark in the geographic area, and (2) a protectable interest arising from either inherent distinctiveness or secondary meaning. *Investacorp*, 931 F.2d at 1522.

CPR LLC omits or ignores in this action several critical facts. First, pursuant to the Dissolution Agreement, Joos authorized and consented to Halabi's use of his logo; and a party who authorizes the use of a mark cannot maintain an action against the

authorized user for trademark infringement or unfair competition. Second, CPR Certification currently owns the federal trademark to the heart in Defendants' logo. Third, CPR LLC cannot establish the elements necessary to recover for trademark infringement and unfair competition claims. And fourth, CPR LLC's claims are barred by the applicable statute of limitations and laches.

### A. Because Joos authorized Halabi's use of Defendants' Logo, no cause of action exists under 15 U.S.C. §1125.

If the Court finds that Halabi's use of his different logo does not constitute a breach of the Dissolution Agreement, Joos's statutory and common law trademark claims fail as a matter of law. Joos cannot rely on statutory or common law trademark claims to alter, undo, or rewrite a contract he does not like.

For a false association/trademark infringement claim, a plaintiff must plead and prove the following: (1) plaintiff owns a legally protectible mark; (2) defendant used the mark without authorization; and (3) defendant's use is likely to cause confusion as to affiliation, connection, association, origin, sponsorship, or approval. *7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F. Supp.2d 1211, 1220 (M.D. Fla. 2013). As to the second element, a party who authorizes use of a mark cannot sue under the Lanham Act. *See* 15 U.S.C. §1114(1) (stating that Lanham Act liability only attaches to those who use a registered mark in commerce "without the consent of the registrant.").[13]

In paragraph 7 of the Dissolution Agreement, Joos expressly authorized and

---

[13] *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1307 (11th Cir.1998) ("[I]n order to prevail on a trademark infringement claim, a plaintiff must show that its mark was used in commerce by the defendant without the registrant's consent <u>and</u> that the unauthorized use was likely to deceive, cause confusion, or result in mistake.") (emphasis added).

consented to Halabi's use of his different mark, and there can be no false designation when use is authorized. The Court should not allow Joos to rely on the Lanham Act or any intellectual property law to try to rewrite his contractual commitments and obligations. Because the Dissolution Agreement undermines CPR LLC's position in this case, and authorized use precludes liability under 15 U.S.C. §1125, the Court should grant CPR Certification's motion for summary judgment as to CPR LLC's trademark infringement and unfair competition claims. *See Segal v. Geisha NYC LLC,* 517 F.3d 501, 506 (7th Cir. 2008)("[W]here the trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized.").

**B. Defendant, CPR Certification, holds a federal trademark registration for the heart used in its logo.**

CPR Certification owns a federal trademark registration for its ® design mark, U.S. Registration No. 7,831,024.[14] A federal registration constitutes prima facie evidence of the mark's validity, the registration's validity, the registrant's ownership, and the registrant's exclusive right to use the mark in commerce. 15 U.S.C. §1057(b). Defendant thus enjoys a presumption of priority and the exclusive right to use its mark nationwide. These presumptions apply in all tribunals. The registration also provides constructive notice of CPR Certification's nationwide priority. 15 U.S.C. §1057(c).

---

14 https://tsdr.uspto.gov/#caseNumber=97980079&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (accessed March 27, 2026).

CPR LLC cannot establish any claim against CPR Certification for use of its own registered trademark. Plaintiff cannot demonstrate priority, only simultaneous use of its dissimilar heart logo. Plaintiff also cannot identify or establish a geographic area of first use in this action. And it seeks to enjoin a mark that Defendant has the prima facie right to use nationwide. Because CPR Certification holds a federal trademark registration for its heart logo, and it has the statutory right to exclusively use its mark, CPR Certification is entitled to summary judgment as to Counts V, VI, VIII, IX, and X or Plaintiffs' Second Amended Complaint.

**C. CPR LLC cannot establish the essential elements of its claims.**

As stated above, CPR LLC has not established a specific geographic market where it first used its mark. This omission is fatal. Common law protections arise only in specific geographic areas where the mark has actually been used and gained recognition. *Junior Food Stores of W. Fla.*, 226 So. 2d at 396; *Tally-Ho*, 889 F.2d at 1023. Vague references to nationwide use cannot substitute for specific proof of prior use in identified markets. CPR LLC also cannot demonstrate prior use of its mark because the parties began using their respective marks at the exact same time, i.e., 12:01 a.m. on February 22, 2021. Exhibit A, ¶¶4, 6. This is fatal to its claims as well.

Florida common law trademark infringement also requires priority through <u>prior use</u> in a <u>specific</u> geographic market. *See Junior Food Stores of W. Fla.*, 226 So. 2d at 396. CPR LLC has established neither here. CPR LLC's simultaneous use allegation undermines its claims as well. Without prior use in a specific market, CPR LLC cannot establish the essential priority element.

Even assuming priority, which does not exist here, CPR LLC's claims fail because its mark is not protectable. Merely descriptive marks "do not inherently identify a particular source and hence cannot be protected." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). It was therefore necessary for CPR LLC to establish the basis for protecting its mark, and it has not. This is not a question of fact – the Court may determine whether a plaintiff has established distinctiveness as a matter of law. *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 611 (11th Cir. 2014) (citing *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009)).

A descriptive mark identifies a characteristic or quality of the service. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357-58 (11th Cir. 2007). When a mark incorporates common formative components, courts afford it narrow protection because competitive use is likely. *Investacorp*, 931 F.2d at 1523. By selecting a mark built on "Certification" and "CPR," terms that directly describe cardiopulmonary resuscitation training and certification services, CPR LLC accepted the risk that others would adopt similar descriptive names. Plaintiffs concede as much. Joos expressly authorized Halabi to use these same descriptive terms in his logo in the Agreement.

**D. CPR LLC's claims are barred by the doctrine of laches.**

CPR LLC waited almost five years after learning of Halabi and his company's use of his logo to file this federal action and raise his federal and state trademark claims. During that time, CPR Certification grew its business from the 11 locations

initially distributed pursuant to the Dissolution Agreement to 107 locations.[15] CPR LLC's almost five-year (and unexcused) delay in filing its claims, and CPR Certification's significant change in position during the delay period, triggers application of the laches doctrine to Plaintiff's claims.

"[B]ecause the Lanham Act does not contain a statute of limitations, the period for analogous state law claims is to be used as a touchstone for laches." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1546 (11th Cir. 1986); *Kason Indus., Inc. v. Component Hardware Group*, 120 F.3d 1199, 1203 (11th Cir. 1997). In Florida, the Eleventh Circuit applies the four-year limitation period codified in section 95.11(3) as the analogous period for Lanham Act claims. *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1005 (11th Cir. 2021); *Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*, 720 F. Supp. 3d 1261, 1278 (S.D. Fla. 2024).

Laches requires: (1) a delay in asserting a claim, (2) that the delay was not excusable, and (3) undue prejudice to the party against whom the claim is asserted. *ARES Def. Sys. v. Karras*, No. 6:15-cv-1107-Orl-22DAB, 2016 WL 1554127, *5 (M.D. Fla. Apr. 18, 2016) (quoting *AmBrit, Inc.*, 812 F.2d at 1545). Undue prejudice may be shown if the plaintiff's unexcused failure to exercise its rights caused defendant to rely to its detriment and build up a valuable business. *See, e.g., A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed Cir. 1992) ("Economic prejudice may

---

[15] Each new training site requires a new lease, local instructor or instructors, and additional staff time.

arise where a defendant . . . will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit.").

Here, CPR LLC's almost five-year delay exceeds the four-year analogous state limitations period used by the Eleventh Circuit as a touchstone for laches. This delay triggers a presumption that CPR LLC's Lanham Act claims are barred by the doctrine of laches as a matter of law. *Kason Indus.*, 120 F.3d at 1203; *Pinnacle Advert.*, 7 F.4th at 1005-1006.

Defendants began using their mark on the agreed-upon date – February 22, 2021. Halabi and CPR Certification were open about their use of their logo because it was different from the old FIT logo, as required by the Dissolution Agreement. Joos first raised his concern with Halabi's mark two days later, on February 24, 2021. **Exhibit B**. Notwithstanding, CPR LLC waited almost five (5) years to assert its Lanham Act claims. The prejudice to Defendants is substantial. At all times after execution of the Dissolution Agreement, Defendants invested significant time, effort, and resources to grow CPR Certification from 11 locations to 107. Allowing CPR LLC to wait five years to file their Lanham Act claims would strip Halabi of the benefit for which he bargained. The equities favor summary judgment in this matter.

As for the state law claims, Florida applies a four-year (4) statute of limitations to state trademark infringement and common law unfair competition claims. Fla. Stat. § 95.11(3)(e), (j), (o).[16] The limitations period begins when the likelihood of consumer

---

[16] *See also Martin v. E.C. Publ'ns, Inc.*, 849 F. Appx. 239, 241 (11th Cir. 2021); *AmBrit, Inc.*, 812 F.2d at 1546; *ARES Def. Sys.*, 2016 WL 1554127 at *5.

confusion first arises. *GlobalTranz Enters., LLC v. GlobalTransservice Corp.*, No. 20-62519-CIV, 2021 WL 1151417, at *8 (S.D. Fla. Mar. 26, 2021).

It is evident from Joos's February 24, 2021 correspondence (**Exhibit B**) that CPR LLC's claims are untimely. The Florida common law infringement or unfair competition limitations period expired in February 23, 2025, ten (10) months before Plaintiffs filed this action. CPR LLC has demonstrated nothing that would support tolling or excuse its delay. CPR LLC's state law claims are thus time-barred and summary judgment is proper for them as well.

**E. The Court should not cancel CPR Certification's U.S. Registration No. 7,831,024**

CPR LLC asks the Court to cancel CPR Certification's registered mark. Plaintiff has failed to demonstrate its entitlement to such a severe remedy. *See Robert B. Vance & Assocs., Inc. v. Baronet Corp.*, 487 F. Supp. 790, 800 (N.D. Ga. 1979) ("This Court does not believe that the cancellation of a trademark registration should be undertaken lightly by the court in trademark actions.").

CPR LLC has not pled and cannot establish the elements necessary for relief under 15 U.S.C § 1119. Regarding proving entitlement to the remedy provided for in 15 U.S.C § 1119, the Eleventh Circuit held in *Coach House Restaurant v. Coach & Six Restaurants*, 934 F.2d 1551, 1559 (11th Cir. 1991) as follows:

> In order to cancel a registration under the Lanham Act section 2(d) . . ., petitioner must prove: (1) that the registered mark resembles petitioner's mark, (2) that petitioner acquired trade identity rights in the mark <u>before</u> the registrant used the mark, and (3) that the registered mark is likely to cause confusion when used in connection with the services of registration. (Emphasis added).

CPR LLC misses the mark on every element.

First, below are CPR LLC and CPR Certification's registered marks:

**CPR LLC logo** **CPR Certification's logo**

Plaintiff cannot reasonably argue a resemblance here. Second, CPR LLC could not acquire trade identity in its mark <u>before</u> CPR Certification's use because, pursuant to the Dissolution Agreement, the parties began use of their respective (and different) marks at the exact same time – 12:01 a.m. on February 22, 2021. **Exhibit A,** ¶4. And third, because CPR LLC's mark does not resemble CPR Certification's mark at all, CPR Certification's heart is not likely to cause confusion with CPR LLC's mark.

## VI. Defendants are Entitled to Summary Judgment as to Count VII of the Second Amended Complaint (CPR LLC's false advertising claim).

CPR LLC maintains that Defendants violated 15 U.S.C. §1125(a)(1)(B) by marketing standard AHA BLS classes as "Infant CPR Classes." In order to have standing to pursue a 15 U.S.C. §1125(a)(1)(B), a plaintiff must prove: (1) the advertisements were false and misleading; (2) the advertisements deceived or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the plaintiff has, or is likely to be, injured as a result of the false advertising. *Hickson*

*Corp.*, 357 F.3d at 1261. CPR LLC has established no facts demonstrating most of the elements set forth above.

First, CPR LLC cannot establish element one. It is undisputed that CPR Certification noted infant CPR BLS training on its websites. And it is undisputed that CPR Certification's classes did indeed include infant CPR BLS training. Second, CPR LLC has not satisfied element two. It has no consumer surveys, market research, or expert testimony demonstrating any deception, which is required. *See id.* at 1261 (evidence of deception must come in the form of consumer surveys, market research, expert testimony, or other evidence). Third, CPR LLC has no facts supporting or demonstrating the materiality of any alleged advertisement. Again, it was CPR LLC's burden to demonstrate that Defendants' alleged deception has a material effect on a purchasing decision, and it has not. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). CPR LLC has no consumer surveys, market research, or expert testimony showing that any alleged deception, and there was none, influenced a purchasing decision. Finally, as to the damage element, CPR LLC was required to show that it has been, or is likely to be, injured as a result of the alleged false advertising. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). This requires CPR LLC to satisfy two elements: (1) the zone-of-interest test, and (2) proximate causation. *Id.* at 129-34. Under the zone-of-interest test, a plaintiff must demonstrate an injury to a commercial interest in reputation or sales. *Id.* at 129-32. Under the proximate causation element, CPR LLC must show economic or reputational injury <u>to CPR LLC</u> directly flowing from the alleged deceptive

advertising. *Id.* at 132-34. Harm that is purely derivative of misfortunes visited upon third persons is too remote to satisfy the proximate causation element. *Id.* CPR LLC has no evidence, either through consumer surveys, market research, or expert testimony satisfying the zone-of-interest and proximate causation tests.

WHEREFORE, Defendants respectfully request that the Court enter summary judgment as to Counts I through X in this action, and grant Defendants such further relief as the Court deems just and proper.

**DECLARATION**

Pursuant to 28 U.S.C. § 1746, I have personal knowledge of the facts stated above, and I declare under penalty of perjury that the above facts are true and correct.

____________________________
Sami Halabi, Manager of CPR Certification, LLC

Dated: 10/28/26

Respectfully submitted,

*/s/ John A. Schifino*
John A. Schifino, Esq.
Florida Bar No. 0072321
Justin P. Bennett, Esq.
Florida Bar No. 112833
**GUNSTER**
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
jschifino@gunster.com
jbennett@gunster.com

and

Brittany J. Maxey-Fisher, Esq.
Florida Bar No. 44586
**MAXEY-FISHER, PLLC**
7650 W. Courtney Campbell Causeway
Suite 110
Tampa, Florida 33607
Telephone: (727) 230-4949
bmaxeyfisher@maxeyfisher.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on October 28, 2026, I electronically filed the foregoing Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send the electronic filing to all counsel of record.

*/s/ John A. Schifino*
Attorney

ACTIVE:40658353.1