**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DOUGLAS K. JOOS, JR., and
CPR LLC,

Plaintiffs, Case No. 8:25-cv-03368-TPB-AEP

v.

SAMI HALABI and
CPR CERTIFICATION, LLC,

Defendants.
______________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' VERIFIED MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

Plaintiffs Douglas K. Joos, Jr. ("Joos") and CPR LLC (collectively, "Plaintiffs"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 56, respond in opposition to the Verified Motion for Summary Judgment as to Liability (Doc. # 48) (the "Motion") filed by Defendants Sami Halabi ("Halabi") and CPR Certification, LLC ("Defendant Company") (collectively, "Defendants"), and respectfully request that the Court deny the Motion.

## I. RESPONSE TO DEFENDANTS' "UNDISPUTED FACTS"

1. Undisputed.

2. Undisputed that the parties began operating separately on February 22, 2021. Disputed to the extent Defendants rely on this paragraph to assert that the parties began using their marks at the same time. Doc. # 48 at 19, 24. Fit

Industries, LLC ("Fit") used the logo now owned by CPR LLC (the "Logo") on its websites from January 2016, and Paragraph 7 made the Logo Joos's "sole and exclusive property." Doc. # 47-1 ¶¶ 6-8; Doc. # 38-1 ¶ 7. Joos assigned the Logo and its goodwill to CPR LLC. Doc. # 47-1 ¶ 15.

3. Undisputed that Paragraph 7 contains the quoted language, except that it reads "Certification." Doc. # 38-1 ¶ 7.

4. Disputed; contradicted by record evidence. Paragraph 7 provides that Halabi's design "cannot incorporate the logo and must be different than the one currently used by Fit." Doc. # 38-1 ¶ 7. Paragraph 8 requires Halabi's changes, "[i]n addition to changing the logo as set forth above (i.e., appearance only and not the words)," to be made "so that a reasonable person viewing websites operated by Halabi will not be confused that the websites are operated by the same company as the ones operated by Fit." *Id.* ¶ 8. Halabi testified that Paragraph 7 gave Joos "everything the eye sees" in Fit's logo, including "the heart as it was used by Fit." Doc. # 47-2 at 32:8-33:1. He also testified that Paragraph 7 meant "I could not use Douglas' logo." Doc. # 47-6 at 45:7-21. Disputed further as a legal conclusion.

5. Disputed; contradicted by record evidence. Defendant Company admitted that it made its logo (the "Infringing Logo") by modifying the same 2015 design from which the Logo was created: "The Mark was commissioned by an artist on Fiverr, Antonclevela97, on September 08, 2015. In order to be compliant with the Dissolution Agreement, CPR Certification, LLC modified the Mark

accordingly." Doc. # 47-5, No. 11, at 7. Joos created the Logo from that design, which Halabi commissioned from a Fiverr artist on September 8, 2015. Doc. # 47-1 ¶¶ 6-8.

6. Disputed; mischaracterizes record evidence and contradicted by record evidence. Both logos consist of the letters "CPR" in bold red capitals, the word "Certification" in small red capitals, and a red heart crossed by a white sinusoidal wave to the right of the "R." Doc. # 48 at 2. Disputed that the features described in subparagraphs (a) through (h) show that the Infringing Logo does not incorporate the Logo or is different as Paragraph 7 requires. Undisputed as to subparagraphs (a), (b), (c), and (f). *Id.* (d) Undisputed that the wave in the Logo begins inside the "R." Otherwise disputed; mischaracterizes record evidence. In both logos, a white sinusoidal wave crosses the heart horizontally. *Id.* Defendant Company's own registration describes its mark as "a fanciful heart with a sinusoidal wave appearing horizontally therein." Doc. # 47-40 at 2. (e) Disputed; mischaracterizes record evidence. Both logos use a red heart of comparable size crossed by a white sinusoidal wave. Doc. # 48 at 2. (g) Disputed; mischaracterizes record evidence. In both logos, "CPR" appears in bold red capital letters and "Certification" appears in small red capital letters; the fonts appear to be of similar weight. *Id.* (h) Disputed; contradicted by record evidence. Visually, the red appears to be the same in both logos. *Id.*

7. Undisputed that Paragraph 12 contains the quoted language. Disputed that Paragraph 12 is a condition precedent; legal conclusion, and

contradicted by record evidence. Paragraph 12 does not state that notice is a condition of suit or that a claim is forfeited without it. Doc. # 38-1 ¶ 12.

8. Undisputed that the February 24, 2021 correspondence contains the quoted sentence, except that it reads "Doug thinks that there is a legitimate legal question." Doc. # 48-2 at 2.

9. Undisputed that Halabi did not change the Infringing Logo after February 24, 2021, and that Defendant Company grew from eleven training locations to 107 after that date. Doc. # 47-1 ¶ 32; Doc. # 47-5, No. 17; Doc. # 47-14, No. 3. Disputed that the Infringing Logo complied with the Agreement; contradicted by record evidence. *Supra* Section I ¶¶ 4-6.

10. Undisputed that Joos served the Written Notice under Paragraph 12. Disputed that Paragraph 12 is a condition precedent. *Supra* Section I ¶ 7.

11. Disputed; contradicted by record evidence. In addition to Paragraphs 7 and 8, the Written Notice asserted that Halabi had failed to abide by his representation in Paragraph 10 of the Agreement and had interfered with Joos's business relationships by flagging his Google profile listings. Doc. # 47-37 at 2-3. It also demanded that Defendants "cease all use of the infringing logos." *Id.* at 5. Footnote 5 is argument, not a statement of fact, and is disputed as a legal conclusion.

12. Disputed; mischaracterizes record evidence. The Written Notice based the copyright assertion on "identically organized websites and an identical

logo," and identified CPR Certification Tampa as one of the works Joos authored, not as an example of the logo. Doc. # 47-37 at 3.

13. Undisputed.

14. Undisputed that Halabi's counsel sent the April 6, 2022 response containing the quoted language. Disputed that the Infringing Logo is different as Paragraph 7 requires; contradicted by record evidence. *Supra* Section I ¶¶ 4-6.

15. Undisputed that the response contains the quoted language. Disputed that Joos agreed to Halabi's use of the Infringing Logo; contradicted by record evidence. Halabi testified that Paragraph 7 meant "I could not use Douglas' logo." Doc. # 47-6 at 45:7-21. Joos questioned the Infringing Logo two days after Defendants began using it. Doc. # 48-2 at 2; Doc. # 47-1 ¶ 30.

16. Undisputed that Joos filed the State Court Action, except that it was filed on July 10, 2023. Doc. # 48-5 at 2.

17. Undisputed.

18. Undisputed that the complaint alleged that Halabi "continues to use a logo indistinguishable from the Logo." Doc. # 48-5 at 5 ¶ 8. Disputed that this was the only basis for the Paragraph 7 claim; mischaracterizes record evidence. The complaint also alleged that Halabi "continued to use the Logo well beyond the fourteen (14) day period." *Id.* ¶¶ 18-19.

19. Disputed that the Paragraph 8 claim rested on the logo being "indistinguishable"; mischaracterizes record evidence. The complaint alleged that Paragraph 8 required Halabi to change the logo, the hero picture, and the icons

on his websites "so that a reasonable person viewing Defendant Halabi's websites would not be confused with the ones operated by the Company," and that Halabi "failed to make the requisite changes in order to avoid confusion of a reasonable person viewing Defendant Halabi's websites." Doc. # 48-5 ¶ 20. Undisputed that the complaint in the State Court Action alleged no breaches of the Agreement other than of Paragraphs 7 and 8.

20. Undisputed that the complaint did not assert a separate count for copyright or trademark infringement and that CPR LLC was not a party. Disputed that the State Court Action did not raise intellectual property issues relating to the Logo; mischaracterizes record evidence. The complaint alleged that Joos is "the sole and exclusive owner of the logo," that Halabi's conduct "infringes on Plaintiff Joos's exclusive rights in and to the Logo," and that Halabi opposed Joos's trademark application before the TTAB, and it sought to enjoin Halabi's "continued use of the Logo." Doc. # 48-5 at 4 ¶ 9; *id.* ¶¶ 15, 28-29; *id.* at 12.

21. Undisputed that Plaintiffs filed this action on December 11, 2025. Doc. # 1. Disputed to the extent Defendants rely on this paragraph to assert that Plaintiffs delayed in asserting their rights. Doc. # 48 at 20-23. Joos questioned the Infringing Logo on February 24, 2021, and served the Written Notice on March 17, 2022. Doc. # 48-2 at 2; Doc. # 47-37 at 2-3. Defendant Company opposed CPR LLC's application to register the Logo before the TTAB from May 9, 2022 until the TTAB dismissed the opposition on February 25, 2025, and denied reconsideration on June 4, 2025. Doc. # 47-39 at 2, 6; Doc. # 47-38 at 2. Joos

sued Halabi in state court on July 10, 2023, and filed this action after the TTAB ruled. Doc. # 47-1 ¶¶ 34-35.

## ADDITIONAL MATERIAL FACTS

22. Neither Plaintiff has licensed or consented to Defendants' use of the Logo or any logo incorporating it. Doc. # 47-1 ¶ 19; Doc. # 38-1 ¶ 7; Doc. # 47-6 at 45:7-21; Doc. # 48-2 at 2; Doc. # 47-37 at 5.

23. There has been repeated consumer and marketplace confusion between the two companies. Halabi has acknowledged it: "I believe people have been confused." Doc. # 47-2 at 26:17-18; *see* Doc. # 47-1 ¶¶ 38-59; Doc. # 47-19 through 47-35. Customers have pointed out that the logos are the same: "The logo is the exact same on your website"; "The logos appear to be the same, is the first link you guys?" Doc. # 47-1 ¶¶ 42, 46; Doc. # 47-19; Doc. # 47-20.

24. On February 25, 2021, when Halabi asked for the logins to Fit's Houston and Orlando YouTube channels, Joos wrote that "those videos on their [sic] contain my logo so you will have to redo them." Doc. # 47-1 ¶¶ 25-26; Doc. # 47-16. Halabi replied the next day that the old logo was "gone off of the video." Doc. # 47-1 ¶ 27; Doc. # 47-16. Both channels still displayed the Logo through at least November 18, 2025; after this action was filed, Defendants switched them to the Infringing Logo. Doc. # 38-2; Doc. # 38-3; Doc. # 47-1 ¶¶ 28-29; Doc. # 47-17.

25. On October 16, 2023, during discovery in Defendant Company's TTAB opposition, a former employee of Halabi's companies testified that Halabi

had disparaged Joos and his businesses, and Joos learned of Halabi's breach of Paragraph 11 through that testimony. Ex. 1 ¶ 9; Ex. 2 at 8-9 ¶¶ 34-35. The same witness later testified to Halabi's statements about Joos at the December 20, 2023 hearing. Doc. # 47-10 at 74:13-75:12. On November 2, 2023, Joos served on Halabi's counsel an amended motion for temporary injunction asserting that Halabi "is in direct breach of Paragraph 11 of the Agreement." Ex. 2 at 5 ¶ 18. On November 13, 2023, Halabi filed a verified response to those allegations and did not assert that Joos had failed to give notice under Paragraph 12. Ex. 3 at 1-22.

26. Since February 22, 2021, CPR LLC has sold classes through its websites in more than sixty cities, and Defendants operate websites and training locations under the Infringing Logo in many of the same cities, including Tampa, Miami, Jacksonville, Chicago, and Las Vegas. Doc. # 47-1 ¶¶ 18, 23. On October 28, 2026, each of Defendants' 86 city websites displayed the Infringing Logo. *Id.* ¶ 24. Halabi called Joos "a major competitor." Doc. # 47-6 at 52:7.

27. Defendant Company's Boston and Chicago websites carried a menu item titled "Infant CPR Classes." Doc. # 48-4 at 4; Doc. # 47-33 at 2, 13; *see* Doc. # 47-20 at 2. Halabi has sworn that Defendant Company's training sessions all "involved teaching AHA courses and issuing AHA course-completion cards." Doc. # 47-12, No. 1, at 3. The AHA Basic Life Support course includes infant CPR as just one component of the course. Doc. # 47-10 at 54:13-20; Ex. 1 ¶ 8. CPR LLC does not offer a class titled "Infant CPR." Ex. 1 ¶ 7; Doc. # 47-10 at 39:20-22.

28. Sophia Van Gorder, who was not a CPR LLC customer, posted a one-star review on CPR LLC's Pittsburgh Google listing. She wrote that she signed up "as an expectant new mom," and: "What I signed up for was titled 'Infant CPR', but instead it covered CPR and AED training for all age groups. Maybe 15% of the class time was spent on infant resuscitation, so to me this was a waste of money." Ex. 1 ¶¶ 2-5; Ex. 4; Ex. 5. Joos testified that Van Gorder had taken Halabi's class, that she referenced an infant CPR class that was not really an infant CPR class, that no one else he knew of advertised classes that way, and that the parties' training center confirmed she was one of Halabi's clients. Doc. # 47-10 at 53:10-25. Joos testified that "[o]ur reputation was harmed by that review." Ex. 1 ¶ 6; Ex. 6 at 111:15-21, 112:7-14; *see* Doc. # 47-10 at 39:16-24.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. ARGUMENT

### A. Paragraph 7, read with the rest of the Agreement, required more than a nominal difference (Count I).

Defendants' Count I argument reads one word of Paragraph 7 in isolation. Florida law does not permit that reading, and the record shows a breach. "The intention of the parties must be determined from an examination of the whole

contract and not from the separate phrases or paragraphs." *Lalow v. Codomo*, 101 So. 2d 390, 393 (Fla. 1958). "[I]f one construction would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability." *Paddock v. Bay Concrete Indus., Inc.*, 154 So. 2d 313, 316 (Fla. 2d DCA 1963).

Paragraph 7 made the Logo Joos's "sole and exclusive property" and provided that Halabi's design "cannot incorporate the logo and must be different." Doc. # 38-1 ¶ 7. Halabi agreed that Paragraph 7 gave Joos "everything the eye sees," and both logos pair "CPR" in bold red capitals with a red heart crossed by a white sinusoidal wave. *Supra* Section I ¶¶ 4, 6. Defendants' dictionary definition would be satisfied by any change at all, including a new hex code, the only change to the color Halabi could identify. Doc. # 47-2 at 24:24-25:2. That reading would let Halabi keep everything Paragraph 7 gave to Joos, an absurd result. Defendant Company also admits it "modified" the 2015 design from which the Logo was created, and a design made by modifying the Logo's source incorporates the Logo. *Supra* Section I ¶ 5.

Defendants argue that the parties' use of "confused" in Paragraph 8, and not in Paragraph 7, shows Paragraph 7 carries no confusion standard. Doc. # 48 at 11 n.11. Paragraph 8 answers that argument itself. It begins "[i]n addition to changing the logo as set forth above," and makes the logo change part of the same set of changes that had to keep a reasonable person from confusing Halabi's

websites with Fit's. Doc. # 38-1 ¶ 8. Defendants' reading gives Paragraph 7's bar on incorporating the Logo no effect.

Defendants' Paragraph 8 argument rests on Defendants' Exhibits F and G, which the Motion and the Schifino declaration describe as the parties' Tampa websites. Doc. # 48 at 12; Doc. # 49 ¶¶ 8-9. Both exhibits show Orlando websites. Doc. # 48-6 at 2; Doc. # 48-7 at 2. The websites Joos operates are Fit's former websites, distributed to him under the Agreement, and they display Fit's Logo. Doc. # 48 ¶ 2; Doc. # 47-1 ¶¶ 16-17; *supra* Section I ¶ 2. Two screenshots do not establish that no reasonable person viewing Defendants' websites would be confused, and the record shows that people were. *Supra* Section I ¶ 23.

The record establishes that the Infringing Logo incorporates the Logo and is not different as Paragraph 7 requires, and that Halabi's websites remain confusingly similar to Fit's. The Court should deny Defendants' Motion as to Count I and grant Plaintiffs' Motion (Doc. # 47) as to Count I.

**B. Paragraph 12 does not bar Counts II, III, or IV.**

Defendants challenge Counts II, III, and IV only under Paragraph 12. Doc. # 48 at 13-15. Paragraph 12 is not a condition precedent to suit, and even if it were, Halabi had notice of each claim. Conditions precedent "are not favored, and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication." *In re Est. of Boyar*, 592 So. 2d 341, 343 (Fla. 4th DCA 1992). Paragraph 12 provides that the non-breaching party "will first contact the alleged breaching party directly in writing to resolve

the dispute short of litigation," followed by fifteen days to cure. Doc. # 38-1 ¶ 12. It does not bar suit without notice, and it imposes no forfeiture.

Even if Paragraph 12 were a condition, Joos satisfied it as to each count. "Under Florida law, strict compliance with a notice provision is not required if one of the parties . . . has actual notice," and "the sufficiency of legal notice is measured by the substantial compliance standard." *Megacenter US LLC v. Goodman Doral 88th Ct. LLC*, 273 So. 3d 1078, 1084 (Fla. 3d DCA 2019). A notice of default "may explain default in general terms and is not required to particularize all defaults." *Creative Choice Homes XXX, LLC v. Amtax Holdings 690, LLC*, 162 F.4th 1083, 1100 (11th Cir. 2025) (citing *Hous. Inv. Corp. v. Am. Bancshares Mortg. Co.*, 367 So. 2d 645, 646 (Fla. 3d DCA 1979)). Defendant Company itself told the TTAB that informal "conversations provided the fifteen (15) day written notice required under Section 12." Ex. 7 at 23.

**1. Joos gave notice concerning the YouTube channels twice, and the record establishes the breach (Count II).**

In February 2021, Joos wrote to Halabi that the Houston and Orlando videos "contain my logo so you will have to redo them," and Halabi replied that the old logo was "gone off of the video." *Supra* Section I ¶ 24. On March 17, 2022, Joos served notice under Paragraph 12 that Halabi was in breach of Paragraph 7 and demanded that Defendants "cease all use of the infringing logos." *Supra* Section I ¶¶ 10-11.

Furthermore, the record establishes the breach. Paragraph 7 contains no exception for videos, and the Logo remained on the channels until after this

action was filed. Doc. # 38-1 ¶ 7; *supra* Section I ¶ 24. Defendants' statements about watch time and subscribers go to damages, which neither party's motion asks the Court to decide. Doc. # 48 at 1, 13; Doc. # 47 at 25. The Court should deny Defendants' Motion as to Count II and grant Plaintiffs' Motion (Doc. # 47) as to Count II.

**2. Halabi had written and actual notice of the Paragraph 11 claim (Count III).**

Defendants argue only that the March 17, 2022 notice did not mention Paragraph 11, and concede that whether Halabi disparaged Joos is "irrelevant" to their Motion. Doc. # 48 at 14-15. Joos could not have raised Paragraph 11 in March 2022 because he did not learn of Halabi's disparaging statements until October 16, 2023. Promptly thereafter, Joos asserted Halabi's breach of Paragraph 11 in an amended motion for temporary injunctive relief in the State Court Action, and Halabi responded under oath without asserting lack of notice. *Supra* Section I ¶ 25. The Court should deny Defendants' Motion as to Count III. At a minimum, whether Halabi had notice of the Paragraph 11 claim is a genuine issue of material fact.

**3. The Written Notice gave notice of the Paragraph 8 breach (Count IV).**

Defendants argue that the Written Notice "makes no mention whatsoever of any purported 'prohibited competitive activities' by Halabi in the context of paragraph 5 or 8." Doc. # 48 at 15. Their own facts concede that the Written Notice asserted breach of Paragraph 8 and told Halabi that "a reasonable person

viewing your websites would be confused that they are operated by the same company as the ones operated by Mr. Joos." Doc. # 48 ¶ 11; *id.* at 6 n.5. The Written Notice also asserted that Halabi had interfered with Joos's business relationships by flagging his Google profile listings. *Supra* Section I ¶ 11. Count IV rests on that same conduct: confusing websites and listings. To the extent Count IV rests on Paragraph 5, Paragraph 12 does not bar it for the reasons stated above. The Court should deny Defendants' Motion as to Count IV.

**C. Paragraph 7 did not authorize the Infringing Logo (Counts V, VI, VIII, IX, and X).**

Defendants argue that Paragraph 7 authorized the Infringing Logo. Doc. # 48 at 17-18. It did not. Defendants' own authority limits the rule to use within the authorization: "[W]here the trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized." *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); Doc. # 48 at 18. Paragraph 7 made the Logo Joos's "sole and exclusive property," only allowed Halabi to use the words "CPR," "Certification," and a city name, and provided that his design "cannot incorporate the logo and must be different." Doc. # 38-1 ¶ 7. Halabi testified that Paragraph 7 gave Joos "everything the eye sees" and meant "I could not use Douglas' logo." *Supra* Section I ¶ 4. Defendants concede the argument applies only "[i]f the Court finds that Halabi's use of his different logo does not constitute a breach." Doc. # 48 at 17. It does, for the reasons stated in Section III.A. Paragraph 7 did not authorize the Infringing Logo; it prohibited it.

**D. Defendant Company's registration of a heart design does not reach the Infringing Logo or displace CPR LLC's prior rights.**

Defendants argue that Defendant Company's registration of its heart design gives it priority and the exclusive right to use the mark nationwide, so CPR LLC cannot challenge Defendant Company's use of it. Doc. # 48 at 18-19. The registration is for a different mark. It covers only "a fanciful heart with a sinusoidal wave appearing horizontally therein." CPR LLC's claims are directed at the Infringing Logo, which pairs that heart with "CPR" in bold red capitals and "Certification" in small red capitals. *Supra* Section I ¶ 6. A registration is prima facie evidence only of "the owner's exclusive right to use the registered mark." 15 U.S.C. § 1057(b). It establishes nothing about the Infringing Logo.

Even as to the heart, the registration gives Defendant Company no priority over CPR LLC, because constructive-use priority does not reach a person who "prior to such filing . . . has used the mark." 15 U.S.C. § 1057(c). Defendant Company applied on May 9, 2022. Doc. # 47-40 at 2. Fit used the Logo from January 2016, and CPR LLC has used it continuously since February 22, 2021. Supra Section I ¶ 2. Defendant Company's registration of its heart is irrelevant to whether the Infringing Logo infringes CPR LLC's Logo.

Defendants also argue the Court should not cancel the registration. Doc. # 48 at 23-24. Cancellation under 15 U.S.C. § 1119 is relief CPR LLC requests in Counts V and VI, not a separate claim, and the Court permitted motions "pertaining to the issue of liability." Doc. # 38 ¶¶ 127, 139; Doc. # 44. Whether cancellation is warranted is not before the Court. In any event, Defendants

address only one of the grounds pled; they do not address CPR LLC's allegation that Defendant Company did not own the design when it applied. Doc. # 38 ¶¶ 80-81. As to the ground they do address, the registered design is the same heart crossed by a sinusoidal wave that appears in the Logo, CPR LLC's rights trace to Fit's use from 2016, and the record shows actual confusion. *Supra* Section I ¶¶ 2, 6, 23. At a minimum, those are disputed facts.

**E. CPR LLC has priority, competes with Defendants in the same markets, and owns a distinctive mark.**

Defendants' priority, geography, and distinctiveness arguments start from the wrong date and the wrong mark. "Common-law trademark rights are appropriated only through actual prior use in commerce." *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011) (internal quotation marks and citation omitted). "[I]n an infringement action, the plaintiff must initially demonstrate the right to a trademark and actual geographic and product competition with the alleged infringer." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1024–25 (11th Cir. 1990). An assignee "step[s] into [the assignor's] shoes by virtue of the assignment." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1136 (11th Cir. 2018).

CPR LLC's priority does not begin at 12:01 a.m. on February 22, 2021. It traces to Fit's use of the Logo from January 2016, which passed to Joos under Paragraph 7 and then to CPR LLC by assignment. *Supra* Section I ¶ 2. The record also shows actual geographic and product competition. CPR LLC has sold classes under the Logo in more than sixty cities since February 22, 2021, and Defendants

operate under the Infringing Logo in many of the same cities, including Tampa, Miami, Jacksonville, Chicago, and Las Vegas. *Supra* Section I ¶ 26. Halabi called Joos "a major competitor." *Id.*

Defendants next argue that, even with priority, the mark is not protectable because "CPR" and "Certification" are descriptive. Doc. # 48 at 20. Suggestive, arbitrary, and fanciful marks "are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Defendants' descriptiveness argument addresses the words "CPR" and "Certification," which Paragraph 7 allowed Halabi to use and which CPR LLC does not claim. Doc. # 48 at 20; Doc. # 38-1 ¶ 7. The claim is to the design. Defendant Company itself described the heart-and-wave design as "fanciful" when it applied to register its own version. *Supra* Section I ¶ 6. Defendants cannot call the design fanciful at the USPTO and descriptive here. CPR LLC has priority, competes with Defendants in the same markets, and owns an inherently distinctive design. Each element Defendants challenge is established.

**F. Laches and limitations do not bar CPR LLC's claims.**

Defendants argue that CPR LLC waited almost five years after Joos first questioned the Infringing Logo to file suit, so laches bars the Lanham Act claims and Florida's four-year statute of limitations bars the state claims. Doc. # 48 at 20-23. However, their own facts recite five years of continuous dispute: an objection, a written notice, a response, and a state court action. Doc. # 48 ¶¶ 8-21. Laches requires "(1) a delay in asserting a right or a claim; (2) that the delay

was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). "Courts excuse delay when, for example, a trademark owner delays in suing because it is attempting to resolve the dispute through settlement negotiations." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1009 (11th Cir. 2021). Laches fails where a defendant knows of a plaintiff's objections but nevertheless expands the use of an infringing mark. *Citibank, N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1546–47 (11th Cir. 1984).

Plaintiffs never sat on their rights. Defendant Company itself kept the dispute in litigation from May 2022, when it opposed CPR LLC's application, through the TTAB's June 2025 ruling on reconsideration. *Supra* Section I ¶ 21. The State Court Action also raised intellectual property issues relating to the Logo and sought to enjoin Halabi's "continued use of the Logo." *Supra* Section I ¶ 20. Defendants' claimed prejudice is growth from eleven to 107 locations after Joos objected. *Supra* Section I ¶ 9. Under *Citibank*, expansion with knowledge of the objection is not prejudice caused by delay. The Florida claims are timely as well. "Where the doctrine applies, a plaintiff may recover damages for tortious acts committed within the limitations period prior to the filing of suit." *Suarez v. City of Tampa*, 987 So. 2d 681, 685 (Fla. 2d DCA 2008). Defendants' use of the Infringing Logo continues today. *Supra* Section I ¶ 26. Because none of Defendants' grounds defeats Counts V, VI, VIII, IX, and X, the Court should deny

Defendants' Motion as to those counts and grant Plaintiffs' Motion (Doc. # 47) as to those counts.

**G. The record supports each challenged element of false advertising (Count VII).**

The record creates a genuine dispute on each element Defendants challenge. Falsity includes "claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (internal quotation marks omitted).

Defendants marketed classes as "Infant CPR Classes," but Halabi has sworn that all of Defendant Company's training sessions were AHA courses, and the AHA Basic Life Support course includes infant CPR as only one component of the course. *Supra* Section I ¶ 27. A class sold as "Infant CPR" that is the standard all-ages BLS course is, at a minimum, misleading in context.

Defendants argue that deception requires surveys, market research, or expert testimony. Doc. # 48 at 25. The Eleventh Circuit holds otherwise. Evidence of deception may consist of "consumer surveys, market research, expert testimony, or other evidence." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004). "[F]ull-blown consumer surveys or market research are not an absolute prerequisite." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (internal quotation marks and citation omitted). Here, an "Infant CPR" listing for a standard BLS course had the capacity to deceive any consumer looking for infant CPR training, and it

actually did. Sophia Van Gorder took one of Defendants' classes and then posted a one-star review on CPR LLC's Pittsburgh listing complaining that the class she bought "was titled 'Infant CPR'" but "covered CPR and AED training for all age groups." *Supra* Section I ¶ 28.

This is not *Belcher Pharms., LLC v. Hospira, Inc.*, where summary judgment was affirmed because there was no evidence "that a specific representation or statement by Hospira created" a misconception about its products. 1 F.4th 1374, 1381 (11th Cir. 2021). Here, the specific statement is the "Infant CPR" title, and the consumer tied her purchase to it. *Supra* Section I ¶ 28.

The record also supports materiality and injury. Materiality may be shown where "the defendants misrepresented an inherent quality or characteristic of the product." *1-800 Contacts*, 299 F.3d at 1250 (internal quotation marks and citation omitted). What a class teaches is its inherent characteristic. Van Gorder signed up "as an expectant new mom" and called the class "a waste of money." *Supra* Section I ¶ 28. "[L]ost sales and damage to its business reputation" are injuries to "precisely the sorts of commercial interests the Act protects." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137 (2014). CPR LLC and Defendant Company are direct competitors. *Supra* Section I ¶ 26. The deception produced a public one-star review on CPR LLC's own listing, and Joos testified that "[o]ur reputation was harmed by that review." *Supra* Section I ¶ 28. At a minimum, the record raises genuine disputes of material fact on each

element Defendants challenge, and the Court should deny Defendants' Motion as to Count VII.

## IV. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendants' Verified Motion for Summary Judgment as to Liability (Doc. # 48) in its entirety and grant Plaintiffs' Motion for Summary Judgment (Doc. # 47).

Dated: November 16, 2026.

Respectfully submitted,

/s/ Julia Hannah Weber
Julia Hannah Weber
Florida Bar No. 1045592
Joseph F. Southron, Esq.
Florida Bar No. 122109
**SOUTHRON FIRM, P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Phone: (813) 773-5105
Fax: (813) 683-4338
julia.weber@southronfirm.com
joe@southronfirm.com
eservice@southronfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Julia Hannah Weber
Julia Hannah Weber