# EXHIBIT 2

Plaintiff Joos's Amended Motion for and Memorandum of Law in Support of Temporary Injunction, Joos v. Halabi, No. 23-CA-013691 (Fla. 13th Cir. Ct. Nov. 2, 2023)

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

Douglas K. Joos,

Plaintiff,

CASE NO. 23-CA-013691
DIVISION L

vs.

__________,

Sami Halabi,

Defendant.
____________________________/

**PLAINTIFF JOOS'S AMENDED MOTION FOR AND MEMORANDUM OF LAW IN SUPPORT OF TEMPORARY INJUNCTION**

COMES NOW, Plaintiff, DOUGLAS K. JOOS ("Plaintiff Joos"), by and through the undersigned counsel pursuant to Fla. R. Civ. P. 1.610, hereby moves for this Court to issue a temporary injunction enjoining Defendant, SAMI HALABI ("Defendant Halabi"), his agents, employees, servants, and attorneys, and those persons in active concert or participation with Defendant Halabi, from the intentional misuse of Plaintiff Joos's CPR Certification logo, from continuing and undertaking actions explicitly in breach of the Partnership Dissolution Agreement entered into by and between Defendant Halabi and Plaintiff Joos, from intentionally interfering with Plaintiff Joos's ongoing business relationships, and from causing consumer confusion through Defendant Halabi's ongoing misrepresentations and misuse of the CPR Certification logo. Plaintiff Joos requests a nominal bond with due consideration to the actions and conduct of Defendant Halabi in this case to satisfy Fla. R. Civ. P. 1.610(b). As grounds for

the relief requested herein, Plaintiff Joos provided an affidavit in support of the facts stated, filed at Doc. # 14 and referred to herein as **Exhibit A**, incorporates by reference the allegations set forth in the Complaint, and further states as follows:

1. The current action arises from the breach of a valid Partnership Dissolution Agreement (the "Agreement") for Fit Industries, LLC (the "Company"), entered into by and between Plaintiff Joos and Defendant Halabi (collectively, the "Parties"). A true and correct copy of the Agreement was filed at Doc. # 17 and referred to herein as **Exhibit B**.

2. Formed in 2017, the Company offered CPR certification classes in cities throughout the United States, operating twenty-two (22) websites for twenty-two (22) individual cities.

3. Since its inception, the Company operated under the following logo (the "Company Logo" or "Logo"), followed by the name of the respective city:

CERTIFICATION CPR

4. On or around February 8, 2021, the Parties amicably agreed to dissolve the Company, and entered into the Agreement. *See* **Exhibit B**.

5. Paragraph 7 of the Agreement, titled <u>Ownership of Company Logo</u>, provided the following:

> The Members agree that the **Company's current logo as seen on the websites currently operated by Fit shall become the sole and exclusive property of Joos. Halabi may use the words "CPR," "Certification," and the unique city name in a new logo, but the design** (as used for the websites

> operated by Halabi, and as used in other documents and materials for the operation of the business, such as Certificates of Completion and business cards) **cannot incorporate the logo and must be different than the one currently used by Fit**. Joos and Halabi agree that **both members may use existing printed material for a period of 14 days from the Effective Date for their Distributed Websites**, thus allowing them sufficient time to order and obtain new printed materials for their Distributed Websites.
>
> **Exhibit B** at ¶ 7 (emphasis added).

6. Pursuant to Paragraph 7, the Company Logo became the sole and exclusive property of Plaintiff Joos. Defendant Halabi was only permitted to continue use of the Company Logo for a fourteen (14) day grace period following the execution of the Agreement. *See* **Exhibit B** at ¶ 7.

7. Paragraph 8 of the Agreement, titled <u>Additional Changes to the Websites</u>, provided:

> In addition to **changing the logo** as set forth above (i.e., appearance only and not the words), **Halabi agrees to change the hero picture on his websites, and change the icons** above the words "BLS CPR Classes," "CPR + First Aid Training," and "Group Lessons and Private Training" so that **a reasonable person viewing websites operated by Halabi will not be confused that the websites are operated by the same company as the ones operated by Fit**.
>
> **Exhibit B** at ¶ 8 (emphasis added).

8. Paragraph 11 of the Agreement, titled <u>Non-Disparagement Commitments</u>, provided, in part:

> The Members agree that they **shall not disparage, report, and/or demean one another**, and/or the other's owners, officers, directors, members, instructors, agents, industry governing boards/memberships (e.g., AHA) or employees **in any manner whatsoever**, to include but not limited to **speech, writings, online platforms**, negative SEO, emails, postings to social media, blogs, and websites. **This prohibition includes, but is not**

**limited to, disparaging and/or demeaning comments regarding the other Member and other Member's respective business and/or financial operations**.

**Exhibit B** at ¶ 11 (emphasis added).

9. Per SCHEDULE 3 of the Agreement, the twenty-two (22) operating Company domain names were divided amongst the Parties. *See* **Exhibit B** at Schedule 3.

10. Plaintiff Joos was awarded, among others, the rights to the domain name cprcertificationChicago.com[1], which operates under the following logo:

11. Within days after the Agreement took effect, Defendant Halabi, in addition to others, set up a nearly identical internet domain for Chicago,[2] using the following logo:

12. Defendant Halabi has continued to use the logo above, in combination with the relevant city name, a logo which is indistinguishable from the one owned by Plaintiff Joos, in many locations in major cities throughout the country. A non-exhaustive list, filed at Doc. # 18 and referred to herein as **Exhibit C**, shows the cities for which Plaintiff Joos was assigned domain names in the Agreement, and domain names related to the same cities that Defendant Halabi is now using in conjunction with the indistinguishable logo, as well as a number of additional internet domains operated by Defendant Halabi using that logo.

13. Defendant Halabi operates at least sixty (60) websites under the logo which is indistinguishable from the one owned by Plaintiff Joos. *See* **Exhibit C**.

[1] https://www.cprcertificationchicago.com.
[2] https://www.chicagocprclasses.org/.

14. Defendant Halabi has also used the logo indistinguishable from the one owned by Plaintiff Joos on a variety of printed materials that Defendant Halabi has distributed, including on business cards and completion cards.

15. Defendant Halabi is in direct breach of Paragraph 7 of the Agreement, whereby the Company Logo became the exclusive property of Plaintiff Joos and whereby Defendant Halabi was obligated to incorporate a logo with a new design different from the Company Logo. **Exhibit B** at ¶ 7.

16. Defendant Halabi is in direct breach of Paragraph 7 of the Agreement, whereby after the expiration of the fourteen- (14) day grace period, Defendant Halabi would cease use of the Company Logo on printed materials.

17. Defendant Halabi is in direct breach of Paragraph 8 of the Agreement, whereby Defendant Halabi was obligated to change explicit aspects of his new websites "so that a reasonable person viewing websites operated by Halabi would not be confused that the websites are operated by the same company as the ones operated by Fit." **Exhibit B** at ¶ 8.

18. Defendant Halabi is in direct breach of Paragraph 11 of the Agreement, whereby Defendant Halabi was prohibited from disparaging Plaintiff Joos or his businesses or financial operations. **Exhibit B** at ¶ 11.

19. Since entering into the Agreement on February 8, 2021, Defendant Halabi has intentionally and unjustifiably interfered with and disrupted Plaintiff Joos's exclusive property, his business relationships, and the good will of his businesses.

Moreover, Defendant Halabi has disparaged Plaintiff Joos and his businesses in numerous ways, including in ways which have harmed Plaintiff Joos's businesses.

20. For example, on February 25, 2021, Plaintiff Joos established a working office space with Yes Working, in Louisville, Kentucky. Further, Plaintiff Joos maintained a Google business profile for his Louisville business, registering it under the name "CPR Certification Louisville" and registered under the following mailing address: 965 Baxter Avenue, Louisville, KY.

21. In around January 2022, Defendant Halabi contacted Yes Working to establish a business profile in Louisville using Plaintiff Joos's name and the Logo. This misrepresentation caused confusion to Yes Working, mistaking Defendant Halabi to be the same company as Plaintiff Joos. Yes Working believed that Defendant Halabi was an agent of Plaintiff Joos looking to make changes to the account. This resulted in Plaintiff Joos losing his business listing on Google due to the duplicative nature of Plaintiff Joos's and Defendant Halabi's businesses.

22. Defendant Halabi has, on several other occasions, set up business addresses, office locations, or classes, in the same locations where Plaintiff Joos has already established business operations.

23. Due to the fact that Defendant Halabi operates businesses with similar names, in similar or the same locations, and under a logo indistinguishable from Plaintiff Joos's logo, potential and actual consumers, clients, and business partners alike have confused Defendant Halabi's business with Plaintiff Joos's business.

24. Clients, consumers, and instructors have mistaken Defendant's Halabi's fraudulent and deceptive business practices as attributable to Plaintiff Joos's, and Plaintiff Joos's businesses have suffered as a result.

25. For example, in January 2023, Plaintiff Joos received a cease and desist letter from a competing CPR certification business in Pittsburgh, Pennsylvania. A true and correct copy of the letter was filed at Doc. # 19 and referred to herein as **Exhibit D**.

26. The letter alleges that Plaintiff Joos's business was infringing the CPR PITTSBURGH trademark by registering the domain name cprpittsburgh.org and operating logos similar to the CPR PITTSBURGH mark and paid Google search results for that domain name. **Exhibit D** at 1.

27. However, the cease and desist letter was mistakenly sent to Plaintiff Joos and mistakenly alleges that Plaintiff Joos was operating the domain name cprpittsburgh.org.

28. Furthermore, in July 2023, Plaintiff Joos interviewed an instructor who, after searching Plaintiff Joos's business in Pittsburgh, Pennsylvania, mistakenly believed that Plaintiff Joos was selling exclusively online certifications and was the originator of a video on YouTube which fraudulently claims that a consumer can, in thirty minutes and without leaving home, obtain a certification card acceptable for any employment, including nursing.[3] The instructor insisted that he would not work with a company making fraudulent and unethical claims such as these.

29. Defendant Halabi has also made attempts to have Plaintiff Joos's business listings on Google taken down, including by posting photos to his locations.

[3] https://www.youtube.com/watch?v=-mXuih29fSY.

30. For example, on October 6, 2023, Defendant Halabi posted a photo on Google to Plaintiff Joos's Chesapeake location in an attempt to get it taken down. The photo was posted by username "CPR Director 842." As described below, Defendant Halabi owns a company called 842 Industries, LLC and has referred to himself as CPR Director in various contexts, including in email addresses. A true and correct copy of the notice of the photo posting received by Plaintiff Joos is attached hereto as **Exhibit E**.

31. On September 8, 2021, Plaintiff Joos submitted a Trademark/Service Mark Application (Serial Number: 97016512) to the United States Patent and Trademark Office ("USPTO") for the following CPR Certification literal element and design mark:

CERTIFICATION
CPR

32. On May 9, 2022, a Notice of Opposition was filed by Defendant Halabi with the USPTO whereby Defendant Halabi claims that Plaintiff Joos neither is nor was the rightful owner of the design mark, in another attempt to interfere with Plaintiff Joos's advantageous business relationships. A copy of the Notice of Opposition was filed at Doc. # 20 and referred to herein as **Exhibit F**.

33. The Opposer in the proceedings before the USPTO is CPR Certification LLC, a company owned by Defendant Halabi.

34. During discovery in the opposition proceedings and on October 16, 2023, a former employee of Defendant Halabi's was subpoenaed for deposition testimony on his knowledge of Defendant Halabi's business operations at CPR Certification, LLC. The former employee worked for 842 Industries, LLC, the parent company of CPR

Certification, LLC and another company owned by Defendant Halabi. An uncertified copy of the deposition was filed at Doc # 39.

35. The former employee testified that Defendant Halabi has been disparaging Plaintiff Joos and his businesses and making threats against Plaintiff Joos in front of Defendant Halabi's employees, and using employees to disparage Plaintiff Joos's businesses. *See e.g.*, Doc. # 39, 35:20-37:15; 69:11-73:9; 117:18-118:6.

36. The former employee was so fearful of repercussions or retaliation against him by Halabi that, during cross-examination by Halabi's attorney, he began experiencing chest pains, stated that he felt he needed to go to the hospital, and the deposition had to be suspended. *See e.g.,* Doc. # 39, 133:3-134:4.

37. This employee testified that Defendant Halabi made violent sexual comments about and threats against Plaintiff Joos in meetings with his own employees, including specific violent comments that Defendant Halabi "wanted to f— Doug in the a– until he bled" and that Defendant Halabi "wanted [Doug] to choke on his cock until he dies." *See* Doc. # 39, 35:20-37:2.

38. The employee testified that Defendant Halabi portrayed Plaintiff Joos as a villain to his staff, disparaged his businesses, reported Plaintiff Joos's Google business profiles, made complaints on Plaintiff Joos's business listings, and specifically instructed overseas employees in the Philippines to leave false reviews on Plaintiff Joos's businesses. *See generally,* Doc. # 39, 65:16-71:9.

39. The employee also testified that in his experience, Defendant Halabi did not honor contractual obligations or agreements and that Defendant Halabi is an

unethical person. For example, Defendant Halabi continued to teach one-hour CPR classes after the American Heart Association sent out notice that CPR classes post-COVID would no longer be permitted to last for only one hour. Despite the fact that teaching such short classes endangered the lives of consumers, Defendant Halabi continued the practice of teaching one-hour classes for four months until he was finally convinced by his employees to stop. Doc # 39, 43:14-55:15.

40. The employee testified that Defendant Halabi not only disparaged Plaintiff Joos but also his own Chief Operating Officer, Laura Ahammer, whom he apparently called a c— countless times in meetings, as well as other employees such as Filipino employees whom he would make cry on a regular basis. *See* Doc. # 39, 47:14-53:23.

41. He testified that the work environment was hostile and Halabi would target any employee for any reason and make violent or degrading comments or threats towards any and all employees. *Id.*

42. He testified that he not only feared for his own and his family's safety from Halabi, but for the safety of anyone who still works for or who has fled Halabi. *Id.*

43. Plaintiff Joos himself witnessed outbursts by Defendant Halabi while they were in business together at Fit. For these reasons, Plaintiff Joos fears for his safety and his family's safety.

44. Defendant Halabi has intentionally and unjustifiably interfered with Plaintiff Joos's business relationships through continued misrepresentations and misuse of Plaintiff Joos's exclusive property.

45. Defendant Halabi has intentionally and unjustifiably breached the non-disparagement clause of the Agreement and further unjustifiably interfered with Plaintiff Joos's business relationships through his violent and disturbing comments and threats against Plaintiff Joos as well as his online disparagement of Plaintiff Joos's businesses.

46. At the time of Defendant Halabi's wrongful acts as alleged herein, Plaintiff Joos, a successful entrepreneur and business owner, was enjoying advantageous and beneficial goodwill and business relationships with clients and instructors.

47. At the time of the wrongful acts, Defendant Halabi had knowledge of and was aware of Plaintiff Joos's long-developed goodwill and business relationships.

48. By the wrongful acts described above, Defendant Halabi intended to disrupt and interfere with Plaintiff Joos's business relationships for an improper purpose.

49. Due to Defendant Halabi's repeated breaches of the Agreement, and the resulting consumer confusion, Plaintiff Joos has dealt with potential and actual consumers, clients, and business partners alike mistakenly attributing Defendant Halabi's fraudulent conduct to Plaintiff Joos's businesses.

50. Plaintiff Joos has suffered and will continue to suffer irreparable harm because Defendant Halabi's wrongful actions 1) interfere with Plaintiff Joos's ongoing business relationships, 2) prevent Plaintiff Joos from continuing ongoing business relationships, 3) cause ongoing consumer confusion, and 4) allow Defendant Halabi to profit from the misuse of Plaintiff Joos's sole and exclusive property.

51. Based on the facts and arguments presented herein, this Court should find that a temporary injunction is necessary as Plaintiff Joos has no other means by which to prevent Defendant Halabi from continuing in this manner.

**FACTUAL GROUNDS FOR GRANTING TEMPORARY INJUNCTION**

52. Plaintiff Joos has a clear legal right to the sole and exclusive possession of the Company Logo.

53. Plaintiff Joos has a clear legal right to enjoin Defendant Halabi from continuing to commit breaches of the Agreement.

54. Defendant Halabi has failed and refused to honor the terms of the Agreement, and continuously taken intentional and unjustifiable actions to disrupt and interfere with Plaintiff Joos's ongoing business relationships.

55. Plaintiff Joos has provided an affidavit describing the specific facts which entitle Plaintiff Joos to a temporary injunction.

56. Plaintiff Joos will suffer irreparable harm if the temporary injunction is not entered as Defendant Halabi's intentional interference with Plaintiff Joos's business relationships has resulted in consumer confusion as well as innumerable loss in customers and the goodwill and nature of his businesses.

57. Plaintiff Joos has no adequate remedy at law inasmuch as the damage to his business relationships from the wrongful acts of Defendant Halabi and consumer confusion is ongoing.

58. Plaintiff Joos has no adequate remedy at law for the damages suffered as a result of Defendant Halabi's violent threats against him and he contains to fear for his safety knowing that Defendant Halabi is capable of anything.

59. A temporary injunction will serve the public interest, as the public is entitled to be free from deception and confusion.

60. Further, a temporary injunction will serve the public interest by immediately stopping Defendant Halabi's deception of consumers, which by its very nature, is against the public interest.

## MEMORANDUM OF LAW

### I. STANDARD FOR TEMPORARY INJUNCTIONS

Pursuant to Rule 1.610(a) of the Florida Rules of Civil Procedure, a temporary injunction may be granted without notice to the adverse party if:

(A) it appears from the specific facts shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts that have been made to give notice and the reasons why notice should not be required.

A trial court should issue an ex-parte injunction "only where an immediate threat of irreparable injury 'which forecloses opportunity to give reasonable notice' exists." *State v. Beeler*, 530 So. 2d 932, 934 (Fla. 1988) (quoting *Lieberman v. Marshall*, 236 So. 2d 120, 125 (Fla. 1970)). A party seeking a temporary injunction must establish: "a substantial likelihood of success on the merits; lack of an adequate remedy at law; irreparable harm absent the entry of an injunction; and that injunctive relief will serve the public interest." *Reform Party of Florida v. Black*, 885 So. 2d 303, 305 (Fla. 2004); *see also Gainesville*

*Woman Care, LLC v. State*, 210 So.3d 1243, 1258 (Fla. 2013); *Concerned Citizens for Judicial Fairness v. Yacucci*, 162 So. 3d 68, 72 (Fla. Dist. Ct. App. 4th Dist. 2014).

Under well-established Florida law, "[t]emporary injunctions have been recognized as a viable form of relief in a suit for tortious interference with a contract." *Heavener, Ogier Servs. v. R. W. Fla. Region*, 418 So. 2d 1074, 1075 (Fla. Dist. Ct. App. 5th Dist. 1982) (citing *Knight v. City of Miami*, 173 So. 801 (Fla. 1937)); *see also Dade Enterprises, Inc. v. Wometco Theaters, Inc.*, 119 160 So. 209 (Fla. 1935). Unlike in this case, even the absence of a written agreement between the parties "does not prevent the court from enjoining unjustified interference with a business relationship if, on the facts, injunction is an appropriate remedy." *Unistar Corp.*, 415 So. 2d at 735.

## II. <u>ARGUMENT</u>

### A. <u>Plaintiff Joos will Suffer Irreparable Harm Unless a Temporary Injunction is Entered</u>

The undisputed evidence on the record shows that Plaintiff Joos not only has suffered, but will continue to suffer irreparable harm if the intentional and unjustifiable acts of Defendant Halabi are not enjoined during the pendency of the proceedings before the USPTO. Since Defendant Halabi's initial breach of the Agreement, Defendant Halabi has repeatedly sought to disrupt and interfere with Plaintiff Joos's business relationships.

"The purpose of a temporary or preliminary injunction is not to resolve disputes but rather to prevent irreparable harm by maintaining status quo until a final hearing can occur when full relief may be given." *Michele Pommier Models, Inc. v. Diel*, 886 So. 2d 993, 995-96 (Fla. Dist. Ct. App. 4th Dist. 2004).

Irreparable harm in tortious interference actions is often assumed. *Heavener, Ogier Servs.*, So. 2d at 1075-76; *see also Unistar Corp. v. Child*, 415 So. 2d 733 (Fla. Dist. Ct. App. 3d Dist. 1982) *adopted en banc on rehearing*, 415 So. 2d 733, 735 (Fla. Dist. Ct. App. 3d Dist. 1982) ("Even if positive proof of an injury did not appear from the record, such irreparable harm could be presumed and need not be alleged or proved in a case involving wrongful interference with a business relationship." (citing *Sentry Insurance v. Dunn*, 411 So. 2d 336 (Fla. Dist. Ct. App. 5th Dist. 1982))).

Furthermore, courts have found that likelihood of consumer confusion in unfair competition and trademark infringement cases constitutes irreparable harm as a matter of law. *See Laboratorios Roldan, C. por A. v. Tex Int'l, Inc.*, 902 F.Supp. 1555, 1571 (S.D. Fla. 1995) (granting a temporary injunction for unfair competition and trademark infringement, recognizing that the likelihood of confusion constitutes irreparable injury as a matter of law); *see also M & E Distributors, Inc. v. Wooley*, 840 So. 2d 457, 459 (Fla. Dist. Ct. App. 4th Dist. 2003) ("where the court finds there is a likelihood of consumer confusion, irreparable harm and inadequate remedy at law can be presumed." (citing *Callaway Golf Co. v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1215 (M.D. Fla. 1995) ("In trademark infringement cases, irreparable harm is presumed"))).

Here, Defendant Halabi has not only filed in opposition of a Design Mark from the USPTO on the Logo exclusive to Plaintiff Joos under the plain terms of the Agreement, but Defendant Halabi also filed for business profile—nearly one (1) year after Plaintiff Joos—using the same name, same logo, same business address, in the same location, with the same company. As a result, due to the extreme likelihood of

consumer confusion by Defendant Halabi's filing, Plaintiff Joos was deprived not only of his business profile, but an immeasurable number of customers, future business relationships, his business reputation as an upstanding healthcare education provider, and of the right to operate under the Logo exclusively owned by him. Furthermore, Defendant Halabi has been causing false negative reviews of Plaintiff Joos's businesses to be posted to the public on Google, further causing an innumerable loss of customers, future business relationships, and negatively affecting Plaintiff Joos's business reputation. Based on the foregoing, this Court should find that Plaintiff Joos will undeniably suffer irreparable harm as a result of the Defendant Halabi's wrongful acts unless a temporary injunction is entered.

**B. There is No Adequate Remedy at Law**

A party lacks an adequate remedy at law when monetary damages would not fully compensate for a loss. *Amelio v. Marilyn Pines Unit II Condo. Ass'n, Inc.*, 173 So. 3d 1037, 1040 (Fla. Dist. Ct. App. 2d Dist. 2015). While Plaintiff Joos could be partially compensated with an award of monetary damages for some claims brought against Defendant Halabi, allowing Defendant Halabi to continue with his current course of action would bring irreparable harm to Plaintiff Joos. Where courts have found there is a likelihood of consumer confusion, an inadequate remedy at law can be presumed. *E.g., M & E Distributors, Inc. v. Wooley*, 840 So. 2d at 459.

Here, Defendant Halabi has caused immense confusion between Defendant Halabi's logo and the Logo to which Plaintiff Joos has exclusive rights, causing clients to have trouble differentiating between the two, and confusing the businesses as the same.

For example, the confusion has resulted in Plaintiff Joos's business receiving bad reviews when the review was meant for Defendant Halabi's business. Defendant Halabi has knowingly taken specific steps that would cause confusion to current and potential clients, including: 1) using a logo with the same color, wording, and symbols; 2) placing the logo in the same top left position on domain websites, 3) locating businesses at the same address or within close proximity of Plaintiff Joos's locations, and 4) contacting the same instructors as Plaintiff Joos. This has caused immediate irreparable harm, and could further damage Plaintiff Joos's businesses, the businesses' good will, brand, and reputation in its industry and among existing customers.

Furthermore, through his breaches of the non-disparagement clause, including violent threats against Plaintiff Joos, Plaintiff Joos is fearful for his life and his safety and the safety of his family. There is no adequate remedy at law that could make Plaintiff Joos feel safe given Defendant Halabi's threats. Secondary to his genuine and well-founded fear, Plaintiff Joos's businesses are suffering as a result of Defendant Halabi's breaches of the non-disparagement clause by his intentional posting of false reviews online.

Due to Defendant Halabi's actions and the precarious position such actions have placed Plaintiff Joos in financially, no adequate remedy at law could restore Plaintiff Joos to the position he was in prior to Defendant Halabi's actions.

### C. <u>Plaintiff Joos has Shown a Substantial Likelihood of Success on the Merits</u>

Prior to issuing a temporary injunction, a trial court must ensure that the petition or other pleadings demonstrate a prima facie, clear legal right to the relief

requested. *E.g., Oxford International Bank and Trust, Ltd. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 374 So. 2d 54 (Fla. Dist. Ct. App. 3d Dist. 1979), *cert. dismissed,* 383 So.2d 1199 (Fla. 1980). The petition must show a substantial likelihood of success on its merits. *See, e.g., Mid-Florida at Eustis, Inc. v. Griffin*, 521 So. 2d 357, 357 (Fla. Dist. Ct. App. 5th Dist. 1988); *Heavener, Ogier Services, Inc.*, 418 So. 2d 1074; *Russell v. Florida Ranch Lands, Inc.*, 414 So.2d 1178 (Fla. Dist. Ct. App. 5th Dist. 1982).

Here, Plaintiff Joos has shown, through the facts and arguments presented herein, the Complaint, and the documentary evidence filed on the docket and attached to the Complaint, a substantial likelihood of success on the merits. Pursuant to the clear and unambiguous terms of the Agreement, Plaintiff Joos and Defendant Halabi agreed that the Company Logo "shall become the sole and exclusive property of Joos." *See* **Exhibit A** at ¶ 7. Despite the explicit terms of the Agreement, to date, Defendant Halabi remains in breach. Furthermore, pursuant to the clear and unambiguous terms of the Agreement, both parties agreed "that they shall not disparage, report, and/or demean one another, and/or the other's owners, officers, directors, members, instructors, agents, industry governing boards/memberships (e.g., AHA) or employees in any manner whatsoever, to include but not limited to speech, writings, online platforms, negative SEO, emails, postings to social media, blogs, and websites." **Exhibit A** at ¶ 11.

Defendant Halabi's breaches of the Agreement, misuse of the Company Logo, misrepresentations causing consumer confusion, and intentional and unjustifiable acts aimed at disrupting and interfering with Plaintiff Joos's business relationships, as well as disparagement of and threats against Plaintiff Joos and his businesses, are clearly in

violation of the law and should be restrained by this Court without delay. Unless enjoined, this behavior by Defendant Halabi will only continue, Defendant Halabi will continue to be in breach of the Agreement, and Defendant Halabi will continue to disrupt and interfere with Plaintiff Joos's ongoing and advantageous business relationships. "A substantial likelihood of success on the merits is shown if good reasons for anticipating that result are demonstrated. It is not enough that a merely colorable claim is advanced." *See City of Jacksonville v. Naegele Outdoor Advert. Co.*, 634 So. 2d 750, 753 (Fla. 1st DCA 1994), *approved sub nom. Naegele Outdoor Advert. Co., Inc. v. City of Jacksonville*, 659 So. 2d 1046 (Fla. 1995), *as modified on reh'g* (Aug. 24, 1995).

Here, the undisputed evidence on the record makes clear that unless enjoined by this Court, the wrongful acts of Defendant Halabi will merely continue, resulting in nothing other than ongoing interference, disruption, and delay of Plaintiff Joos's business relationships. It is for these reasons that this Court should find that Plaintiff Joos has demonstrated a substantial likelihood of success on the merits.

### D. <u>Considerations of the Public Interest Support Entry of the Injunction</u>

The proposed injunctive relief will also serve the public interest. The public as a whole is best served by protecting small business interests from malicious actors, and from courts' enforcement of contractual obligations agreed to by parties. Furthermore, "a trial court's finding that [a] covenant protects a legitimate business interest is also important to public interest considerations." *Atomic Tattoos, LLC v. Morgan,* 45 So. 3d 63, 65-66 (Fla. Dist. Ct. App. 2d Dist. 2010) (citing *Walsh v. Paw Trucking*, 942 So. 2d 446, 448 (Fla. Dist. Ct. App. 2d Dist. 2006)). Defendant Halabi is bound by the Agreement to

cease use of the Company Logo to which Plaintiff Joos has exclusive rights, and not interfere with Plaintiff Joos's business. Defendant Halabi is also bound by the Agreement to refrain from disparaging Plaintiff Joos or his business.

Enjoining Defendant Halabi from continuing to violate these contractual obligations will serve the public interest by upholding the sanctity of contracts and furthermore stopping Defendant Halabi's deception of the consuming public. In cases of trademark infringement or unfair competition, the public "is present and its interests are paramount." *BellSouth Advert. & Pub. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991); *Laboratorios Roldan*, 902 F. Supp. at 1571 (stating that "the public is entitled to be free from deception and confusion"); *see also Teledyne Indus., Inc. v. Windmere Prods., Inc.*, 433 F.Supp. 710, 740 (S.D. Fla. 1977) ("customer confusion is by its very nature against the public interest."). Injunctive relief in such cases serve the public interest by immediately preventing further confusion and deception of consumers. *BellSouth*, 792 F. Supp. at 785, *see also Laboratorios Roldan*, 902 F. Supp. at 1571.

The undisputed evidence on the record shows that Defendant Halabi has engaged in consumer deception and that Defendant Halabi's wrongful acts, including his general deceptive business practices, have caused and will continue to cause immense consumer confusion if not enjoined. Furthermore, the evidence on the record shows that Defendant Halabi has blatantly breached the non-disparagement clause of the Agreement and intentionally threatened Plaintiff Joos and his businesses. The public interest would be served by immediately stopping Defendant Halabi from causing any further confusion, from continued consumer deception, and from continued and

unjustified disparagement of Plaintiff Joos and his businesses. Therefore, based on the foregoing, this Court should find that Plaintiff Joos is entitled to enjoin the wrongful acts of Defendant Halabi.

**INJUNCTION**

Accordingly, and pursuant to Florida law and the facts contained in Plaintiff Joos's Complaint and this Amended Motion, Plaintiff Joos respectfully requests that this Court enter an injunction as follows:

(1) Defendant Halabi, and his agents, employees, servants, and attorneys, and those persons in active concert or participation with Defendant Halabi, immediately cease the intentional misuse of Plaintiff Joos's Logo;

(2) Defendant Halabi, and his agents, employees, servants, and attorneys, and those persons in active concert or participation with Defendant Halabi, immediately cease the intentional disparagement of Plaintiff Joos and his businesses;

(3) Defendant Halabi, and his agents, employees, servants, and attorneys, and those persons in active concert or participation with Defendant Halabi, immediately cease from intentionally creating false reviews or reports of Plaintiff Joos's businesses;

(4) Defendant Halabi, and his agents, employees, servants, and attorneys, and those persons in active concert or participation with Defendant Halabi, immediately cease any and all actions in explicit breach of the Agreement;

(5) Defendant Halabi, and his agents, employees, servants, and attorneys, and those persons in active concert or participation with Defendant Halabi, immediately cease any and all actions interfering with Plaintiff Joos's business relationships;

(6) Defendant Halabi, and his agents, employees, servants, and attorneys, and those persons in active concert or participation with Defendant Halabi, immediately cease making misrepresentations to third parties which would interfere with Plaintiff Joos's business relationships;

(7) Defendant Halabi be prohibited from going to or within 500 feet of any place Plaintiff Joos lives, or to any specified place regularly frequented by Plaintiff Joos and any family members or individuals closely associated with Plaintiff Joos;

(8) Defendant Halabi be prohibited from contacting Plaintiff Joos by telephone, mail, by e-mail, in writing, through another person, or in any other manner;

(9) Defendant Halabi be prohibited from knowingly and intentionally going to or within 100 feet of Plaintiff Joos's motor vehicle, whether or not that vehicle is occupied.

**WHEREFORE**, Plaintiff, Doug Joos, respectfully requests that this Court issue a temporary and preliminary injunction enjoining Defendant Halabi as provided above, and any other relief which this Court deems proper and just.

Dated: November 2, 2023.

Respectfully Submitted,

/s/ Joseph F. Southron
Joseph F. Southron, Esquire
Florida Bar No.: 0122109
Primary e-mail: joe@fourriverslaw.com
Secondary e-mail: eservice@fourriverslaw.com
**FOUR RIVERS LAW FIRM**
400 N. Ashley Drive, Suite 1720
Tampa, FL 33602
Telephone: (813) 773-5105
Facsimile: (813) 773-5103
***Counsel for Plaintiff Joos***

**CERTIFICATE OF SERVICE**

I certify that, on November 2, 2023, a true and correct copy of the foregoing document filed was electronically filed using Florida's E-Portal Filing System, and was served via email to:

John A. Schifino, Esq.
JSchifino@gunster.com
asnaggs@gunster.com
ddietrich@gunster.com
JBennett@gunster.com
cwarder@gunster.com
*Attorney for Defendant Sami Halabi*

/s/ Joseph F. Southron
Joseph F. Southron
Florida Bar No.: 122109
For the Firm