# EXHIBIT 3

Defendant Sami Halabi's Verified Response to Plaintiff's Amended Motion for Temporary Injunction, Joos v. Halabi, No. 23-CA-013691 (Fla. 13th Cir. Ct. Nov. 13, 2023)

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

DOUGLAS K. JOOS,

Plaintiff,

CASE NO.: 23-CA-013691
DIVISION: K

v.

SAMI HALABI,

Defendant.
_________________________/

**DEFENDANT SAMI HALABI'S VERIFIED RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR AND MEMORANDUM OF LAW IN SUPPORT OF TEMPORARY INJUNCTION**

Defendant, Sami Halabi ("Halabi" or "Defendant"), by counsel, files his response to Plaintiff Douglas K. Joos' Amended Motion for and Memorandum of Law in Support of Temporary Injunction (the "Amended Motion") filed against Halabi. For the reasons set forth below, the Court should deny Plaintiff's Amended Motion.

**INTRODUCTION**

Plaintiff filed the Complaint in this action on July 10, 2023. [Doc. 4]. Plaintiff waited a full month before filing his first motion for preliminary injunctive relief on August 11, 2023 based on Plaintiff's breach of contract and tortious interference claims. [Doc. 15]. Counsel for Plaintiff did not attempt to confer before filing his first preliminary injunction motion. Although counsel for Halabi had already entered an appearance in the case, rather than set the first motion for hearing, Plaintiff waited another month and refiled his motion on September 8, 2023. [Doc. 21]. Still failing to confer and circumventing proper procedure, the refiled motion sought the same relief, but *ex-parte* and on an emergency basis. [*Id.*]. His strategy thwarted and this case transferred to business court, Plaintiff then set his original

preliminary injunction motion for a non-evidentiary hearing to be held on November 6, 2023. [Doc. 37].

Plaintiff filed the Amended Motion less than 48 business hours before the scheduled hearing—again, without good faith conferral. [Doc. 39]. On the morning of Monday, November 6, 2023, Plaintiff amended his notice of hearing to substitute in his Amended Motion. [Doc. 42]. Inexplicably, counsel for Plaintiff represented at the hearing that the Amended Motion did not present any substantive changes, and merely provided additional evidentiary basis for the requested injunction. Counsel's statement is belied by the plain allegations and request for relief in the Amended Motion. Not only does it assert a new breach of contract claim, but it also purports to seek a personal restraining order against Halabi based on unsworn allegations of defamation occurring over a year ago.

As explained below, Plaintiff fails to satisfy any of the requisite elements for a temporary injunction. Worse still, his request for a protective injunction is entirely improper and unsubstantiated. First, Plaintiff fails to demonstrate that a temporary injunction would prevent any irreparable harm because Plaintiff has an adequate remedy at law and Plaintiff *unreasonably delayed for more than two years* in seeking injunctive relief. Further, entering an injunction would be against the public's interest because Plaintiff is attempting to prohibit customers from receiving CPR certification from Halabi. Contrary to the public's best interest, Plaintiff is attempting to promote their own financial interests above any of the customers' best interest and welfare. Moreover, for the reasons explained below, Plaintiff cannot demonstrate a substantial likelihood of success on the merits against Halabi.

Second, Plaintiff's request for a personal restraining order is improper, procedurally flawed and a transparent attempt to harass Halabi in retribution for alleged contract and

business tort claims. The injunction for protection request and associated allegations should be stricken.

## MEMORANDUM OF LAW

### I. Factual Background

1. Defendant and Plaintiff formed Fit Industries, LLC, (the "Company") in February 2017.

2. In February 2021, Plaintiff and Defendant agreed to dissolve the Company as set forth in the February 8, 2021, Dissolution Agreement (the "Agreement"). The Agreement is attached to the Complaint as Exhibit "A."

3. The Complaint and Plaintiff's Amended Motion hinge on the language of the Agreement, an alleged breach of the Agreement, and Plaintiff's ownership of the following logo:

(the "CPR Logo").

4. Plaintiff alleges that Defendant's logo, shown below, is "indistinguishable" from the CPR Logo owned by Plaintiff in many locations ("Defendant's Logo").

5. The Agreement specifically provides that Plaintiff and Defendant:

> agree that the Company's current logo as seen on the websites and currently operated by FIT shall become the sole and exclusive property of [Plaintiff]. **[Defendant] may use the words 'CPR,' 'Certification,' and the unique city name in a new logo, but the design (as used for**

> **the websites operated by Halabi, and as used in other documents and materials for the operation of the business, such as Certificates of Completion and business cases) cannot incorporate the logo and must be different than the one currently used by Fit.** [Plaintiff] and [Defendant] agree that both members may use existing printed material for a period of 14 days from the Effective Date for their Distributed Websites, thus allowing them sufficient time to order and obtain new printed materials for their Distributed Websites.

Agreement [Exh. A attached to Complaint] at ¶ 7.

6. The Defendant's Logo is different, as required by the Agreement, from the CPR Logo.

7. Defendant has used Defendant's Logo since February 22, 2021.

8. **More than two years ago**, on February 23, 2021, Plaintiff raised a "question of whether [Defendant's Logo] is sufficiently different from the [CPR Logo] that [Plaintiff] was awarded under the [Agreement]."[1] (*See* **Exhibit A**). Plaintiff took no further action to address the question concerning Defendant's Logo. Notably, the Agreement Plaintiff signed fails to include the word "sufficiently", or any other descriptive word beyond the agreed requirement that the logo simply be "different" as outlined by the plain terms of the Agreement.

9. On September 8, 2021, Plaintiff submitted a Trademark/Service Mark Application (Serial Number: 97016512) to the United States Patent and Trademark Office ("USPTO"). On April 8, 2022, Defendant filed an extension of time to file a Notice of Opposition. On May 9, 2022, Defendant filed a Notice of Opposition to Plaintiff's application. Plaintiff took no further action to address the question concerning Defendant's Logo.

---

[1] Plaintiff's claim is further undermined by the fact that a simple Google search for "CPR company" images returns a significant number of responsive hits and almost every page contains logos with heart symbols and sinusoidal waves.

10. On March 17, 2022, Plaintiff sent Defendant a "Written Notice" in which Plaintiff asserted the same issues he now bases his Motion upon—albeit a year and a half later. (*See* **Exhibit B**). Specifically, Plaintiff raised purported concerns about compliance with the Agreement, Defendants' Logo, alleged consumer confusion, and alleged tortious interference with business relationships. Plaintiff concluded the letter by stating he would "file a lawsuit seeking compensatory damages and injunctive relief…" However, Plaintiff took no further action and waited almost a year and a half to bring the instant lawsuit and seek injunctive relief.

11. Finally, despite the requirement of Local Rule 3 (Business Court Procedure) and Rule 3.7, the Amended Motion does not contain a Certificate of Good Faith Conference.

## II. Plaintiff Fails to Establish the Elements Necessary to Support a Temporary Injunction

A temporary injunction is "an extraordinary remedy" that may only be "granted sparingly." *Phelan v. Trifactor Sols., LLC*, 312 So. 3d 1036, 1038 (Fla. 2d DCA 2021). "[A] temporary injunction is an extraordinary remedy that can only be granted if the movant establishes (1) a likelihood of irreparable harm, (2) unavailability of an adequate legal remedy, (3) substantial likelihood of succeeding on the merits, and (4) support for the injunction within considerations of public interest." *Phantom of Clearwater, Inc. v. Pinellas Cty.*, 894 So. 2d 1011, 1014 (Fla. 2d DCA 2005). "Each of these elements must be proven by the movant with competent, substantial evidence" and "[f]ailure to prove any one of the four elements mandates denial of the motion for temporary injunction." *Holland M. Ware Charitable Found. v. Tamez Pine Straw LLC*, 343 So. 3d 1285, 1289 (Fla. 1st DCA 2022).

As explained below, Plaintiff fails on each of the requisite elements because: (1) Plaintiff cannot demonstrate any likelihood of irreparable harm; (2) to the extent any remedy

is appropriate, money damages are an adequate remedy at law that would satisfy each of the alleged harms purportedly caused to Plaintiff; (3) Plaintiff does not have a substantial likelihood of success on the merits; and (4) the public interest would not be served by the entry of an injunction in this matter.

### A. There is No Irreparable Harm and the Remedy at Law is Adequate

Plaintiff has not, and cannot, establish any form of irreparable harm and he has an available remedy at law. "An action at law does not become an equitable action simply because a request for an injunction has been made." *Weinstein v. Aisenberg*, 758 So. 2d 705, 707 (Fla. 4th DCA 2000) (holding that a businessman was not entitled to a temporary injunction on a conversion claim to prevent his business partner from withdrawing funds from newly-opened bank accounts, as the businessman had an adequate remedy at law—money damages) (citations omitted). Under Florida law, "[i]rreparable harm for the purposes of an injunction is not established where the harm can be compensated for adequately by money damages." *Stand Up for Animals, Inc. v. Monroe Cnty.*, 69 So. 3d 1011, 1013 (Fla. 3d DCA 2011) (citing *Supreme Serv. Station Corp. v. Telecredit Serv. Ctr., Inc.*, 424 So.2d 844, 844 (Fla. 3d DCA 1982)). "Irreparable injury is defined as injury that cannot be cured by money damages, and the test for unavailability of adequate remedy at law is whether a judgment can be obtained, not whether it will be collectible once obtained." *Holland*, 343 So. 3d at 1289. "Irreparable injury cannot be found where the asserted injury is doubtful, eventual, or contingent, and money damages and loss of business to a competitor generally do not suffice to demonstrate irreparable injury." *Holland*, 343 So. 3d at 1289 (citing *State, Dept. of Health v. Bayfront HMA Med. Ctr., LLC*, 236 So. 3d 466, 475 (Fla. 1st DCA 2018)). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course

of litigation, weighs heavily against a claim of irreparable harm." *VME Grp. Int'l, LLC v. Grand Condo. Ass'n*, Inc., 305 So. 3d 30, 33 (Fla. 3d DCA 2019) (citations omitted); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[A]n alleged loss of business will not support a finding of irreparable harm."); *State Dep't of Transp. v. Kountry Kitchen of Key Largo*, 645 So. 2d 1086 (Fla. 3d DCA 1994) (holding that an owner's allegation it would suffer business losses was insufficient to justify the issuance of a temporary injunction); *B.G.H. Ins. Syndicate, Inc. v. Presidential Fire & Casualty Co.*, 549 So. 2d 197, 198 (Fla. 3d DCA 1989) ("For injunctive relief purposes irreparable harm is not established where the potential loss can be adequately compensated for by a monetary award.").

First, Plaintiff has unduly delayed for **more than two years** in seeking injunctive relief against Defendant. Plaintiff's unexplained delay fatally undermines any showing of irreparable harm. A plaintiff's failure to act speedily undermines his claim that his injuries are irreparable. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (affirming the district court's denial of a preliminary injunction because the litigant's "unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury"); *Greenwood v. City of Delray Beach*, 543 So. 2d 451, 452 (Fla. 4th DCA 1989) ("Greenwood waited nineteen months after the electors approved the Delray Beach Enclave Act before launching his attack on the validity of its passage."); *Pippin v. Playboy Ent. Group, Inc.*, No. 8:02-CV-2329T30-EAJ, 2003 WL 21981990, at *2 (M.D. Fla. July 1, 2003) ("Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm."); *Gen. Parts Distrib. LLC v. Enright*, No. 8:13-cv-2500-T-23EAJ, 2014 WL 172116, at *7 (M.D. Fla. Jan. 10, 2014) (eight-week

delay in seeking preliminary injunction for alleged violation of restrictive covenant "weigh[ed] against a finding of irreparable harm"); *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-cv-20862, 2021 WL 3618227, at *9 (S.D. Fla. Aug. 16, 2021) (Bloom, J.) (collecting cases denying injunctive relief after plaintiff delayed for between two and twelve months); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) (Lenard, J.) (plaintiff's three month delay in seeking an injunction in a trademark case "tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.").

The Agreement is dated February 8, 2021. According to the Agreement, Defendant had a 14-day grace period to update the logo. Defendant has been using Defendant's Logo since February 23, 2021. Plaintiff actually asserts that "within days after the Agreement took effect, Defendant Halabi, in addition to others, set up a nearly identical internet domain for Chicago using Joos logo." Motion at ¶ 10. At the very latest, it is undisputed that Plaintiff became aware of Defendant's Logo and the purported issues and disputes in February 2021. *See* Exhibit A. Plaintiff then asserts: "On or about March 17, 2022, Plaintiff Joos notified Defendant Halabi in writing that Defendant Halabi was in breach of the Agreement." Complaint ¶11; *see also* Exhibit B. Indeed, this is the key foundational complaint asserted by Plaintiff in seeking injunctive relief. However, instead of seeking injunctive relief in February 2021 or March 2022, Plaintiff delayed more than two years before doing anything to attempt to remedy these purported issues. It was not until August 11, 2023, that Plaintiff filed his initial motion seeking injunctive relief, which was not an emergency, and was filed after he filed his complaint. Plaintiff provides no reason for the extended delay in seeking injunctive

relief. Plaintiff's delay in filing his Motion demonstrates that this action is not about preventing some irreparable harm. Rather, the Motion is merely an attempt to obtain unwarranted leverage in the action pending before the USPTO.

Second, Plaintiff's request for injunctive relief is based solely on purported loss of business and monetary damages. Plaintiff asserts:

> Here, Defendant Halabi has not only filed in opposition of a Design Mark from the USPTO on the Logo exclusive to Plaintiff Joos under the plain terms of the Agreement, but Defendant Halabi also filed for business profile—nearly one (1) year after Plaintiff Joos—using the same name, same logo, same business address, in the same location, with the same company. As a result, due to the extreme likelihood of consumer confusion by Defendant Halabi's filing, Plaintiff Joos was deprived not only of his business profile,[2] but an immeasurable number of customers, future business relationships, his business reputation as an upstanding healthcare education provider, and of the right to operate under the Logo exclusively owned by him. Based on the foregoing, this Court should find that Plaintiff Joos will undeniably suffer irreparable harm as a result of the Defendant Halabi's wrongful acts unless a temporary injunction is entered.

None of these purported harms alleged by Plaintiff meets the standard of irreparable harm set forth above—rather, each item of purported damages is merely an alleged business loss that can be remedied, if necessary, by monetary damages. Importantly, Counts I (Breach of Contract) and II (Tortious Interference) of Plaintiff's Complaint seeks money damages as a compensatory remedy ***for the same purported harm*** Plaintiff relies on to support their Motion. In fact, in the Motion, Plaintiff states: "Plaintiff Joos could be partially compensated with an award of monetary damages for some claims brought against Defendant Halabi…." Motion p. 13.

To the extent any damages exist (which Defendant disputes), Plaintiff's claims are solely based upon quantifiable monetary damages—therefore, Plaintiff fails to establish an

---

[2] Plaintiff refers to a Google Business Profile.

irreparable harm to support his request for injunctive relief. *Jacksonville Elec. Auth. v. Beemik Builders & Constructors, Inc.*, 487 So. 2d 372, 373–74 (Fla. 1st DCA 1986) ("In a contract action, injunctive relief is seldom the appropriate remedy, as money damages are ordinarily available."). Because there is no irreparable harm, money damages are an available and adequate remedy at law. *See Weinstein v. Aisenberg*, 758 So. 2d 705 (Fla. 4th DCA 2000) (denying injunctive relief because money damages is an adequate remedy at law for conversion claims).

In sum, Plaintiff offers no explanation justifying the existence of irreparable harm after waiting more than two years to seek relief, or why the remedy at law already requested in the Complaint is inadequate. The facts demonstrate that Plaintiff' has not established any irreparable harm and the remedy at law is adequate. Therefore, there is no basis for injunctive relief.

**B. There is No Substantial Likelihood that Plaintiff will Succeed on the Merits**

Plaintiff asserts three claims for breach of contract and a veritable kitchen-sink of tortious interference allegations. However, Plaintiff is unlikely to succeed on the merits of any of his claims. First, to succeed on a claim for breach of contract, Plaintiff must prove: "(1) a valid contract; (2) a material breach; and (3) damages." *Sulkin v. All Florida Pain Mgmt., Inc.*, 932 So. 2d 485, 486 (Fla. 4th DCA 2006) (quoting *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003)). Second, to succeed on a claim for tortious interference with a business relationship, Plaintiff must prove "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ozyesilpinar v. Reach PLC*, 365 So. 3d

453, 460 (Fla. 3d DCA 2023) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). Plaintiff cannot establish the likelihood of success on the merits of either a breach of contract or tortious interference claim.

### *1. Plaintiff Cannot Prove Any Breach of the Parties' Contract*

The breaches of the Agreement that Plaintiff bases his Amended Motion on do not exist, and in one case has not even been plead. First, the Agreement entered into between Plaintiff and Defendant provides that Defendant "may use the words 'CPR,' 'Certification,' and the unique city name in a new logo"… and the Defendant's Logo be "different" that the CPR Logo. *See* Compl., Ex. A ¶7. "Different" is defined as "not the same" by the Merriam Webster dictionary. *Parrish v. State Farm Florida Ins. Co.*, 356 So. 3d 771, 776 (Fla. 2023) (using Black's Law Dictionary and Webster's dictionary to define an undefined term). **Defendant's Logo is different (not the same) than the CPR Logo—as required by the Agreement.** As explained by Halabi in a recent deposition:

> A. It's not a violation of the dissolution agreement because it is a different mark than the one Mr. Joos has.
> Q. Different how?
> A. It's different in a multitude of ways.
> Q. Explain that.
> A. Okay. Well, the heart shape is different, the [sinusoidal] wave is different, the heart is lower than his -- on a lower plane than his. A side by side would show that, but I -- we can get into that later. Our -- his [sinusoidal] wave comes out of the center of his "R." In other words, the hole part of the letter, the circular hole, like a donut hole kind of hole part of the "R" and shoots out of the "R" into the heart, and his [sinusoidal] wave is thinner, thinner tracing, and it's way more flailing. In other words, his is more of a sign of a -- closer to a heart attack than -- than ours. His heart is right up against the -- the "R." It makes contact with the "R," where ours is -- our heart is isolated completely away from the "R," from the CPR. It's completely in a different space. And not to mention, like I said, it's lower – lowered -- lower than his. Yep.
> . . .
> A. -- his mark actually in English as we read from top down to left to right he would -- his mark reads, Certification CPR Tampa, while ours reads, CPR Certification Tampa. That's a big differentiation. Our fonts are different.

The excerpts from this deposition are attached as **Exhibit C** (Deposition of Sami Halabi as Corporate Representative in *CPR Certification, LLV vs. CPR, LLC*, Proceeding No. 91276058 pending before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office).

Defendant's Logo uses a different font (London Bridge), different shade of red color (Hex code #FD0100), a different heart logo, different word placement, does not have the heart logo connecting to the "R," uses a different sinusoidal wave symbol, and has "certification" in a different location that the CPR Logo.

Plaintiff's misconceptions about what the Agreement requires are illustrated in his March 17, 2022 demand letter, where Plaintiff confirms that Halabi met his obligations under Paragraph 7 by describing Defendant's Logo as "nearly identical"—*i.e.* "different." *See* Compl., Ex. D (citing to and attaching the demand letter). However, the Agreement, by its plain terms, does not impose any additional requirements on the design of Defendant's Logo. Thus, Defendant's Logo is "different than the one [which was] used by the Company" at the time the Agreement was entered into, as contemplated by the Agreement. *See* Compl., Ex. A ¶ 7. Therefore, there is no breach of Paragraph 7 of the parties' Agreement.

Neither is there a breach of Paragraph 8. Defendant's websites were changed in accordance with the requirements of the Agreement. The CPR Logo being used on Defendant's websites is different, as explained above. Defendant is also using a different "hero picture" and changed the arrangement and location of icons along the navigation bars on the websites' homepage. A comparison of the website homepages is attached as **Exhibit D**. There is thus no breach of Paragraph 8 of the Agreement, either.

Finally, Plaintiff alleges in the Amended Motion—for the first time—a breach of

Paragraph 11 of the Agreement to support his argument for preliminary injunctive relief. Such a breach has not been set forth in any pleading and is not alleged in the Complaint. It is elementary that a plaintiff may only seek relief on grounds that are properly set forth and plead in the complaint. *See Goldschmidt v. Holman*, 571 So. 2d 422 (Fla. 1990) (citing Florida Rule of Civil Procedure 1.110(b)(2)). Florida Rule of Civil Procedure 1.100 and 1.110 highlights that claims are required to be set forth in a "pleading" stating a cause of action and form of requested relief, and that pleadings include only complaints and answers—not "motions." *See* Fla. R. Civ. P. 1.110(b) (rules of pleading), 1.100(a) (definition of "pleadings") and 1.100(b) (definition of "motions"); *City of Delray Beach v. Sherman Williams Am. Legion, Post 188*, 358 So. 3d 440, 443 (Fla. 4th DCA 2023) ("[A] well-pled complaint alleging breach of a written contract must not only attach a copy of the contract *but also make allegations as to which contractual provisions were breached*." (emphasis added)). It follows that Plaintiff cannot seek a preliminary injunction based upon the likelihood of success on the merits of a breach of contract claim that was never pled. Plaintiff's attempt to slide a new breach claim into the Amended Motion, and thereby avoid amendment to his complaint and any challenges on a motion to dismiss, was done in blatant disregard for established rules of procedure. Plaintiff's allegations relating to a breach of Paragraph 11 of the Agreement are thus procedurally flawed, cannot support the entry of a preliminary injunction, and should be stricken from the Amended Motion.

There is therefore no likelihood of success on Plaintiff's breach of contract claim as alleged in the Complaint.

#### 2. *Plaintiff Cannot Prove Intentional Interference with a Protectible Business Relationship*

Plaintiff is just as unlikely to succeed on his claim for tortious interference. Tortious

interference requires both a specific business relationship with a third party, and the defendant's knowledge and intentional interference with that business relationship. *Ozyesilpinar*, 365 So. 3d at 460. To be protectible, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Id.* (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). Further, a plaintiff must prove the defendant "manifested a specific intent to interfere with the business relationship." *Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So. 3d 836, 838 (Fla. 2d DCA 2009).

While not a model of clarity, Plaintiff attempts to assert six specific instances of tortious interference, none of which are sufficient to succeed on the merits on Plaintiff's claim.

First, Plaintiff alleges that Halabi registered one of his companies as being located at the same *Yes Working* office-sharing space as one of Defendant's companies, and that Defendant lost his business listing on Google at that location as a result. Amended Mot. ¶¶20-21. These allegations cannot support a claim for tortious interference because Plaintiff has no cognizable legal or contractual right to the exclusive use of the address at the *Yes Working* ***shared*** office space or to the Google index listing businesses registered at that address. Moreover, there is no claim or evidence that Halabi knew of Defendant's business location or that Halabi knew Google had failed to assign Halabi's business a unique business location listing. Neither is there evidence that Halabi took any action to encourage or intended for Google to do so. Plaintiff's tortious interference claim therefore fails on this basis because there is no valid business relationship between Plaintiff and *Yes Working* or Google to support the claim and, even if one did exist, Halabi could not have known of or intentionally interfered with that relationship.

Second, Plaintiff alleges tortious interference based on his alleged mistaken receipt of

a cease and desist letter from a competitor. Amended Mot. ¶¶24-27. Plaintiff does not allege—because he cannot—that he had a relationship with that competitor creating any sort of legal or contractual rights. Since no business relationship existed, it follows that Halabi could not have known of or intentionally interfered with that relationship, either. Plaintiff's tortious interference claim therefore also fails on this basis.

Third, Plaintiff alleges a potential instructor refused to accept employment with Plaintiff due to the instructor's opinions about the availability of online CPR certifications through Halabi's business. Amended Mot. ¶28. This relationship also fails to form the basis of a tortious interference claim because Plaintiff does not identify who the instructor is, there is no allegation or evidence that Halabi knew the instructor or of this prospective business relationship of Plaintiff's (of course, he could not), or that Halabi took any action to intentionally interfere with that specific person's decision about employment with Plaintiff.

Fourth, Plaintiff makes a bare allegation that Halabi posted photos to a "Chesapeake" Google business location page and assumed at various times the title "CPR Director." Amended Mot. ¶30. Plaintiff, however, was not operating a business at the referenced Chesapeake location at the time the email in Exhibit E was sent. Again, Plaintiff cannot establish any business relationship or connection to that location, or any legal or contractual right to the exclusive use of that Google location index listing to support a tortious interference claim. *Realauction.com, LLC v. Grant St. Group, Inc.*, 82 So. 3d 1056, 1060 (Fla. 4th Dist. App. 2011) ("The law is clear that to sustain a tortious interference claim, '[t]here must be a relationship in existence at the time of any alleged interference.'"). Neither is there any allegation or proof of how the title "CPR Director" has any bearing at all on an identified business relationship of Plaintiff's. These allegations also fail to show or prove any actionable

tortious interference.

Fifth, Plaintiff alleges Halabi interfered with some unidentified business relationship by one of Halabi's entities filing a Notice of Opposition to Plaintiff's trademark application. Amended Mot. ¶¶31-32. As a threshold matter, a claim based on action taken by a business entity must be asserted against that entity—not one of its members personally. Fla. Stat. § 605.0304 (limited liability members are not liable for the debts and liabilities of the company); *Houri v. Boaziz*, 196 So. 3d 383, 391 (Fla. 3d DCA 2016) ("simply acting on behalf of a corporation or owning most or all of its shares does not subject a corporate representative or shareholder to individual liability"). In any case, neither can a tortious interference claim be based on a party's legal actions taken to enforce its rights. A decision on Plaintiff's trademark application remains pending and Halabi has a legal right to oppose Plaintiff's position. Plaintiff's allegations here also fail support a valid tortious interference claim.

Sixth, Plaintiff claims tortious interference based on alleged statements Halabi made to Halabi's own employees.[3] Amended Mot. ¶¶35 and 44. Plaintiff simply cannot point to any cognizable business relationship between himself and the employees of another business such that these allegations could support a tortious interference claim. Plaintiff therefore will fail on his tortious interference claim on this basis, as well.

In addition to these specific instances, Plaintiff also attempts to base his tortious interference claim on allegations of interference with unidentified and generalized relationships with the public at large. *See* Amended Mot. ¶¶22-23 (alleging general

[3] Halabi disputes these allegations, which are hearsay statements made by a disgruntled former employee. Again, such allegations were not raised in the Complaint, are asserted as a basis for the requested injunction for the first time in the Amended Motion, and cannot form the basis of a preliminary injunction. *See* pp. 11-12, *supra*.

interference with "potential and actual consumers, clients, and business partners"), ¶32 (generally alleging the existence of "advantageous business relationships), ¶47 (alleging Halabi had knowledge merely of Plaintiff's "long-developed goodwill" and "business relationships" in general). However, such claims are not recognized as a valid basis for a tortious interference claim. *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996) ("[I]n order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers."); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812 (Fla. 1994) ("In Florida . . . no cause of action exists for tortious interference with a business's relationship to the community at large."); *Ozyesilpinar*, 365 So. 3d at 461 ("The Appellant's contention that the publications harmed her rental business has no traction, as the tort of interference is not met by communications to the public at large."); *Realauction.com, LLC*, 82 So. 3d at 1059 ("The requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship.").

Therefore, Plaintiff is unlikely to succeed on his claims for tortious interference and Plaintiff cannot meet his burden on the element of likelihood of success in support of his request for a preliminary injunction.

### C. The Public Interest Weighs Heavily Against Injunctive Relief

Defendant's company provides amongst other things, lessons and certifications for CPR and other first aid relief. Defendant's company has taught tens of thousands of people how to conduct life-saving techniques since the Agreement has been in place. During Plaintiff's unreasonable delay in seeking injunctive relief, Halabi and his company have been providing courses for individuals to become certified in life-saving techniques, including

during the COVID-19 pandemic when certifying frontline workers was critical and in high demand. Contrary to the public's best interest, Plaintiff is attempting to promote his own financial interests above any of the public's best interests and welfare in learning life-saving techniques.

Therefore, the public interest weighs against restraining Defendant from using his own logo, conducting his own business, and continuing to defend against Plaintiff's illegitimate attempt at a Trademark Registration.

**D. Bond**

There is no basis for injunctive relief against Defendant. Defendant invested, and is investing, a significant amount of capital into the operations of his company to maintain a business. Damages to Halabi and his company for entry of a wrongful injunction would be substantial and would include damages to the extent of lost value in operations, lost profits, and other actual, special, incidental and consequential damages. Accordingly, in the unlikely event of injunctive relief, the bond requirement pursuant to Fla. R. Civ. P. 1.610 should be in the amount of such potential damages for wrongful injunction as proven to the Court after a properly noticed evidentiary hearing.

**III. <u>Plaintiff Improperly Seeks an Injunction for Protection Based on New Disparagement Allegations</u>**

In addition to making new disparagement allegations that Plaintiff should be required to assert in an amended complaint, Plaintiff also seeks unjustified new relief in the form of an injunction for protection against Halabi. Amended Mot., p. 22 ¶¶7-9. Plaintiff seeks an injunction for protection against Halabi personally based on his allegations that Halabi breached the disparagement clause of the parties' Agreement in conversations with Halabi's

own employees. Amended Mot. ¶¶37. This new form of relief requested by Plaintiff is entirely improper both procedurally and substantively and should be stricken.

Relief in the form of an injunction for protection is required to be filed via a sworn petition. *See* Fla. Stat. § 784.046(2). None of the allegations Plaintiff has asserted in support of an injunction for protection in this action are sworn statements. The Amended Motion is not sworn to or verified. Nor does Plaintiff make any mention in his affidavit in support of his initial motion of the alleged threats or Plaintiff's purported fear for his and his family's safety. The only sworn statements Plaintiff points to are double-hearsay statements made by a former disgruntled employee of Halabi's. The lack of sworn statements is fatal to Plaintiff's request and it should be stricken accordingly.

The reason Plaintiff refused to make these inflammatory allegations in a sworn statement is because there is absolutely no legal or and factual basis to support a genuine petition for a protective injunction in this case. Although Plaintiff does not even attempt to allege the statutory basis for such an injunction,[4] the only statutory basis hypothetically available is an injunction against repeat violence. That form of injunction, however, requires sworn allegations of at least two instances of violence, "one of which must have been within 6 months of the filing of the petition." Fla. Stat. § 784.046(1)(b); *McCord v. Cassady ex rel. Cassady*, 138 So. 3d 1135, 1136 (Fla. 1st DCA 2014) ("To be granted an injunction for protection against repeat violence, a petitioner must show that he or she has actually been the victim of repeat violence."). Plaintiff's allegations fail to assert that any instance of violence occurred—much less within the last six months. Nor could he, as the only allegations in the

[4] There are four statutory basis for entry of an injunction for protection: repeat violence, dating violence, sexual violence and stalking or cyberstalking. Fla. Stat. §§ 784.046(2) and 784.0485(1) .

Amended Motion of supposed violence, as mentioned by a non-party former employee, must have occurred almost a year ago or more, before that former employee separated from the company in January/February 2023. *See Id.* (reversing protective injunction where no acts of violence occurred in last six months). Moreover, the alleged violence must have been directed at Plaintiff—not towards general third parties as alleged here. *Singletary v. Greever*, 62 So. 3d 700, 702 (Fla. 2d DCA 2011) (refusing to issue injunction where respondent had no contact with petitioner and never made any threats directly to petitioner). Finally, there is no basis for Plaintiff to assert that he has any genuine fear of imminent harm based on statements made to a third party over a year ago. *Id.*; *Santiago v. Towle,* 917 So.2d 909, 911 (Fla. 5th DCA 2005) (holding that defendant's statement to third party that he "had a gun and was not afraid to use it" did not constitute an incident of violence because there was no "overt act indicating an ability to carry out the threat or justifying a belief that violence was imminent"); *Johnson v. Brooks,* 567 So.2d 34, 35 (Fla. 1st DCA 1990) (holding that telephonic threats did not constitute incidents of violence because there was no evidence defendant did any act to create a fear of imminent violence). Plaintiff's attempt to seek a personal injunction against Halabi is therefore both procedurally and factually flawed and should accordingly be stricken and disregarded by the Court as an attempt to harass Halabi during this business dispute.

**IV. <u>Plaintiff Failed to Confer in Good Faith Before Filing the Amended Motion</u>**

This case was transferred to business court on September 12, 2023. Local Rule 3.7 requires that the moving party confer in good faith before filing any motion—including a motion for preliminary injunctive relief. Plaintiff filed the Amended Motion making new allegations and seeking new forms of relief all absent any conferral with counsel for

Defendant. The Amended Motion should therefore be denied on the additional basis of being filed in in violation of the Local Rules.

## CONCLUSION

For these reasons, Plaintiff is not entitled to a temporary injunction against Defendant Halabi in this matter and his Motion should be denied.

Dated: November 13, 2023.

**GUNSTER, YOAKLEY & STEWART, P.A.**

By: */s/Daniel P. Dietrich*
John A. Schifino, Esq.
Florida Bar Number 072321
Daniel P. Dietrich
Florida Bar Number 934461
Justin P. Bennett, Esq.
Florida Bar Number 112833
Melanie Senosiain, Esq.
Florida Bar Number 1021343
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
Fax: (813) 314-6914
Primary E-Mail: jschifino@gunster.com
jbennett@gunster.com
msenosiain@gunster.com
Secondary E-Mail: cwarder@gunster.com
asnaggs@gunster.com

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed and served upon all Parties via the e-Portal on this 13th day of November 2023.

*/s/Daniel P. Dietrich*

## VERIFICATION

Pursuant to Florida Statutes § 92.525, I declare under penalty of perjury that I have read the foregoing Response and that the facts stated in it are true.

Executed on November 13, 2023.

Sami Halabi

# EXHIBIT “A”

**From:** Wood, Thomas M.
**To:** John A. Schifino - Gunster (jschifino@gunster.com)
**Subject:** RE: E cards Reclaimed
**Date:** Wednesday, February 24, 2021 7:56:03 AM
**Attachments:** image001.png
image002.png
**Importance:** High

---

John:

Let's talk this morning when you have a few minutes. This seems a little petty and inappropriate on Sami's part. These E-Cards were company property and already issued to instructors at various sites, some Doug's and some Sami's. Just because Sami had the ability to withdraw them because he was the issuer for the Company doesn't mean they were his cards to revoke from Doug's instructors after they had already been issued.

Also, Doug thinks that there is a legitimate legal question of whether Sami's new logo is sufficiently different from the Company logo that Doug was awarded under the Dissolution Agreement.

Sami's not-so "new" logo:

Doug's (formerly the Company) logo:

Let's plan to discuss this as well.

Tom

---

**From:** Doug J. <strat505@gmail.com>
**Sent:** Tuesday, February 23, 2021 9:16 PM
**To:** CPR Director <cprdirector2@gmail.com>
**Cc:** Wood, Thomas M. <twood@shumaker.com>; jschifino@gunster.com
**Subject:** E cards Reclaimed

Did you reclaim the balance of the AHA ecards for the instructors associated with me? They all seem to think they had several ecards and now they all have 0.. That is a significant amount of money worth of AHA E cards that I paid for half of as part of the company.

I spoke with Hector. .he says he had mid 30s worth of cards and now has 0 after the 22nd

each card has value of $4.50... if each instructor lost 30 cards thats 300 cards or $1350

Please determine how many cards were reclaimed from them and what the total damage is for this.

**Thomas M. Wood** | **Shumaker**
Attorney at Law
Bank of America Plaza, Suite 2800
101 East Kennedy Boulevard | Tampa, FL 33602
Direct 813.227.2271 |Fax 813.229.1660
twood@shumaker.com | bio | LinkedIn

---

Confidentiality Statement: This electronic message contains information from the law firm of Shumaker, Loop & Kendrick, LLP, and may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify the sender immediately by reply e-mail or telephone 800.444.6659.

# EXHIBIT “B”

Four Rivers Law Firm

400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
www.fourriverslaw.com
people@fourriverslaw.com
Tel. (813) 773-5105; Fax. (813) 773-5103

March 17, 2022

**SERVED BY ELECTRONIC MAIL:**

Gunster Law Firm
c/o John A. Schifino, Esq.
jschifino@gunster.com

Sami Halabi
samdesignatedemail@gmail.com

**WRITTEN NOTICE**

Dear Mr. Halabi and Mr. Schifino:

The Four Rivers Law Firm has been retained by Mr. Doug Joos to represent his interests with regard to the operation of his CPR certification businesses. This letter shall serve as a notice and cease and desist letter with regards to the operation of your CPR certification business, CPR Certification, LLC, pursuant to that certain Dissolution Agreement dated February 8, 2021 (the "Agreement"). Unfortunately, your conduct has breached the terms of the Agreement. Further, you have interfered with Mr. Joos' business relationships by flagging Mr. Joos' Google profile listings. Finally, you are currently infringing on Mr. Joos' trademark and copyright rights as it relates to his CPR certification business and logos. Pursuant to Section 12 of the Agreement, you will have fifteen (15) days to cure the breaches identified below. In addition, this letter shall serve as notice to cease and desist all infringements of Mr. Joos' trademark and copyright. If you do not comply with the demands in this letter and cure all breaches of the Agreement within the fifteen (15) days allowed, our client is well-postured to pursue all available claims against you and your business.

I. **You are in breach of the Agreement.**

Section 7 of the Agreement explicitly provided that you did not own the logo and could not incorporate the logo into any design used on websites or business documents and materials. Moreover, you were granted only fourteen (14) days from the signing of the Agreement to utilize any existing printed material that may have contained the logo or design now exclusively owned by Mr. Joos. Section 8 of the Agreement required you to change (1) the logo on your websites; (2) the hero picture on your websites; and (3) the icons on your websites, all so that a reasonable person viewing your websites would not be confused with the ones operated by Fit. Finally, you represented and warranted in Section 10 of the Agreement that you "ha[d] not … taken, and will hereafter take no action to alter and/or modify any or all of the Distributed Websites in any regard or in any manner that is intended to adversely affect the other Member's business."

However, you have failed to abide by these terms and representations. The logo you have utilized in your websites is essentially identical to the logo used by Mr. Joos, which is his exclusive property. As an example, compare the logos used by Mr. Joos and you in Pittsburgh:




*Figure 1 - Mr. Joos' Logo for CPR Pittsburgh*




*Figure 2 - Your Logo for CPR Pittsburgh*

Other than the location of the word "Certification," the logo you are utilizing is essentially identical to Mr. Joos' logo, which he has full and exclusive rights to. This same impermissible use of Mr. Joos' logo is also seen in the Chicago, Milwaukee, and Louisville designs. You were obligated to change the appearance of the logo so that a reasonable person would not be confused but have failed to do so. Therefore, you are in violation of Section 7 of the Agreement. Further, a reasonable person viewing your websites would be confused that they are operated by the same company as the ones operated by Mr. Joos. Thus, you are also in violation of Section 8 of the Agreement.

This letter serves as the written notice required under Section 12 of the Agreement. You will have fifteen (15) days from receipt of this letter to remedy the breaches of Sections 7 and 8 as described above. Please note that Section 23 entitles Mr. Joos to recover reasonable attorneys' fees, court costs, sales and use taxes, and all expenses incurred in enforcing the terms of the Agreement.

## II. Your use of Mr. Joos' intellectual property constitutes copyright infringement.

It has come to our attention that you are responsible for infringement of certain copyrights that are owned and controlled by Mr. Joos. Mr. Joos therefore demands that you immediately cease such infringing activity, desist from infringing activity in the future, and comply with Mr. Joos' other requirements set forth in this letter, including, pursuant to 17 U.S.C. § 504, a payment of $30,000.00 in statutory damages. If these demands are not complied with, Mr. Joos intends to seek statutory damages for willful infringement under Section 504 for an amount up to $150,000.00, to be determined by the United States District Court for the Middle District of Florida.

Mr. Joos is the author of each of his logos and websites, including CPR Certification Tampa and therefore has exclusive rights under U.S. copyright law in these works. Through the use of identically organized websites and an identical logo, you have reproduced and publicly displayed copies of Mr. Joos' works. There is no question that these websites are direct reproductions and displays of the copyright-protected works of Mr. Joos, and that you had access to Mr. Joos' works during your time as a member of the company formerly known as "Fit Industries, LLC."

Furthermore, Mr. Joos has not authorized you to reproduce, publish, provide, distribute, transmit, display , or otherwise make use of any such works. Indeed, the Agreement makes clear that you did not retain and are not entitled to use any of the logos, the rights of which were retained exclusively by Mr. Joos. Therefore, your use of these works is a clear infringment of Mr. Joos' copyrights in violation of Sections 106 and 501 of the Copyright Act.

Moreover, the extent of identical copying from Mr. Joos' works plainly establishes that the infringements so far have been knowing and intentional. As the author and creator of the websites and logos above, Mr. Joos retains copyrights in such works under Section 201 of the Copyright Act. You may be liable for statutory damages up to $150,000.00 for each work that has been willfully infringed, in addition to attorneys' fees and other costs incurred by Mr. Joos to enforce his rights. It is also within Mr. Joos' rights to seek injunctive relief to stop your infringing activity and claim actual damages, including any potential lost profits to Mr. Joos and an accounting of your company's profits from such infringement.

Mr. Joos treats copyright infringement as a very serious matter and is prepared to fully enforce his rights against infringers. However, under the circumstances, Mr. Joos is prepared to try and resolve this matter amicably provided that you and your CPR certification businesses cooperate fully with Mr. Joos and establish to his satisfaction that these infringements were the result of poor judgment and not a systematic effort to profit from Mr. Joos' intellectual property.

We therefore demand that you:

1. Immediately cease and desist from all further reproduction, display, or publication of materials that infringe Mr. Joos' works;

2. Destroy all such materials in your or your company's inventory or otherwise in your combined possession or control, including all copies in electronic or printed form;

3. Take down any website or physical or electronic materials which infringe upon Mr. Joos' works, or edit out the portions of such websites or materials that infringe upon Mr. Joos' works to an extent satisfactory to Mr. Joos;

4. Pay Mr. Joos statutory damages in the amount of $30,000.00 in accordance with Section 504 of the Copyright Act.

You are specifically advised that any failure or delay in complying with these demands will likely compound in damages for which you may be liable.

We ask that you or your counsel provide Mr. Joos with written confirmation that you will comply with these demands. If we do not receive a satisfactory response by the close of business within fifteen (15) days of receipt of this letter, Mr. Joos is prepared to take all steps necessary to protect his valuable intellectual property rights, without further notice provided to you.

## III. Your use of Mr. Joos' intellectual property constitutes common law trademark infringement.

In addition to the copyright protection afforded to Mr. Joos, the logo for CPR Certification is protected by trademark. Mr. Joos was granted exclusive rights to use the logo for his CPR Certification websites, and you knowingly surrendered any such rights under Section 7 of the Agreement. Therefore, Mr. Joos is the owner of common law trademark rights to this logo. Nonetheless, we are aware that you are continuing to use a nearly identical logo to the one owned exclusively by Mr. Joos, in addition to identical text, in attempting to advertise your CPR certification businesses (*see, e.g.,* the comparison provided in Section 1 *supra*, of this letter). Your use of Mr. Joos' trademarked logo is likely to cause consumer confusion as to the source and ownership of any CPR certification courses between you and Mr. Joos. In addition, you agreed to make changes to your logos so that a reasonable consumer would not be confused between your logo and Mr. Joos' logo, which you have failed to do. Therefore, your use of Mr. Joos' trademark constitutes trademark infringement.

We therefore demand that you and your company cease all use of the infringing logos on any content, platform, and advertising or promotional products associated with your company. We hereby request that you provide us with written assurance that you and your company will cease using the infringing trademark and any other trademark and/or logo that is likely to cause confusion with any of Mr. Joos' business entities. Please provide these written materials to us no later than fifteen (15) days from receipt of this letter. We will refrain from filing a complaint in order to give you an opportunity to resolve this matter. If we are unable to resolve this matter, we are prepared to proceed with filing and formal service of a complaint in order to commence litigation. Mr. Joos will seek all available remedies, including but not limited to injunctive relief and monetary relief such as your company's profits, damages suffered by Mr. Joos' entities, and attorneys' fees.

## IV. You have tortiously interfered with Mr. Joos' business relationships.

We have discovered that you have tortiously interfered with Mr. Joos' contractual and advantageous business relationships. Mr. Joos leased co-working office space in Louisville, Kentucky. Mr. Joos also maintained a paid Google profile for his Louisville business, CPR Certification Louisville. You, or one of your representatives, contacted the co-working office and attempted to sign up with the same CPR Certification Louisville name and Baxter Avenue address. You then went on Google and flagged Mr. Joos' Google profile as a duplicate. Currently, there are two business with the name "CPR Certification Louisville" on Google, causing confusion between potential customers and diverting customers or potential customers of Mr. Joos.

Because you have purposefully diverted customers or potential customers of Mr. Joos' CPR Certification Louisville, you have misappropriated revenue and potential profits rightfully belonging to Mr. Joos and his entity CPR Certification Louisville. Accordingly, Mr. Joos is entitled to any such revenues and profits, and demands payment thereof. If you do not immediately pay over to Mr. Joos all of its misappropriated revenues and profits, we will immediately seek a court

order enjoining you, your entities, and any other individuals or entities participating or assisting in your illegal activities from continuing to do so. We will also seek an order requiring you to pay all of Mr. Joos' attorney's fees and costs.

You must acknowledge promptly, no later than the close of business within fifteen (15) days of receipt of this letter, that you understand these terms, and that you will cease tortiously interfering with Mr. Joos' business enterprises. If you do not affirm your agreement to these terms, or do not provide payment of all illegally-obtained revenues and profits within fifteen (15) days of receipt of this letter, we will file a lawsuit seeking compensatory damages and injunctive relief due to your misconduct.

Please govern yourselves accordingly.

Sincerely,

/s/ Joseph F. Southron

Joseph F. Southron
Partner, Four Rivers Law Firm
Email: joe@fourriverslaw.com
400 N Ashley Dr., Suite 1720
Tampa, FL 33602
Attorney for Doug Joos

cc: Doug Joos

# EXHIBIT “C”

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the matter of Application Serial No. 97/016,512
Published: March 08, 2022

CPR Certification, LLC,

Opposer,

Proceeding No. 91276058

vs.

CPR, LLC,,

Applicant.

______________________________/

REMOTE
DEPOSITION OF: **SAMI HALABI, AS COPORATE REP.**

DATE: WEDNESDAY, OCTOBER 18, 2023

TIME: 1:07 P.M. - 2:42 P.M.

PLACE: ALL PARTIES APPEARING VIA ZOOM VIDEOCONFERENCE

STENOGRAPHICALLY REPORTED BY: BRITTANY O'NEILL VALLADAREZ
Shorthand Reporter
Notary Public
State of Florida at Large

Pages 1 - 50

APPEARANCES: (via Zoom)

BRITTANY J. MAXEY-FISHER, ESQUIRE
OF: MAXEY-FISHER, PLLC
100 2ND AVENUE S
SUITE 401N
ST. PETERSBURG, FLORIDA 33701
(727) 230-4949, FAX (727) 230-4827
bmaxeyfisher@maxeyfisher.com
APPEARING ON BEHALF OF THE PLAINTIFF

JOSEPH F. SOUTHRON, ESQUIRE
OF: FOUR RIVERS LAW FIRM
400 NORTH ASHLEY DRIVE
SUITE 1720
TAMPA, FLORIDA 33602
(813) 773-5105, FAX (813) 773-5103
joe@fourriverslaw.com
APPEARING ON BEHALF OF THE DEFENDANT

the drawing. That's it right there.
A. That appears to be it.
Q. Okay. Don't you think this is a violation of the dissolution agreement?
A. No, sir.
Q. Why not?
A. It's not a violation of the dissolution agreement because it is a different mark than the one Mr. Joos has.
Q. Different how?
A. It's different in a multitude of ways.
Q. Explain that.
A. Okay. Well, the heart shape is different, the sinus -- sinus vital wave is different, the heart is lower than his -- on a lower plane than his. A side by side would show that, but I -- we can get into that later. Our -- his sinus vital wave comes out of the center of his "R." In other words, the hole part of the letter, the circular hole, like a donut hole kind of hole part of the "R" and shoots out of the "R" into the heart, and his sinus vital wave is thinner, thinner tracing, and it's way more flailing. In other words, his is more of a sign of a -- closer to a heart attack than -- than ours. His heart is right up against the -- the "R." It makes contact with the "R," where ours is

-- our heart is isolated completely away from the "R," from the CPR. It's completely in a different space. And not to mention, like I said, it's lower -- lowered -- lower than his. Yep.

Q. Okay. Well --

A. Another big difference is his reads --

Q. Just hold on. Hold on.

A. -- certification --

Q. Hold on. I'm showing now on the screen what I think are his and your marks for Tampa. Do you agree?

A. Yeah. I wasn't done giving the differences.

Q. I know. I'm going to let you continue. I just wanted to pull his up alongside, so go ahead and continue describing those --

A. Okay. His --

Q. -- differences.

A. -- his mark actually in English as we read from top down to left to right he would -- his mark reads, Certification CPR Tampa, while ours reads, CPR Certification Tampa. That's a big differentiation. Our fonts are different.

Q. Well, I'm just talking about the heart, which is what you've filed for trademark protection under. Because you agree that if your trademark application is granted you're going to be able to stop other people

# CERTIFICATE OF OATH

STATE OF FLORIDA :
COUNTY OF HILLSBOROUGH :

I, BRITTANY O'NEILL VALLADAREZ, Notary Public, State of Florida, do hereby certify that SAMI HALABI personally appeared before me, via Zoom, on OCTOBER 18, 2023, and was duly sworn and produced a Florida driver's license as identification.

Signed this 24th day of OCTOBER 2023.

/s/ Brittany O'Neill Valladarez
BRITTANY O'NEILL VALLADAREZ
Notary Public, State of Florida
My Commission No.: GG986657
Expires: 07/06/2024

Notary Public State of Florida
Brittany O'Neill Valladarez
My Commission GG 986657
Expires 07/06/2024

CERTIFICATE OF REPORTER

STATE OF FLORIDA :
COUNTY OF HILLSBOROUGH :

I, BRITTANY O'NEILL VALLADAREZ, Notary Public, State of Florida, certify that I was authorized to and did stenographically report the deposition of SAMI HALABI; that a review of the transcript was requested; and that the foregoing transcript, pages 4 through 46, is a true and accurate record of my stenographic notes.

I further certify that I am not a relative, employee, or attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

DATED this 24th day of OCTOBER 2023.

/s/ Brittany O'Neill Valladarez
BRITTANY O'NEILL VALLADAREZ
Shorthand Reporter

# EXHIBIT "D"

# Plaintiff's Inherited Website



# Defendant's Website

(407) 456-8788

CPR ORLANDO

CPR Classes | CPR + First Aid Classes | Companies/Groups | Contact Us

## Get CPR Certified with CPR Certification Orlando

CPR Certification Orlando provides the best Orlando BLS CPR Certification from an American Heart Association Certified Training Site. Book an AHA BLS CPR class today.

CPR Classes →

CPR + First Aid Classes →



**Same Day**
CPR Certification Card

**50,000+**
Students Trained

## Top Rated American Heart Association AHA BLS CPR Classes in Orlando, FL

CPR Certification Orlando offers CPR classes to certify and renew certifications at our office in Orlando every week and also offers come to your location services for large parties in Orange County, Longwood, Casselberry, Altamonte Springs, Maitland, Winter Park, Apopka, Ocoee, Doctor Phillips, Celebration, Orlando, Alafaya, Deltona, Kissimmee, Sanford, Winter Garden, Four Corners and Oviedo. CPR Certification Orlando supplies you with the best education experience you need to help save a life. Whether your goal is to be equipped for your job or you're simply looking out for friends and neighbors, we offer American Heart Association certified courses with Basic Life Support (BLS), Healthcare Provider CPR (Cardiopulmonary Resuscitation) and Automated External Defibrillator use (AED). With our team, you will enjoy the best CPR and First Aid education experience at a reasonable rate.

**Excellent**
★★★★★
Based on 2662 reviews
Google

**Zaleski Hernandez**
★★★★★
Very clear

**Brittany Ramdass**
★★★★★
This was my second time taking his course! The instructor does a great job at explaining everything

**Karly Evans**
★★★★★
This was a great experience, the instructor provided a great learning environment. I felt able to learn and not pressured at all. He really made sure ...
Read more

**Select a Location**

5401 S Kirkman Rd #310, Orlando, FL 32819

September 2023

Mon | Tue | Wed | Thu | Fri | Sat | Sun

## BLS CPR & AED Classes

**$59.95**

**AMERICAN HEART ASSOCIATION AHA BLS CPR AND AED CERTIFICATION**

CPR Certification Orlando is the place to go when you need an American Heart Association CPR class. Our team has taught over 100,000+ people across the nation