# EXHIBIT 7

Opposer's Reply Brief (TTAB Aug. 20, 2024)

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA1378538** |
| Filing date: | **08/20/2024** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding no. | 91276058 |
| Party | Plaintiff<br>CPR Certification LLC |
| Correspondence address | BRITTANY J. MAXEY-FISHER<br>MAXEY-FISHER, PLLC<br>7650 COURTNEY CAMPBELL CAUSEWAY<br>SUITE 1100<br>TAMPA, FL 33607<br>UNITED STATES<br>Primary email: ttab@maxeyfisher.com<br>Secondary email(s): laura@ucpra.org, rich@ucpra.org, JSchifino@gunster.com, bmaxeyfisher@maxeyfisher.com, director@ucpra.org, hkebler@maxeyfisher.com<br>727-230-4949 |
| Submission | Rebuttal Brief |
| Filer's name | Brittany J. Maxey-Fisher |
| Filer's email | bmaxeyfisher@maxeyfisher.com, ttab@maxeyfisher.com, hkebler@maxeyfisher.com |
| Signature | /Brittany J. Maxey-Fisher/ |
| Date | 08/20/2024 |
| Attachments | 20240820_857002_Opposers_Reply_Brief_MF.pdf(693950 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

In the matter of Application Serial No. 97/016,512
Published: March 08, 2022

| | |
|---|---|
| CPR Certification, LLC,<br>Opposer,<br><br>v.<br><br>CPR, LLC,<br><br>Applicant. | Proceeding No. 91276058 |

**OPPOSER'S REPLY BRIEF**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 5

II. ARGUMENT ..... 7

a. Ownership Rights in Applicant's Mark are Separate and Distinct from Applicant's Right to Lawfully Use Applicant's Mark on the Filing Date of Applicant's Application Due to Restrictions in the Dissolution Agreement. ..... 7

b. Applicant is Not Entitled to Unrestricted Registration Because the Dissolution Agreement Prohibits Certain Uses of Applicant's Mark. ..... 8

i. Restrictions on Certain Competitive Activities Geographically Necessarily Limits Applicant's Use of Applicant's Mark. ..... 11

ii. Applicant Is Not Entitled to an Unrestricted Registration Despite No Express Provision Prohibiting the Filing of Applicant's Application. ..... 12

c. Goodwill was Not Transferred under Section 7, and Applicant cannot Rely on Use by Fit Industries to Support Entitlement to an Unrestricted Registration. ..... 12

d. Public Policy Dictates an Amendment to Applicant's Application is Improper and Registration Should be Denied. ..... 15

i. Applicant Cannot Rely on Applicant's Unrestricted Services to Support Entitlement to an Unrestricted Registration as Applicant's Unrestricted Services Were Not in Use Any Time Prior to Filing and Any Amendment Renders Applicant's Application Void Ab Initio. ..... 16

1. Use, and Thus Nonuse, of Applicant's Unrestricted Services is Relevant to Opposer's Ground for Opposition and is Not a New Claim. ..... 18

2. Applicant Overlooks Its Own Statements of Nonuse and Faults Opposer for Not Proving a Negative. ..... 19

ii. Public Policy Encourages the Board to Avoid Setting a Dangerous Precedent and Sustain the Opposition to Deny Applicant Registration of Applicant's Mark. ..... 21

e. Opposer Is Not Estopped from Bringing This Opposition Due to Breach of Contract Disputes. ..... 21

i. Claims of Breach of Contract are Outside the Jurisdiction of the Board. ..... 21

ii. Opposer Is Not Alleging Enforcement or Breach of the Dissolution Agreement, and Thus a Notice and Cure Obligation Is Irrelevant. ..... 22

III. CONCLUSION ..... 23

CERTIFICATE OF SERVICE ..... 25

APPENDIX I ..... 26

**TABLE OF AUTHORITIES**

**Cases**

*Aycock Eng'g, Inc. v. Airflite, Inc.*, 90 USPQ2d 1301 (Fed. Cir. 2009) .......... 8

*B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138 (2015) .......... 7

*Bionetics Corp. v. Litton Bionetics, Inc.*, 218 USPQ 327 (TTAB 1983) .......... 16

*Cavalier Rescue of Ala., Inc. v. Meager*, 2024 TTAB LEXIS 28 (TTAB 2024) .......... 9, 20

*E.I. du Pont de Nemours and Co. v. G.C. Murphy Co.*, 199 USPQ 807 (TTAB 1987) .......... 8, 20

*Food Global Innovation GP LLC v. Tuong Nguyen*, 2019 TTAB LEXIS 253 (TTAB July 5, 2019) .......... 19

*Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333 (Fed. Cir. 2023) .......... 7

*Marshak v. Green*, 223 USPQ 1099 (2d Cir. 1984) .......... 15

*McDermott v. San Francisco Women's Motorcycle Contingent*, 81 USPQ2d 1212 (TTAB 2006), *aff'd unpub'd*, 240 Fed. Appx. 865 (Fed. Cir. 2007), *cert. denied*, 552 U.S. 1109 (2008) .......... 22

*Selva & Sons, Inc. v. Nina Footwear, Inc.*, 217 USPQ 641 (Fed. Cir. 1983) .......... 22

*Vaughn Russell Candy Co. v. Cookies in Bloom, Inc.*, 47 USPQ2d 1635 (TTAB 1998) .......... 12, 22

*Visa, U.S.A., Inc. v. Birmingham Tr. Nat'l Bank*, 216 USPQ 649 (Fed. Cir. 1982) .......... 14, 15

*Weiner King, Inc. v. Wiener King Corp.*, 204 USPQ 820 (C.C.P.A. 1980) .......... 23

**Statutes**

15 U.S.C. § 1051(a)(3) .......... 9

15 U.S.C. § 1051(a)(3)(D) .......... 10

15 U.S.C. § 1057(b) .......... 7

15 U.S.C. § 1127 .......... 9

37 C.F.R. § 2.122(b)(2) .......... 21

37 C.F.R. § 2.133(b) .......... 16

37 C.F.R. § 2.133(c) .......... 16

**Rules**

TBMP § 1102.01 ........ 10

TBMP § 704.04 ........ 21

TMEP § 804.02 ........ 9

TMEP § 806.01(a) ........ 9

TMEP § 819 ........ 9

TMEP § 819.01 ........ 9

TMEP § 819.01(f)(i) ........ 20

TMEP § 901 ........ 9

TMEP § 901.04 ........ 20

**Treatises**

2 J. McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:82 (5th Ed. 2022) ........ 8

2 J. T. McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:82 (4th Ed. 1997) ........ 7

## I. INTRODUCTION

Opposer CPR Certification, LLC ("Opposer") submits this Reply Brief in further support of Opposer's Main Brief. The Board clearly and correctly identifies the issue in this proceeding ("Opposition"). (11 TTABVUE 12). Applicant CPR, LLC ("Applicant"; collectively "the Parties") conflates ownership rights with the right to lawfully use Applicant's Mark as limited by the Dissolution Agreement dated February 08, 2021 ("Dissolution Agreement"). Applicant misses the heart of the issue by focusing on ownership in used-based Trademark Application Serial Number 97/016,512 ("Applicant's Application") for the applied-for mark, ("Applicant's Mark"). Opposer agrees the Dissolution Agreement was an agreement including a transfer, but the Parties disagree as to the extent of the rights transferred. The Dissolution Agreement only transferred ownership of the artwork (the logo separate from the goodwill) in Applicant's Mark to Mr. Douglas Joos ("Joos"). Opposer alleges the agreed-to rights and obligations under the Dissolution Agreement are inconsistent with the rights applied-for at the time of filing Applicant's Application.

Opposer's Main Brief details the geographic and temporal limitations the Dissolution Agreement placed on the Parties' business activities. Geographically, Applicant could not use Applicant's Mark in eleven (11) of twenty-two (22) U.S. territories ("Restricted Territories") designated to Mr. Sami Halabi ("Halabi") for certain services outlined in the Dissolution Agreement. (19 TTABVUE 2, 125, 134, ONOR ¶ A, Ex. A, § 5, Schedule 3). Temporally, Applicant was restricted from using Applicant's Mark from February 08, 2021, to February 08, 2022 ("Restricted Period"). (19 TTABVUE 2, 125, ONOR ¶ A, Ex. A, §§ 5 and 6).

At issue here are Applicant's services identified in Applicant's Application and the rights and limitations set forth in the Dissolution Agreement. Applicant's services identified in Applicant's Application which ***are not subject to*** the geographical limitations of the Restricted Period are: conducting online CPR training and more expansive programs with CPR training as a mere component such as

Certified Nursing Assistant (CNA), Emergency Medical Technician (EMT), or Phlebotomy ("Applicant's Unrestricted Services"). (19 TTABVUE 2-3, 125-126, ONOR ¶ A, Ex. A at § 5; 26 TTABVUE 31, Joos Decl. ¶ 35). Applicant's services identified in Applicant's Application which ***are subject to*** the geographical limitations of the Restricted Period are: live and hybrid educational services in the field of CPR, and live, hybrid, and online services in the field of Automated External Defibrillator (AED), first aid, Machine Training, Bloodborne Pathogen ("Applicant's Restricted Services"). (19 TTABVUE 2-3, 125-126, ONOR ¶ A, Ex. A at § 5; 26 TTABVUE 4, Joos Corp. Decl. ¶ 8).

Applicant filed Applicant's Application during the Restricted Period wherein Applicant could not lawfully use Applicant's Mark in conjunction with Applicant's Restricted Services in the Restricted Territories awarded to Halabi. Applicant is not entitled to an unrestricted registration because Applicant did not have the purported rights to use Applicant's Mark that Applicant represented at the time of filing Applicant's Application.

Applicant cannot rely on prior use from Fit Industries, LLC ("Fit Industries") to support its entitlement for an unrestricted registration because Fit Industries did not transfer the goodwill of Applicant's Restricted Services (and could not transfer with respect to Applicant's Unrestricted Services that Fit Industries did not offer) through the Dissolution Agreement. (19 TTABVUE 2-3, 129, ONOR ¶ A, Ex. A at § 7; 19 TTABVUE 2-3, 68-70, ONOR ¶A, Ex. A at 59:25-60:16). To the extent Applicant attempts to rely on use of Applicant's Unrestricted Services to support its entitlement for an unrestricted registration, it cannot because Applicant's Unrestricted Services were not in use at the time of filing Applicant's Application. Predominantly, Applicant's services listed in Applicant's Application are Applicant's Restricted Services, which Applicant could not advertise for or offer under the Dissolution Agreement at the time of filing Applicant's Application and Applicant's Unrestricted Services were not in use at the time of filing Applicant's Application or thereafter. (19 TTABVUE 2-3, 124 ONOR ¶ A, Ex. A; 21 TTABVUE 5, Halabi Corp. Decl. ¶¶ 8, 10; 23 TTABVUE 11-13, Halabi Decl. ¶¶ 45, 47, 50, 52).

Allowing Applicant to amend Applicant's Application to correct several errors knowingly included by Applicant at the time of filing is not a suitable remedy. The Board should sustain the Opposition and deny registration because Applicant is not entitled to an unrestricted registration as applied-for at the time of filing Applicant's Application.

## II. ARGUMENT

### a. Ownership Rights in Applicant's Mark are Separate and Distinct from Applicant's Right to Lawfully Use Applicant's Mark on the Filing Date of Applicant's Application Due to Restrictions in the Dissolution Agreement.

Applicant and Opposer appear to agree with respect to interpretation of the Dissolution Agreement, namely, that the plain meaning of the Dissolution Agreement terms control. The Dissolution Agreement provided Joos exclusive ownership in and to the artwork depicted in Applicant's Mark. That point is uncontested. Opposer does not contend the Dissolution Agreement failed to transfer this ownership of the artwork to Joos. The Parties disagree as to the type of right transferred.

Ownership rights and the right to lawfully use a trademark are distinct concepts under trademark law, recognized as separate rights. These rights are routinely treated independently both in statutory trademark law and by the various courts that decide trademark disputes. 15 U.S.C. § 1057(b); *see B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 142-143 (2015); *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1353 (Fed. Cir. 2023) ("under the Lanham Act, a registrant secures ownership of and *exclusive rights* to use a mark in commerce") (emphasis in original).

An illustration of this distinction is in the context of a license agreement wherein an owner of a trademark licenses the right to use the same trademark to a third party. While this Opposition does not involve a trademark license, it makes sense that Applicant can own Applicant's Mark and simultaneously have contractual limitations on Applicant's right to lawfully use Applicant's Mark under certain circumstances. S*ee* 2 J. T. McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:82 (4th Ed.

1997) (stating while it does not lie within the Board's jurisdiction to enforce the contract between the parties, agreements to cease use of a mark or to not use a mark in a certain format are routinely upheld and enforced); *accord* 2 J. McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:82 (5th Ed. 2022) ("Many consent agreements also embody a promise not to use a trademark in a certain format or on a certain line of goods. Such agreements are routinely upheld and enforced.").

The geographic restrictions and limitations on services under the Dissolution Agreement limited Applicant's exclusive right to use Applicant's Mark unrestricted nationwide despite Applicant's ownership of Applicant's Mark. Applicant could not use Applicant's Mark in conjunction with Applicant's Restricted Services in the Restricted Territories at the time of filing Applicant's Application.

### b. Applicant is Not Entitled to Unrestricted Registration Because the Dissolution Agreement Prohibits Certain Uses of Applicant's Mark.

The Dissolution Agreement prohibits Applicant's use of Applicant's Mark in conjunction with Applicant's Restricted Services in the Restricted Territories. (19 TTABVUE 2-3, 125-126, ONOR ¶ A, Ex. A at § 5). It is uncontested that Applicant was limited during the Restricted Period by the Dissolution Agreement. The filing of Applicant's Application occurred during the Restricted Period, and Applicant was subject to prohibitions under the Dissolution Agreement. Applicant failed to include these restrictions in Applicant's Application filed with the United States Patent and Trademark Office ("USPTO"). Applicant is not entitled to an unrestricted registration because Applicant could not lawfully use Applicant's Mark exclusively nationwide due to the geographic restrictions under the Dissolution Agreement.

Mere allowance or ability to use Applicant's Mark is not enough to establish actual use in commerce. *E.I. du Pont de Nemours and Co. v. G.C. Murphy Co.*, 199 USPQ 807, 812 (TTAB 1987); *Aycock Eng'g, Inc. v. Airflite, Inc.*, 90 USPQ2d 1301, 1305 (Fed. Cir. 2009) (quoting Trademark Act Section 45, 15 U.S.C. § 1127); *Cavalier Rescue of Ala., Inc. v. Meager*, 2024 TTAB LEXIS 28, *23-4

(TTAB 2024). Applicant only goes as far as to say it ***could use*** Applicant's Unrestricted Services. (34 TTABVUE 17-18, pp. 16-17 of Applicant's Brief). Applicant fails to introduce evidence probative of actual use of Applicant's Mark in conjunction with Applicant's Unrestricted Services.

Applicant fails to recognize the significant impact of the Dissolution Agreement's restrictions on Applicant's right to use Applicant's Mark for Applicant's Restricted Services when evaluating the importance of use in commerce as defined by the Trademark Act. 15 U.S.C. § 1127. The time of filing an application is statutorily important in a used-based application when evaluating applicant's averred rights to use and applicant's actual use of a trademark in determining applicant's right to registration. 15 U.S.C. § 1051(a)(3); TMEP §§ 804.02, 806.01(a), 819-819.01(q), and 901. It is important to evaluate Applicant's right to use Applicant's Mark and Applicant's actual use of Applicant's Mark at the time of filing Applicant's Application. Applicant filed Applicant's Application seeking exclusive, unrestricted, nationwide rights to use Applicant's Mark during the Restricted Period; Applicant is not entitled to an unrestricted registration.

Despite Applicant's contentions, expiration of the Restricted Period exactly one (1) month prior to Publication of Applicant's Application is irrelevant. In a used-based Application, the use requirements and determination of Applicant's right to use is determined at the time of filing. The reference point for evaluation of Applicant's rights under the Dissolution Agreement is the time of filing of Applicant's Application. At the time of filing Applicant's Application, Applicant could not lawfully use Applicant's Mark exclusively nationwide due to the geographic restrictions under the Dissolution Agreement. Consequently, it is keenly important that Applicant filed Applicant's Application during the Restricted Period.

Applicant additionally suggests concurrent use proceedings and applications only involve identical trademarks. A plain reading of the relevant statutes and rules governing the required disclosures on a Federal Trademark Application state that a "concurrent use application is an application in which the applicant concedes that its use of the mark is not exclusive and provides the USPTO with all the

information the applicant has regarding others who are using the same ***or similar mark***." TBMP § 1102.01 (emphasis added); *see also*, 15 U.S.C. § 1051(a)(3)(D) ("to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof ***or in such near resemblance thereto as to be likely…to cause confusion, or to cause mistake, or to deceive***, except that, in the case of every application claiming concurrent use, the applicant shall…") (emphasis added). Applicant considers Opposer's use of Opposer's trademarks to be similar to Applicant's Mark by Applicant's own admission. (19 TTABVUE 2-3, 17 ONOR ¶ A, Ex. A at 138; 23 TTABVUE 14, Halabi Decl. ¶ 57; 26 TTABVUE 28, Joos Decl. ¶ 24). Applicant admits Applicant knew of Opposer's Use. Applicant was required to disclose Opposer's use or at the very least Applicant's restrictions under the Dissolution Agreement at the time of filing Applicant's Application seven (7) months into the Restricted Period.

Applicant argues the impact of the geographic restrictions in Section 5 of the Dissolution Agreement is nominal as it relates to Applicant's right to an unrestricted registration. (34 TTABVUE 17, Applicant's Brief p. 16). Rather, the limitation is significant. Applicant was precluded from using Applicant's Mark in conjunction with Applicant's Restricted Services in eleven (11) counties that covered roughly twenty-two (22) million of three hundred and thirty (330) million people in the United States. (20 TTABVUE 13, 95-122, ONOR ¶ P, Ex. P at TTABVUE 95-122). These are eleven (11) of the most populous metropolitan areas in the United States. Applicant identifies the complexity and significance of scope. (19 TTABVUE 2-3, 99 ONOR ¶ A, Ex. A, 107:5-12) ("...that took four months and 22 cities divided in that particular agreement, amongst other things, that, yeah, I would say that this is not a simple…this is a large multi-reach multistate business."). Furthermore, Section 5's survivability clause underscores the importance of the restriction on competition between Halabi and Joos. Expressly dictated in the Agreement, each Restricted Territory and each month of the Restricted Period is to be construed as an independent agreement and remain in effect against claims and challenges to ensure minimal impact to

the overall competitive restrictions. (19 TTABVUE 2-3, 125-126, ONOR ¶ A, Ex. A at § 5). Halabi and Joos specifically negotiated this level of protection because the geographical limitations were significant.

The absence of an express provision against use of a specific trademark does not mean the Dissolution Agreement does not impact Applicant's use of Applicant's Mark. Likewise, the absence of a specific provision prohibiting the act of filing for a trademark at the USPTO does not allow Applicant to apply for unrestricted trademark rights contrary to Applicant's rights under the Dissolution Agreement at the time of filing Applicant's Application.

**i. Restrictions on Certain Competitive Activities Geographically Necessarily Limits Applicant's Use of Applicant's Mark.**

Applicant was prohibited from offering or rendering Applicant's Restricted Services in the Restricted Territories during the Restricted Period, then Applicant cannot use Applicant's Mark in the Restricted Territories during the Restricted Period for Applicant's Restricted Services. For example, if Business A cannot conduct certain services in Miami, then Business A cannot use any branding in conjunction with those services in Miami. An inability to conduct business in a certain manner directly limits a user's ability to use its branding. The absence of an express provision limiting Applicant's use of a particular branding does not remove the restriction on Applicant prohibiting Applicant's rendering of Applicant's Restricted Services in the Restricted Territories awarded to Halabi.

Consistent with the Parties intent to not compete in each other's Restricted Territories during the Restricted Period, the Agreement includes a broad prohibition on competitive activities. With this type of prohibition, to include specific branding would unnecessarily narrow the agreement inconsistent with the intent of the Parties at the time of the negotiated Dissolution Agreement. Had a more specific provision been included and agreed-to, a party could then simply adopt a new trademark and still comply with the restrictions of the Dissolution Agreement. The Parties, when the Dissolution Agreement was signed, did not know what trademark would be used by Applicant.

**ii. Applicant Is Not Entitled to an Unrestricted Registration Despite No Express Provision Prohibiting the Filing of Applicant's Application.**

Applicant rebuts Opposer's argument on use by focusing on whether a specific, express provision as to filing Applicant's Application exists in the Dissolution Agreement. This Opposition relates to a violation of the USPTO's applicable rules, fundamental procedural safeguards, and application requirements in seeking rights contrary to the Dissolution Agreement at the time of filing Applicant's Application. Opposer has not requested that the Board rule on enforcement of the Dissolution Agreement, but rather interpret the Dissolution Agreement as it relates to Opposer's request that Applicant's Application not proceed to registration. Applicant cannot expand its rights at the USPTO by representing rights on Applicant's Application in direct contradiction with the agreed-upon prohibitions in the Dissolution Agreement. Whether a provision existed in the Dissolution Agreement expressly prohibiting filing a trademark application itself is not of consequence here. The USPTO does not allow registration of a trademark inconsistent with an applicant's rights. Applicant did not have unrestricted rights to use Applicant's Mark at the time of filing Applicant's Application, and thus Applicant is not entitled to an unrestricted registration. Applicant cannot apply for rights it does not have at the USPTO. *See Vaughn Russell Candy Co. v. Cookies in Bloom, Inc*., 47 USPQ2d 1635, 1637-8 (TTAB 1998).

**c. Goodwill was Not Transferred under Section 7, and Applicant Cannot Rely on Use by Fit Industries to Support Entitlement to an Unrestricted Registration.**

Applicant states the relevance of the goodwill of Fit Industries and the alleged transfer is unclear. The relevance of the transfer or lack thereof is related to the first date of use and the impact on priority both generally and in the context of concurrent use applications and concurrent use proceedings. The first date of use of Applicant's Mark occurring post-dissolution is important to the required averments at the time of filing and other concurrent use considerations discussed above with respect to Applicant's Application.

Applicant and Opposer entered the marketplace simultaneously with trademarks that Applicant believed to be similar. Applicant did not have a basis for asserting the exclusive, unrestricted, nationwide right to use Applicant's Mark to the USPTO. Applicant includes priority of use as an affirmative defense, supporting establishing priority of Applicant's first date of use is relevant to the issues before the Board. Additionally, the transfer of goodwill or lack thereof is relevant to the extent Applicant attempts to rely on Fit Industries' prior exclusive use to support Applicant's entitlement to the exclusive, unrestricted, nationwide right to use Applicant's Mark. If goodwill was not transferred, Applicant cannot rely on Fit Industries' use. (19 TTABVUE 2-3, 49 ONOR ¶ A, Ex. A, 40:17-21) ("…the first use date on [Applicant's Application] is based on when it was first used in commerce, which was under Fit Industries."). All use of Applicant's Mark by Applicant occurred during the Restricted Period up and through the time of filing. Applicant therefore did not have exclusive, unrestricted, nationwide right to use Applicant's Mark at the time of filing.

Applicant states Fit Industries did not abandon use at dissolution. (34 TTABVUE 22, Applicant's Brief p. 21). Fit Industries abandoned its use as evidenced by Sections 1, 3, 6, and 8 of the Dissolution Agreement. These Sections not only dissolved all of Fit Industries' operations, but also demonstrate Halabi and Joos' intention to not resume Fit Industries. At liquidation, all assets of Fit Industries' were distributed to each Halabi and Joos; Fit Industries' business dissolved. Specifically in Section 5, Halabi and Joos agree not to pursue specific competitive activities, placing specific limitations on each signatory.[1] It is clear that Halabi and Joos intended for Fit Industries to cease to exist and the business and its related goodwill not to continue. Applicant did not purchase Fit Industries nor is Applicant or Joos a

[1] "The Members hereby agree that they will not, in any Restricted Territory, during the twelve (12) month period following the Effective Date of this Agreement ("Restricted Period") engage in, be associated with, employed by, perform services for or have any type of ownership interest in, directly or indirectly, a business in any manner similar to, or in competition with, the Company's business of providing training and certification for CPR, First Aid, and Bloodborne Pathogen ("Fit's Business Services"), or other acts of competition which include, (i) the pursuit of customers through the use of websites or by any other means where such customers are solicited for any Fit's Business Services in the other Member's Restricted Territory, and (ii) setting up training sites in the other Member's Restricted Territory (collectively "Prohibited Activities")."

successor-in-interest. The intent of the Halabi and Joos in the Dissolution Agreement was to end Fit Industries, and move forward separately, independently, and unaffiliated. Applicant cannot rely on Fit Industries' prior or exclusive use of Applicant's Restricted Services to support Applicant's entitlement to an unrestricted registration.

All evidence suggested Fit Industries ended, Fit Industries' goodwill was abandoned, and Halabi and Joos did not intend to continue as Fit Industries nor be confused with Fit Industries. Applicant cannot retroactively claim Fit Industries' goodwill. Applicant's statement regarding upholding the goodwill and reputation of Fit Industries contradicts the plain reading of the Dissolution Agreement and other statements made by Applicant regarding the intent to distance itself from Fit Industries. (19 TTABVUE 2-3, 124-129, ONOR ¶ A, Ex. A at §§ 1, 3, 6, and 8).

Applicant in an attempt to invoke a transfer of trademark rights and the associated goodwill, Applicant incorrectly imparts meaning into the term "logo" in Section 7. The term "logo" is not defined in the Dissolution Agreement and was used solely in a description identifying the image used by Fit Industries, not to create or confer any trademark rights to be transferred. This is evident through the remainder of Section 7's parameters for Halabi's new design concept, notably allowing for all literal elements to be the same. A logo divorced from the goodwill associated therewith is just the artwork itself. Artwork and works of expression are copyright, and goodwill established by use in association with goods or services as to indicate the source is trademark. *Visa, U.S.A., Inc. v. Birmingham Tr. Nat'l Bank*, 216 USPQ 649, 651-2 (Fed. Cir. 1982).

Applicant further argues that Section 8 includes likelihood of confusion language invoking trademark considerations. (34 TTABVUE 21, Applicant's Brief p. 20). Section 8 does not include any such language. The likelihood of confusion language referenced by Applicant in Section 8 is copyright driven as it relates to the user interface (appearance) of websites. Section 8's discussion of confusion is between the signatories of the Dissolution Agreement and Fit Industries. Section 8 does not contemplate a likelihood of confusion between Halabi, Joos, or the Parties. Applicant's intention to uphold the goodwill

of Fit Industries directly contradicts the plain language of Section 8 of the Dissolution Agreement, and Section 8 does not include language specific to any likelihood of confusion under trademark law.

Applicant's reliance on case law discussing the inverse situation does little to support its position of a valid transfer of goodwill through the Dissolution Agreement. (34 TTABVUE 21-22). Applicant cites to non-binding authority from various circuit courts wherein goodwill ***was*** mentioned and still ***was not*** transferred to support their position that goodwill ***was not*** mentioned in the Dissolution Agreement but ***was*** still transferred. *Marshak* states that trademarks only amount to the goodwill and have no independent significance apart from the goodwill; this supports Opposer's position that the logo, divorced from the goodwill, is simply the artwork and holds no value as a trademark without use by Applicant. *Marshak v. Green*, 223 USPQ 1099, 1100 (2d Cir. 1984); *Visa, U.S.A.,* 216 USPQ at 651-2 (Trademarks "are integral and inseparable elements of the goodwill of the business or services to which they pertain."). The term goodwill is not expressly stated anywhere in the Dissolution Agreement, much less in Section 7. (19 TTABVUE 2-3, 68-69 ONOR ¶ A, Ex. A, 59:25-60:16). Applicant is failing to consider that Applicant's efforts to distance itself from Fit Industries with no confusion between Applicant and Fit Industries means Applicant desired to move forward with new, different goodwill.

Opposer does not allege the invalid transfer of goodwill in the Dissolution Agreement or the resulting impact on the first date of use as an independent basis for opposition. Applicant's argument as to whether the Board can independently sustain opposition on this point is moot.

**d. Public Policy Dictates an Amendment to Applicant's Application is Improper and Registration Should be Denied.**

There exists strong public interest against the Board setting the dangerous precedent of allowing registration through amendment to Applicant's Application that have been largely unaddressed by Applicant. Any amendment that removes Applicant's Restricted Services from Applicant's Application at the time of filing renders Applicant's Application *void ab initio*. Applicant should not be entitled to any

amendment of Applicant's Application, and any amendment would be an inappropriate resolution given the circumstances.

In the event the Opposition is sustained, Applicant claims the proper remedy is an "exclusion modifier" which it has described as the addition of an "exclusion modifier disclaiming services restricted by the Restrictive Covenant in the eleven counties during the one-year period" by motion pursuant to 37 C.F.R. §2.133(b). (34 TTABVUE 21, Applicant's Brief p. 20). However, these "exclusion modifiers" involving geographic restrictions, as requested by Applicant, are ***only*** considered and determined by the Board in concurrent use proceedings pursuant to 37 C.F.R. §2.133(c) (emphasis added); *Bionetics Corp. v. Litton Bionetics, Inc.*, 218 USPQ 327, 331 (TTAB 1983) ("geographically restricted registrations may be issued as the result of concurrent use proceedings but may not be issued as the result of opposition proceedings."). The Parties are not in a concurrent use proceeding. The Parties are in an Opposition Proceeding. Allowing Applicant to file a Motion seeking this "exclusion modifier" adding the geographic restrictions to Applicant's Application is not appropriate here. Applicant's request for an "exclusion modifier" further supports the Opposer's discussion related to the relevance of concurrent use and concurrent use proceedings as being an established process available to Applicant at the time of filing.

**i. Applicant Cannot Rely on Applicant's Unrestricted Services to Support Entitlement to an Unrestricted Registration as Applicant's Unrestricted Services Were Not in Use Any Time Prior to Filing and Any Amendment Renders Applicant's Application *Void Ab Initio.***

*Void ab initio* is not an independent ground in this Opposition, but rather a legal theory which supports Opposer's underlying argument. Opposer's ground is Applicant could not lawfully use Applicant's Mark exclusively nationwide requiring the review of Applicant's use of Applicant's services identified in Applicant's Application. Nonuse is relevant to the extent Applicant relies on Applicant's Unrestricted Services to support Applicant's entitlement to an unrestricted registration. Applicant could have requested an amendment of Applicant's Application to remove Applicant's Restricted Services from

Applicant's Application; use, and thus its converse, nonuse, with all of Applicant's services in Applicant's Application are therefore relevant.

Use of the identified services in Applicant's Application is placed at issue by both Opposer and Applicant. Opposer's ground for opposition is that Applicant could not lawfully use Applicant's Mark exclusively nationwide with the services identified in Applicant's Application, which includes both Applicant's Restricted Services and Applicant's Unrestricted Services. In addition to the above, Applicant also pleaded an affirmative defense of priority of use. Concurrent use and its relevance have been discussed above, and issues of concurrent use involve analysis of both use in commerce and priority of use. Applicant argued that the Dissolution Agreement does not restrict all services and use of Applicant's Mark in the Restricted Territories. Applicant argues that not all services identified in Applicant's Application—namely Applicant's Unrestricted Services—were restricted under the Dissolution Agreement, which places nonuse of Applicant's Unrestricted Services in direct relevance. Nonuse is not a new claim, but rather inextricably related to Opposer's underlying ground for opposition.

Opposer's Main Brief addresses Applicant's identified services as such due to the unrestricted nature of online-only CPR training in Section 5, which would benefit Applicant with a broader interpretation than Applicant's position in Applicant's Brief. Applicant now states it did not include online-only CPR training in Applicant's Application but is rather claiming that the "online" portion of Applicant's identified services relates to a hybrid course (a course with both an in-person and online component). (34 TTABVUE 19, Applicant's Brief p. 18) ("Applicant need not offer online-only services as such a service was not a claimed service in Applicant's Application."). This "hybrid" class would not fall under the exceptions of Section 5. The Dissolution Agreement's carve out is for online-only given Fit Industries did not offer online-only courses and there is a specific ban on advertising in the Restricted Territories for online-only CPR training. The exception with the term "online" added clearly suggests online-only courses given the broader prohibition on the "business of providing training and certification for CPR." Common sense supports this interpretation because online services are not tied to a specific

location, and it is difficult to ensure the Parties avoid the Restricted Territories in offering online-only CPR training consistent with the intent of the Dissolution Agreement.

Hybrid courses, which would include both a live (in-person) and online component, do not fall under the exceptions of Section 5 and would be considered part of Applicant's Restricted Services. The hybrid courses in question are for CPR training only, and the reference to online CPR courses are not an example of the more expansive training programs like CNA. The services provided by Fit Industries were generally prohibited, which included live CPR training and certification. For example, Halabi, Joos, and the Parties could not set up training sites, solicit consumers, or hire instructors in the Restricted Territories. The plain reading of Section 5 would not allow hybrid courses to qualify as an exception. If a live portion of the course is part and parcel of the full offered course, then the course is unequivocally restricted. Any course with a live component is restricted under the Dissolution Agreement. It was not the intent of Halabi and Joos to allow circumvention of the restrictions in the Dissolution Agreement simply by offering half of the CPR training and certification course live and the other half online.

Opposer is addressing all of Applicant's services included in Applicant's Application. Applicant's Restricted Services were in use, but Applicant's right to lawfully use Applicant's Mark was restricted at the time of filing for the reasons stated above. Applicant's Unrestricted Services were not used before or at the time of filing Applicant's Application. (26 TTABVUE 2, 4, Joos Corp. Decl. ¶¶ 2, 9-13). Any reliance on use of Applicant's Unrestricted Services to support entitlement to an unrestricted registration or any amendment to remove Applicant's Restricted Services to leave only Applicant's Unrestricted Services on Applicant's Application is improper; the former fails due to nonuse at the time of filing, and the latter renders Applicant's Application *void ab initio.*

1. **Use, and Thus Nonuse, of Applicant's Unrestricted Services is Relevant to Opposer's Ground for Opposition and is Not a New Claim.**

Opposer has addressed nonuse to the extent Applicant relies on Applicant's Unrestricted Services. Opposer alternatively posed nonuse of Applicant's Unrestricted Services as a reason against any amendment removing Applicant's Restricted Services. If the Board were to amend the Application to remove Applicant's Restricted Services and leave only Applicant's Unrestricted Services, the Application would be *void ab initio* due to nonuse of all Applicant's Unrestricted Services.

Applicant knew the nature and circumstances of use of Applicant's Mark in conjunction with the services identified in Applicant's Application would be at issue. Use of Applicant's Mark in conjunction with the identified services is part of the averments made on Applicant's Application, which Opposer has placed at issue.

**2. Applicant Overlooks Its Own Statements of Nonuse and Faults Opposer for Not Proving a Negative.**

Opposer has shown that Applicant was not using Applicant's Unrestricted Services at the time of filing Applicant's Application, or anytime thereafter. (19 TTABVUE 2-3, 50, 62, 64, 71-2, 82, ONOR ¶ A, Ex. A at 41:1-25; 53:24-54:4, 55:4-7, 65:17-67:18, 78:19-23; 19 TTABVUE 5, 222, ONOR ¶ E, Ex. E at ¶ 51; 26 TTABVUE 2, 4, Joos Corp. Decl. ¶¶ 2, 9-13). Because Opposer cannot prove a negative, the inconsistencies or ambiguity in the record created by Applicant are Applicant's burden to correct to avoid a negative inference. *Food Global Innovation GP LLC v. Tuong Nguyen*, 2019 TTAB LEXIS 253, *12-3 (TTAB July 5, 2019). Opposer still bears the ultimate burden of proof, but Opposer's showing should be enough to push the burden of production back to Applicant to correct the inconsistencies or plain statements of nonuse made in this Opposition.

Applicant's citation to use contradicts Applicant's statement that Applicant does not provide online-only courses. If Applicant's cited statement on online courses relates to Applicant's hybrid courses, that has been discussed above. If the cited statement relates to online-only courses, which Applicant has admitted in testimony as well as Applicant's Main Brief it does not offer, Applicant's attempt to explain

away nonuse that Applicant's Unrestricted Services could have been provided if requested by a customer is far from satisfying the open and notorious requirements. (34 TTABVUE 19, Applicant's Brief p. 18); *E.I. du Pont de Nemours and Co. v. G.C. Murphy Co.*, 199 USPQ 807, 812 (TTAB 1987). Applicant's cited evidence also states that there is no "number item" or other open offer for online training on Applicant's websites and would need to be specifically requested by the consumer. (19 TTABVUE 2, 50, ONOR ¶ A, Ex. A at 41:6-25). Applicant's counter evidence is insufficient to establish use for online CPR services because mere ability to render a service is insufficient to establish actual use in commerce. *Cavalier Rescue of Ala., Inc. v. Meager*, 2024 TTAB LEXIS 28 at *21-5 (TTAB 2024). Any use would have had to occur and be open and notorious prior to September 08, 2021, the filing date of Applicant's Application.

Applicant's only additional support for use of Applicant's Unrestricted Services is the Affidavit and specimen on Applicant's Application and that the Examining Attorney approved Applicant's Application and accompanying specimen for publication. Assuming arguendo the specimen in Applicant's Application is admissible to prove actual use, the specimen only shows use of Applicant's Restricted Services and not Applicant's Unrestricted Services. Application affidavits are generally accepted without inquiry to use, and thus not probative as to actual use of Applicant's Mark with Applicant's Unrestricted Services. TMEP § 901.04 ("The examining attorney will normally accept the applicant's verified claim of use in commerce without investigation into whether the use referred to constitutes 'use in commerce.'"). In a TEAS Plus Application such as Applicant's Application, only one specimen per International Classification is needed, not each applied-for service therein. TMEP § 819.01(f)(i). The existence of post-registration audits underscores the importance to the USPTO of use in conjunction with all identified services. Publication is the method that safeguards against incorrect statements of use by an applicant during examination before registration.

Applicant has not shown use of Applicant's Unrestricted Services because Applicant is not using Applicant's Unrestricted Services. Applicant should not be given presumption based upon self-serving

affidavit that is rubber-stamped with little inquiry. Applicant's Affidavit on Applicant's Application is not proof, as it is not probative to actual use. TBMP § 704.04; 37 C.F.R. § 2.122(b)(2).

**ii. Public Policy Encourages the Board to Avoid Setting a Dangerous Precedent and Sustain the Opposition to Deny Applicant Registration of Applicant's Mark.**

Applicant did not address the Board's compelling public interest against setting the dangerous precedent that follows with allowing registration of Applicant's Application. Opposer raised three (3) public policy interests against the Board permitting amendment of Applicant's Application or otherwise allowing registration. First, allowing registration undermines the purpose of contractual agreements with similar non-compete provisions wherein the Applicant benefits by filing prematurely and taking advantage of USPTO processing times. Second, allowing registration would condone incorrect information on the Register, which is always disfavored given third party clearance efforts and the interest in the public understanding available rights. Third, there was a process Applicant could have sought at the time of filing Applicant's Application and again during this proceeding under the rules of concurrent use, but Applicant did not. Applicant should not be awarded the benefit of the unrestricted registration by circumventing this well-established process at the time of filing Applicant's Application and thereafter.

**e. Opposer Is Not Estopped from Bringing This Opposition Due to Breach of Contract Disputes.**

Opposer is not estopped from bringing this Opposition due to any issues related to breach of the Dissolution Agreement. Applicant's reframing of Opposer's ground for opposition to be enforcement or breach of the Dissolution Agreement and Applicant's separate allegations of breach against Opposer are outside the Board's jurisdiction. Opposer is not alleging breach of the Dissolution Agreement, so there is no satisfaction of a notice and cure provision required prior to bringing this Opposition.

**i. Claims of Breach of Contract are Outside the Jurisdiction of the Board.**

To the extent Applicant is making a claim of breach, this is outside the scope of this Opposition and the jurisdiction of the Board. *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 217 USPQ 641, 647 (Fed. Cir. 1983) ("…although other courts would be the proper tribunals in which to litigate a cause of action for enforcement or breach of the contract here involved, that is not sufficient reason for the board to decline to consider the agreement, its construction, or its validity if necessary to decide the issues properly before it…"); *McDermott v. San Francisco Women's Motorcycle Contingent*, 81 USPQ2d 1212, 1216 (TTAB 2006) (Board does not have authority to determine whether a party has engaged in criminal or civil wrongdoings), *aff'd unpub'd*, 240 Fed. Appx. 865 (Fed. Cir. 2007), *cert. denied*, 552 U.S. 1109 (2008). Applicant cannot bring a claim for breach of contract related to the Dissolution Agreement in this forum, especially for facts it learned during the pendency of this Opposition. (34 TTABUVUE 24, Applicant's Brief p. 23).

Applicant's claims of breach of the Non-Disparagement Clause found in Section 11 of the Dissolution Agreement are outside the Board's jurisdiction. The Board is the improper forum or tribunal for claims of breach of contract, and thus Applicant's claims of breach have no merit. Applicant cannot claim Opposer is estopped from opposing Applicant's Application based upon these breaches either, especially because Opposer is not seeking enforcement of the Dissolution Agreement as argued by Applicant. Opposer is requesting the Board interpret the agreed-to restrictions in the Dissolution Agreement on Applicant's right to lawfully use Applicant's Mark compared to the rights represented in Applicant's Application at the time of filing. *See Vaughn Russell Candy Co*., 47 USPQ2d at 1637-8.

**ii. Opposer Is Not Alleging Enforcement or Breach of the Dissolution Agreement, and Thus a Notice and Cure Obligation Is Irrelevant.**

Applicant's argument that Opposer is bound by Section 12 and thereby estopped from seeking opposition due to a condition precedent is premised on Opposer alleging a material breach of the Dissolution Agreement. The notice and cure provision under Section 12 of the Dissolution Agreement is not applicable because Section 12 requires an "alleged breach condition" to be triggered. Opposer is not

alleging Applicant materially breached any provision of the Dissolution Agreement. Rather, Opposer is alleging that Applicant is not entitled to an unrestricted registration because Applicant represented to the USPTO that Applicant had exclusive, unrestricted, nationwide rights to lawfully use Applicant's Mark, which is contrary to Applicant's rights under the Dissolution Agreement at the time of filing Applicant's Application. The scope of the Board's review of the Dissolution Agreement in this Opposition is to interpret the Dissolution Agreement to determine whether Applicant did or did not have Applicant's purported rights at the time of filing Applicant's Application and not to determine issues of enforcement or breach.

Irrespective of the above, Applicant was on notice given the filing of the Extension to Oppose for thirty (30) days and the following conversations provided the fifteen (15) day written notice required under Section 12 prior to the filing of the Notice of Opposition. Also, using Applicant's logic against Applicant, Section 12 should estop Applicant from asserting breach of contract under Section 11 now.

This Opposition is not related to any act of breach of the Dissolution Agreement. This Opposition stems from Applicant's filing of Applicant's Application claiming rights Applicant was not entitled to due to limitations under the Dissolution Agreement at the time of filing. Opposer is requesting the Board sustain opposition and deny registration because Applicant did not have the exclusive right to use the Applicant's Mark in commerce on the filing date of Applicant's Application because the Dissolution Agreement prohibits use of Applicant's Mark in certain geographic areas for one year inclusive of the filing date of the Applicant's Application. *Weiner King, Inc. v. Wiener King Corp*., 204 USPQ 820, 828 fn.5 (C.C.P.A. 1980) ("The right to register a mark flows from the right to use it.").

## III. CONCLUSION

For the foregoing reasons, Opposer respectfully requests the Board sustain this proceeding and refuse registration of Applicant's Mark.

Dated: August 20, 2024

Respectfully submitted,

*/Brittany J. Maxey-Fisher/*

Brittany J. Maxey-Fisher, Esq.
Florida Bar Number: 44,586
Patent Bar Number: 57,621
bmaxeyfisher@maxeyfisher.com
Haviland M. M. Kebler, Esq.
Florida Bar Number: 1,019,373
hkebler@maxeyfisher.com
Maxey-Fisher, PLLC
Waterford Plaza
7650 West Courtney Campbell Causeway
Suite 1100
Tampa, Florida 33607
(727) 230-4949
ttab@maxeyfisher.com
*Attorneys for Opposer*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of August 2024, a true and correct copy of OPPOSER'S REPLY BRIEF has been served via email to the following:

Joseph F. Southron Esq.
Florida Bar Number: 122109
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Tel.: 813.773.5105
Fax. 813.773.5103
Primary: joe@fourriverslaw.com
Secondary: eservice@fourriverslaw.com
Attorney for Applicant

Dated: August 20, 2024

*/Brittany J. Maxey-Fisher/*
Brittany J. Maxey-Fisher, Esq.
Florida Bar Number: 44,586
Patent Bar Number: 57,621
bmaxeyfisher@maxeyfisher.com
Haviland M. M. Kebler, Esq.
Florida Bar Number: 1,019,373
hkebler@maxeyfisher.com
Maxey-Fisher, PLLC
Waterford Plaza
7650 West Courtney Campbell Causeway
Suite 1100
Tampa, Florida 33607
(727) 230-4949
ttab@maxeyfisher.com
*Attorneys for Opposer*

## APPENDIX I

**Responses to Applicant's Evidentiary Objections**

Opposer respectfully submits its Responses to Applicant's Evidentiary Objections as Appendix I. Opposer separates its responses by Applicant's identified evidence below.

1. **Opposer's Testimonial Declaration of Ms. Laura Ahammer (22 TTABVUE).**

The Declaration of Ms. Laura Ahammer is relevant to proving facts related to the validity and intent of the Dissolution Agreement, such as the Parties' actions in accordance with the Dissolution Agreement during the Restricted Period and thereafter.

2. **Exhibit H to Opposer's Notice of Reliance (19 TTABVUE 259-324).**

Opposer proffered TSDR status pages of Applicant's abandoned application to show a pattern of filing trademark applications at the USPTO for rights contrary to the Dissolution Agreement.

3. **Exhibit I to Opposer's Notice of Reliance (19 TTABVUE 325-347).**

Opposer proffered TSDR status pages of Opposer's trademark application to the extent relevant to any rebuttal arguments to Applicant. However, neither Applicant nor Opposer relied on Exhibit I to Opposer's Notice of Reliance.

4. **Exhibit M to Opposer's Notice of Reliance (19 TTABVUE 359-416).**

Opposer proffered the "USPTO Economic Working Paper No. 2018-02" to evidence a trademark application filing's competitive nature and its effect in the minds of competition and consumers. However, Opposer did not rely on Exhibit M to Opposer's Notice of Reliance.

5. **Exhibit P to Opposer's Notice of Reliance (20 TTABVUE 95-122).**

Opposer proffered Census Data to show the significance of the geographical limitations of the Dissolution Agreement on Applicant's right to use Applicant's Mark given Applicant's arguments related to the insignificance of these limitations.