**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DOUGLAS K. JOOS, JR., and
CPR LLC,

Plaintiffs,

v. CASE NO.: 8:25-cv-03368-TPB-AEP

SAMI HALABI and CPR
CERTIFICATION, LLC

Defendants.
_______________________________/

**DEFENDANTS' VERIFIED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Sami Halabi ("Halabi") and CPR Certification, LLC ("CPR Certification") (collectively, "Defendants"), by counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, and Local Rule 3.01, file this response in opposition to Plaintiffs' Motion for Partial Summary Judgment on Liability and Incorporated Memorandum of Law [Doc. 47] (the "Motion"), and state:

## INTRODUCTION

Plaintiff, Joos, asks the Court to do what Florida law forbids: rewrite a negotiated and unambiguous contract, and then treat his own rewritten version as established beyond genuine dispute. The parties' February 8, 2021, Dissolution Agreement (the "Agreement") imposes clear obligations on both Halabi and Joos, and Halabi has complied with his obligations in every regard.

CPR LLC's trademark claims fare no better. Plaintiffs cannot complain about

Defendants' use of a logo the Agreement expressly allows; each element of CPR LLC's claims favors Defendants; and laches bars CPR LLC's claims given its acquiescence to Halabi's ongoing use of his logo, and its long delay in asserting its claims.

## RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

### I. Plaintiffs' Statement of Facts.

Defendants respond to the numbered paragraphs of Plaintiffs' statement of facts (Doc. 47 at 2-10) as follows:[1]

3. Disputed. The heart design originated with artwork Halabi commissioned from a Fiverr artist in 2015. Doc. 47-1 ¶6. The Logo was the property of Fit Industries, LLC ("Fit") until the date of the Agreement. Doc. 38-1 ¶7.

5. Disputed. Paragraph 7 authorizes Halabi to use "CPR," "Certification," and the city name in his new logo and requires only that the design "must be different." Doc. 38-1 ¶7. Paragraph 8's "reasonable person" standard applies to changes to the hero picture and icons and is measured against websites "operated by Fit." *Id.* ¶8.

6. Disputed. Halabi's testimony that Joos received "everything the eye sees" in Fit's logo describes what Joos received; it does not define how different Halabi's new design had to be. Doc. 47-2 at 32-33. Halabi also testified that his new logo was different and that he "satiated" the Agreement. *Id.* at 31, 35.

7. Disputed. Although Joos's declaration states that he "assigned" all rights in the Logo to CPR LLC (Doc. 47-1 ¶15), Joos previously testified under oath that he

[1] Paragraphs not addressed are undisputed for purposes of the Motion only.

retained ownership and merely "licensed" CPR LLC to use the Logo through a "verbal and implied" arrangement, with no written license and no mention of goodwill. **Exhibit A,** 55:1-14.

8. Disputed to the extent it implies that CPR LLC used the Logo before Defendants used their logo. CPR LLC and CPR Certification began operating, and using their respective logos, simultaneously at 12:01 a.m. on February 22, 2021. Doc. 47-1 ¶14; Doc. 48 at 3, ¶2.

9. Disputed. Through Paragraph 7, Joos consented to Halabi's use of a new logo using "CPR," "Certification," the city name, and any design that was "different." Doc. 38-1 ¶7. Joos also admitted that "[i]t's not uncommon for CPR companies to use a heart" and that such hearts are often red. **Exhibit A,** 63:3-15.

11. Disputed. The modified artwork was the 2015 Fiverr artwork Halabi himself commissioned, and Halabi modified it "to be compliant with the Dissolution Agreement." Doc. 47 at 4, ¶11. Paragraph 7 prohibits incorporating Fit's logo; it does not prohibit a different heart. Doc. 38-1 ¶7.

12. Disputed. Halabi began work on a new logo because he knew Joos "would be inheriting the logo," and his objective was a logo that was different and represented CPR certification and training. Doc. 47-2 at 33-36. Halabi testified, "I didn't think there would be confusion." *Id.* at 35.

14-15. Disputed. Defendants' logo differs from Plaintiffs' Logo in eight respects. Doc. 48 at 4-5, ¶6; *see* Part I.A.

16. Disputed. CPR Certification grew from 11 sites to 44 between February

22, 2021, and March 17, 2022; to 70 by July 10, 2023; and to 107 before this action was filed—growth that occurred while no trademark claim was pending. Doc. 48 at 6 n.3, 20-21.

18. Disputed. On February 25, 2021, Joos told Halabi that the Orlando YouTube account was "irrelevant," that Halabi should "just make a new youtube," and to "please stop contacting me about youtube." Doc. 47-16 at 2.

19. Disputed. The residual legacy items were conveyed to Halabi in the dissolution; since February 22, 2021, the Houston video had 0.1 hours of total watch time, the Orlando video 0.2 hours, and the Orlando channel had one subscriber. Doc. 48 at 12-13. They were changed once identified in this action. Doc. 47-1 ¶¶28-29.

21. Undisputed that both parties market online; however, Halabi testified that consumers "will click on the first thing that pops" up, "think that all CPR purveyors are connected somehow," and that "[t]hat's where the confusion lies most of the time." Doc. 47-2 at 27.

23. Disputed. Halabi testified that customer experience spans "the whole spectrum," and "many are intermediaries, and many are expert." Doc. 47-2 at 28-29.

24. Disputed. Halabi testified that he does not handle customer service, that some of Plaintiffs' exhibits "look manufactured," and that "it's my conviction that . . . nobody's confused us because of the logo," because "to a consumer CPR is CPR is CPR." Doc. 47-2 at 26-27.

25-31. Disputed. The episodes involve the shared "CPR Certification [City]" names, shared or adjacent addresses, Google's duplicate-listing algorithms, and

reviewers who, by Plaintiffs' admission, were not CPR LLC's customers. Doc. 47 at 7, ¶27; Doc. 47-1 ¶¶38-59. The Pittsburgh competitor stated that the "visually dominant portion" of CPR LLC's mark is "CPR," which, followed by a city name, creates the commercial impression at issue. Doc. 47-27 at 2. Also, many of the statements are inadmissible hearsay.

33. Disputed. Joos's counsel wrote only that Joos thought there was "a legitimate question of whether Sami's new logo is sufficiently different." Doc. 48-2. Two days later, Defendants' counsel responded that the logo "is indisputably different," "complies with the dissolution agreement," and that any suit "would end well for Sami." Doc. 47-16 at 2. Joos did not respond for thirteen months.

34. Disputed. The March 17, 2022, notice was sent on behalf of Joos, not CPR LLC; addressed Halabi's logo, not the legacy Logo on any YouTube channel; asserted that the logos were "essentially identical" "[o]ther than the location of the word 'Certification.'" Doc. 48-3 at 2-5. Halabi responded on April 6, 2022. Doc. 48-4.

35. Disputed. Plaintiffs mischaracterize the TTAB proceeding. The TTAB construed CPR Certification's opposition as a single "improper use claim" concerning the geographic restrictive covenant and dismissed it on that basis alone. Doc. 47-38 at 2 n.2, 9-10. The TTAB did not adjudicate likelihood of confusion, infringement, or compliance with Paragraph 7; the passages Plaintiffs quote appear in a footnote and in a discussion rejecting a concurrent-use argument. *Id.* at 10 n.14; Doc. 47-39 at 9.

36. Disputed. Joos alone filed the state court action on or about July 10, 2023, asserting contract, tortious interference, and injunction counts; CPR LLC was

not a party and no Lanham Act or intellectual property count was asserted. Doc. 48 at 7-8, ¶¶16-20; Doc. 48-5.

## II. Statement of Additional Material Facts.

1. On February 22, 2021, CPR Certification began operating with 11 training sites distributed under the Agreement. Doc. 48 at 3, ¶2.

2. Between February 22, 2021, and March 17, 2022, when Joos—not CPR LLC—sent written notice of alleged breach under the Agreement, CPR Certification added 33 training sites, for a total of 44.

3. Between March 17, 2022, and July 10, 2023, when Joos—not CPR LLC—filed his since-dismissed state court action for breach of the Agreement, which asserted no Lanham Act or intellectual property claim, CPR Certification added 26 more training sites, for a total of 70. Doc. 48-5.

4. CPR LLC applied to register the Logo on September 8, 2021. Doc. 47 at 9, ¶34. On December 23, 2021, CPR LLC also applied to register the words "CPR Certification" as a word mark—words Paragraph 7 expressly permits Halabi to use. **Exhibit A,** 89:17-92:13.

5. Asked whether there was any non-privileged reason he did not sue in February 2021 or after the March 2022 notice, Joos answered, "No." **Exhibit A,** 188:16-190:9.

6. Joos testified that Halabi changed the hero image and the three icons Paragraph 8 required to be changed, and that the confusion he attributes to Paragraph 8 concerns "solely the logo." **Exhibit A,** 101:16-102:12.

7. Joos testified that Paragraphs 7 and 8 were "broken up into separate paragraphs for ease of reading," but could not say how he knew that. **Exhibit A,** 97:2-98:6.

## MEMORANDUM OF LAW

### I. Joos Is Not Entitled to Summary Judgment on Count I.

#### A. Paragraph 7 requires a design that is "different," and Halabi's is.

Plaintiffs do not argue that the Agreement is ambiguous. This concession is dispositive. Where contract language is unambiguous, "no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses." *N. Pointe Cas. Ins. Co. v. M & S Tractor Servs., Inc.*, 62 So. 3d 1281, 1282 (Fla. 2d DCA 2011). A court "is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995) (cited at Doc. 47 at 14). Where a contract term is undefined, courts look to its ordinary dictionary meaning. *Parrish v. State Farm Fla. Ins. Co.*, 356 So. 3d 771, 776 (Fla. 2023).

Paragraph 7 contains a simple restriction: Halabi's logo "must be different than the one currently used by Fit." Doc. 38-1 ¶7. "Different" means "partly or totally unlike in nature, form, or quality" or "not the same." Doc. 48 at 10 & n.8. Defendants' verified evidence identifies eight design differences, including word order, the separation of the heart from the letters, the form of the "R," the shape and starting point of the wave, the shape and placement of the heart, the font, and the color. Doc. 48 at 4-5, ¶6. Joos himself conceded, reluctantly, that the waves "appear to be

different," that the "R might be different," that Halabi "moved the word certification to below the word CPR," and that Halabi's wave "[d]oes not appear to connect to the 'R.'" **Exhibit A,** 62:2-4, 65:10-12, 66:8-12, 67:19-21. Joos's counsel's March 2022 notice conceded a difference "in the location of the word 'Certification.'" Doc. 48-3 at 3. On this one issue, the parties appear to agree.

Plaintiffs' reading of the Agreement requires adding words the parties left out. Joos's counsel framed his objection in February 2021 as whether the logo was "*sufficiently* different." Doc. 48-2 (emphasis added). Joos testified that the logo had to be "different enough" and "completely different." **Exhibit A,** 57:17-20, 60:4-9, 160:1-3. And Plaintiffs now argue for a logo "different enough to prevent . . . confusion." Doc. 47 at 13. None of these qualifiers appear in Paragraph 7. Joos concedes Paragraph 7 "doesn't specify . . . how different it needs to be." **Exhibit A,** 58:17-19. Parties represented by sophisticated counsel who negotiated the Agreement "[o]ver a lengthy time period" (**Exhibit A,** 70:1-2) "must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so." *Leisure Resorts, Inc. v. City of W. Palm Beach*, 864 So. 2d 1163, 1166 (Fla. 4th DCA 2003) (citation omitted).

Nor is the result "absurd." Doc. 47 at 12-13. Two former partners, each continuing in the same business under the same permitted words, can (and did) agree that the departing partner may adopt a new heart-based design so long as it is different from Fit's. That is precisely Paragraph 7's bargain.

### B. Paragraph 8 does not convert Paragraph 7 into a "likelihood of confusion" covenant.

Joos argues that Paragraphs 7 and 8 must be read together to require a logo "different enough to prevent [consumer] confusion." Doc. 47 at 13. The plain text forecloses that reading. Paragraph 8 provides that, "[i]n addition to changing the logo *as set forth above* (i.e., appearance only and not the words), Halabi agrees to change the hero picture on his websites, and change the icons . . . so that a reasonable person viewing websites operated by Halabi will not be confused that the websites are operated by the same company as *the ones operated by Fit*." Doc. 38-1 ¶8 (emphasis added). Four features of that sentence defeat Plaintiffs' strained construction.

First, Paragraph 8 cross-references the logo change "as set forth above," incorporating Paragraph 7's standard rather than replacing it. Second, the parenthetical—"appearance only and not the words"—confirms that the logo obligation concerns the visual design and preserves Halabi's right to the words; it adds no confusion standard. Third, the "reasonable person" clause is tied only to the hero picture and icons, the additional website elements Paragraph 8 lists. Fourth, the comparison point is "the ones operated by Fit," the pre-dissolution websites—not CPR LLC's websites, which did not exist when the Agreement was signed.[2]

Where parties use different language in different provisions, Florida courts presume they intended different meanings. *Kel Homes, LLC v. Burris*, 933 So. 2d 699,

[2] Paragraph 8 imposes the identical obligation on Joos. Doc. 38-1 ¶8. That reciprocal obligation makes sense only if the purpose was to differentiate each party from the defunct Fit, not to make Halabi a guarantor against confusion with Joos.

703 (Fla. 2d DCA 2006). The parties used "different" in Paragraph 7 and "confused" in Paragraph 8. Reading "confused" into Paragraph 7 would not "give effect" to each provision, as Plaintiffs' own authority requires (Doc. 47 at 11 (quoting *Paddock v. Bay Concrete Indus., Inc.*, 154 So. 2d 313, 315 (Fla. 2d DCA 1963))); it would erase the distinction the parties drew and agreed to and rewrite the Agreement.

Halabi also satisfied Paragraph 8 as written. Joos admits Halabi changed the hero image and all three icons, and that his Paragraph 8 complaint concerns "solely the logo." **Exhibit A,** 101:16-102:12. A side-by-side comparison of CPR Certification's and Fit's Tampa websites confirms no reasonable person would confuse the two. Docs. 48-6, 48-7. Plaintiffs offer no evidence of confusion with a Fit website—only with CPR LLC, a comparison Paragraph 8 does not contemplate.

## II. Joos Is Not Entitled to Summary Judgment on Count II.

### A. Joos never gave Paragraph 12 notice of the YouTube claim.

Paragraph 12 of the Agreement requires the non-breaching party to "first contact the alleged breaching party directly in writing to resolve the dispute short of litigation," after which the alleged breaching party "will then be given fifteen (15) days to cure the alleged breach condition." Doc. 38-1 ¶12. Compliance with a contractual notice-and-cure provision is a condition precedent to suit. *Morris v. Knox Corp.*, 13 So. 2d 914, 915 (Fla. 1943); *Saunders Leasing Sys., Inc. v. Gulf Cent. Distrib. Ctr., Inc.*, 513 So. 2d 1303, 1307 (Fla. 2d DCA 1987).

Plaintiffs identify two writings. Doc. 47 at 15. Neither suffices. The February 25, 2021, email was an exchange about login credentials in which Joos called the

account "irrelevant," told Halabi to "just make a new youtube," and to "please stop contacting me about youtube." Doc. 47-16 at 2. A writing telling the recipient to stop raising a subject does not seek to "resolve the dispute short of litigation" or trigger a cure period; if anything, it demonstrates indifference and waiver.

The March 17, 2022, notice addressed a different "breach condition": Halabi's *new* logo alone, which it called "essentially identical" to Joos's, citing Pittsburgh, Chicago, Milwaukee, and Louisville website designs. Doc. 48-3 at 2-3. It did not mention YouTube, the Houston or Orlando channels, or the original Fit logo. *Id.* Yet Plaintiffs insist Count II "does not turn on how different the Infringing Logo is." Doc. 47 at 14. Plaintiffs cannot argue that Count II is a distinct breach while relying on a notice addressing only the Count I breach.

*Creative Choice Homes XXX, LLC v. Amtax Holdings 690, LLC*, 162 F.4th 1083, 1100 (11th Cir. 2025), does not help Joos. A notice may describe a default "in general terms," but it must still identify the default so the recipient can cure it. Notice of an allegedly similar new logo is not notice of residual legacy content on two video channels. And the claim that Halabi "had years . . . to cure" (Doc. 47 at 15) inverts the provision: the cure period runs from notice, and the items were promptly changed once identified in this action. Doc. 47 at 6, ¶19.

**B. Joos has failed to demonstrate a material breach.**

Even had the March 2022 notice covered the YouTube channels, Joos must establish a <u>material</u> breach. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). He cannot.

The channels were legacy assets distributed to Halabi under the Agreement, their residual content drew 0.1 and 0.2 hours of total watch time over nearly five years, and the Orlando channel has a single subscriber. Doc. 48 at 12-13. Joos himself called the channels "irrelevant." Doc. 47-16 at 2.

## III. CPR LLC Is Not Entitled to Summary Judgment on Its Trademark Counts (Counts V, VI, and IX).

To prevail under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), CPR LLC must prove that it has enforceable rights in a distinctive mark and that Defendants adopted a mark that is the same or confusingly similar such that consumers are likely to confuse the two. *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).[3] CPR LLC is wrong on every element of its claims.

### A. The Agreement authorized Halabi's use of a different logo (Seventh Affirmative Defense).

A trademark owner who authorizes another's use of a mark cannot sue for infringement based on the authorized use. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998) (infringement requires use "without the registrant's consent"); *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); Doc. 48 at 17-18. If the Court finds that Halabi's design is "different" as a matter of law, as Paragraph 7 requires, then CPR LLC's licensor consented to that use, and CPR LLC—which could have acquired no greater rights than its licensor held—cannot recast a contractually authorized logo as infringement.

---

[3] The Florida common-law claim in Count IX rises or falls with the federal claims. *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016).

### B. CPR LLC has failed to establish ownership, priority, and standing (Sixth, Eighth, Ninth, and Fifteenth Affirmative Defenses).

Plaintiffs' ownership argument rests on Joos's declaration that, at some unspecified time, he assigned "all of [his] rights, title, and interest in the Logo, including its common law trademark rights and its associated goodwill, to CPR LLC." Doc. 47-1 ¶15. But Joos previously testified that he owns the Logo and has merely "licensed CPR, LLC to use it," the license was "verbal and implied," and he remains "the sole owner." **Exhibit A,** 55:1-14. A party may not create a fact issue, much less eliminate one, with a declaration that contradicts prior sworn testimony. *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

Joos's deposition testimony cuts against him. As a mere licensee, CPR LLC cannot claim Fit's priority as its own, and its own use began at 12:01 a.m. on February 22, 2021—the same moment CPR Certification began using its logo. Doc. 47-1 ¶14; Doc. 48 at 3, 19.

Joos's new "assignment" theory is an attempt to tack Fit's pre-2021 use to CPR LLC. Doc. 47 at 17-18. But an assignee steps into the assignor's shoes only through a valid assignment of the mark together with its goodwill—a word Joos never mentioned in his deposition, and his prior testimony confirms no such assignment occurred.[4]

---

[4] CPR Certification, in turn, holds a federal registration for its heart design, which is prima facie evidence of its validity, ownership, and exclusive right to use the mark. 15 U.S.C. § 1057(b); Doc. 47-40. Plaintiffs contend the registration is irrelevant because it covers only the heart (Doc. 47 at 18), but Plaintiffs' own Second Amended Complaint alleges that the registered "Heart Mark" is a "material element" of the logo they challenge. Doc. 38, ¶77. Plaintiffs cannot rely on the heart as the infringing feature while dismissing the registration of that heart as beside the point.

### C. Plaintiffs' Logo is not distinctive (Sixteenth and Eighteenth Affirmative Defenses).

Plaintiffs assert the Logo is inherently distinctive (Doc. 47 at 17-18), but their own pleading alleges distinctiveness "at minimum through acquired distinctiveness" (Doc. 38 ¶¶115, 164), and they offer no evidence of secondary meaning—no survey, advertising expenditures, design-specific sales data, or consumer recognition.

The record instead shows that the Logo combines descriptive and commonplace elements. "CPR Certification" has been disclaimed. Doc. 47-38 at 1. Joos admits that "[i]t's not uncommon for CPR companies to use a heart" and that many are red. **Exhibit A,** 63:3-15. A red heart with a heartbeat line on a logo for cardiopulmonary resuscitation training is descriptive of the services and entitled to narrow protection. *See Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522-23 (11th Cir. 1991). Plaintiffs' reliance on the word "fanciful" in CPR Certification's design-mark description (Doc. 47 at 18) is misplaced: the word appears in a USPTO description of the specific stylized drawing, not an admission about the legal category of a different mark. Doc. 47-40. Plaintiffs' assertion that no third party uses a similar logo rests on Joos's declaration that he is "not aware" of one (Doc. 47-1 ¶19), which is contradicted by his own testimony about the prevalence of red hearts in the CPR field.

Plaintiffs also concede that "CPR LLC claims the Logo's design, not those words." Doc. 47 at 21. The confusion inquiry therefore must focus on whether the *design*—not the shared, permitted words—causes confusion. Plaintiffs cannot make that showing.

### D. There is no likelihood of confusion.

A finding of likelihood of confusion is not appropriate here because the factors Plaintiffs identify all favor the opposite conclusion:

**Strength.** For the reasons stated in Part III.C, Plaintiffs' Logo is weak: it combines disclaimed descriptive words with a heart-and-heartbeat image that Joos concedes is common in the CPR industry. A weak mark receives narrow protection, and the less distinctive the shared elements, the more weight small differences carry. *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335-36 (11th Cir. 1999); *Fla. Int'l Univ.*, 830 F.3d at 1257-58.

**Similarity.** Similarity turns on the "overall impressions" the marks create. *Frehling*, 192 F.3d at 1337. The marks differ in the eight respects identified in Part I.A. And to the extent the marks share elements, those elements are the words Paragraph 7 permits coupled with a generic idea of a red heart with a heartbeat line.

**Actual confusion.** Plaintiffs' scattered episodes of misdirected communications do not establish confusion caused by the *design*—the only thing CPR LLC claims. Doc. 47 at 21. They arise from the shared trade names "CPR Certification [City]," which the Agreement allowed both parties to use, or from shared addresses and Google listings. Doc. 47-1 ¶¶38-59. The Louisville episode arose from the same "CPR Certification Louisville" name (Doc. 47 at 8, ¶30; Doc. 48-3 at 4); the Chicago episode from a listed address (Doc. 47 at 8, ¶31); and the Bayside inquiry from a student who knew only a class address (Doc. 47-1 ¶41). The duplicate reviewers, by Plaintiffs' own

account, were not CPR LLC's customers. Doc. 47 at 7, ¶27. And the Pittsburgh competitor—which accused *both* companies—explained that the "visually dominant portion" of CPR LLC's mark is "CPR," which, followed by a city name, "creates the commercial impression" of which it complained. Doc. 47-27 at 2.

Halabi's testimony, quoted selectively by Plaintiffs, reinforces the point: "nobody's confused us because of the logo," "to a consumer CPR is CPR is CPR," and inattentive consumers "click on the first thing that pops" up, which is "where the confusion lies most of the time." Doc. 47-2 at 26-27. Such misdirected contacts say nothing about whether the design is confusingly similar. *See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982) (confusion of individuals casually acquainted with a business is worthy of little weight); *Fla. Int'l Univ.*, 830 F.3d at 1264-66 (affirming judgment for defendant despite misdirected communications where marks were weak).[5]

**Intent.** Plaintiffs ask the Court to infer bad faith from Halabi's knowledge that Joos would "inherit[ ] the logo" and his continued use after Joos objected. Doc. 47 at 20. The evidence shows the opposite: Halabi knew he had to adopt a different logo, commissioned one, and adopted it in reliance on a contract expressly permitting a different design with the same words, with counsel's contemporaneous written confirmation of compliance. Doc. 47-2 at 31, 33-36; Doc. 47-16 at 2. Continued use

---

[5] The volume of alleged confusion must also be weighed against the volume of business. Plaintiffs concede that CPR Certification has provided an estimated 50,000 training sessions to almost 500,000 students. Doc. 47 at 5, ¶16.

of a logo reasonably believed to be authorized, while the other party acquiesces for years, is not intent to trade on another's goodwill.

**Remaining factors.** Defendants do not dispute that the parties offer similar services through online channels, but those overlaps flow directly from the Agreement, which divided a single business between two former partners and expressly allowed each to use "CPR Certification" and city names. Doc. 38-1 ¶¶3, 6-7. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1206 (11th Cir. 2008), involved the same mark used by a former licensee after termination; it has no application where the parties contractually agreed that each would operate in the same field with the same words and different logos.

Plaintiffs' remaining responses to the defenses fail for the same reasons. The Sixteenth and Seventeenth Defenses (descriptiveness and fair use) remain relevant because Plaintiffs' confusion evidence relies on the shared descriptive words and city names. The Eighteenth Defense (crowded field) is supported by Joos's own admission. **Exhibit A,** 63:3-15. And the Twentieth Defense is supported by the undisputed watch-time evidence: there is no evidence that any consumer was ever confused by legacy content that drew a combined 0.3 hours of viewing in nearly five years. Doc. 48 at 13. Plaintiffs' wishful invocation of "self-evident" confusion (Doc. 47 at 21) is no substitute for evidence.[6]

---

[6] As to Plaintiffs' contributory infringement claims against Halabi, liability requires, first, direct infringement by another and, second, that the defendant intentionally induced that infringement or knowingly continued to participate in it. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1312 (11th Cir. 2019). Inducement of

## IV. Defendants' delay-based defenses are supported by the record (Tenth through Thirteenth Affirmative Defenses).

### A. Laches bars CPR LLC's claims.

Laches requires "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). Florida's four-year period for analogous claims is the touchstone, and delay beyond it supports a presumption of laches. *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1005-06 (11th Cir. 2021); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1546 (11th Cir. 1986). Plaintiffs must show no reasonable factfinder could find these elements. The opposite is true.

**Delay.** The delay is undisputed. Joos knew of the logo by February 24, 2021. Doc. 48-2. CPR LLC, Joos's licensee, did not assert its trademark claims until December 11, 2025—almost five years later. Doc. 1.

**Inexcusability.** Plaintiffs claim they "never sat on their rights," offering three excuses. Doc. 47 at 25. None withstands scrutiny. First, Joos's February 2021 and March 2022 objections were made by Joos, not CPR LLC; were met with Defendants' prompt written refusal and invitation to litigate; and were followed by thirteen- and sixteen-month periods of inaction. Doc. 47-16 at 2; Doc. 48-4. An objection followed

---

infringement requires knowledge of infringement, and Halabi's good-faith belief that his logo was contractually authorized and different defeats contributory liability. Doc. 47-16 at 2; Doc. 48-4. Plaintiffs' reliance on CPR Certification's growth after Plaintiffs' objections (Doc. 47 at 22-23) proves nothing more than that Halabi continued to operate under the logo he believed he was entitled to use—and that Plaintiffs acquiesced and waited years to test their belief in court.

by denial and years of silence does not excuse delay; it reinforces a defendant's reasonable belief that the plaintiff has accepted and acquiesced.

Second, the TTAB opposition was CPR Certification's challenge to CPR LLC's application. The TTAB decides only registrability, not infringement. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 143-45 (2015). Nothing prevented CPR LLC from suing for infringement, and its September 2021 application shows it was already asserting trademark rights. Doc. 47 at 9, ¶34. And the TTAB rejected only a single restrictive-covenant theory. Doc. 47-38 at 2 n.2, 9-10.

Third, Joos's state court action was filed by Joos alone and asserted no trademark claim. Doc. 48 at 7-8. Most importantly, asked whether he had any non-privileged reason for not suing after February 2021 or March 2022, Joos answered, "No." **Exhibit A,** 188:16-190:9. A party who refuses to disclose the reasons for its delay cannot obtain summary judgment that the delay was excused.

**Prejudice.** Prejudice exists where a defendant, during the plaintiff's delay, invests in building the business the plaintiff later seeks to enjoin or tax. *See Kason*, 120 F.3d at 1203. CPR Certification grew from 11 sites to 107, and each new site required a new lease, local instructors, and staff time. Doc. 48 at 21 n.15. Fifty-nine sites were added during periods when Plaintiffs had gone silent, and all were added before CPR LLC asserted any claim.

*Citibank, N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1546-47 (11th Cir. 1984), is inapposite. Unlike the defendants in *Citibank*, the objector (Joos) was not the

trademark plaintiff (CPR LLC); his objections were contractual; Defendants here responded with a reasoned position grounded in an agreement expressly authorizing a different logo; and Plaintiffs then went silent for years and, when Joos finally sued, he chose to omit CPR LLC and any trademark claim.

**B. The continuing tort doctrine does not bar Defendants' laches defenses.**

CPR LLC's principal argument in its attempt to avoid application of Defendants' delay-based defenses is the continuing tort doctrine. Doc. 47 at 23-24. Federal courts, however, hold that the continuing tort doctrine does not shelter plaintiffs from a laches defense in a trademark infringement claim. *See Bridgestone/Firestone Rsch., Inc. v. Auto. Club d'Ouest de la France*, 245 F.3d 1359, 1362-63 (Fed. Cir. 2001) (holding that the continuing wrong doctrine does not shelter plaintiff from the defense of laches).[7] Delay for purposes of applying laches here is measured from when Plaintiffs knew or should have known of Defendants' alleged infringement (i.e., February 24, 2021), not from the date of the most recent infringing act. *Pinnacle Advert.*, 7 F.4th at 1006-08; *Kason*, 120 F.3d at 1206.[8]

---

[7] *See also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999) (holding that continuing wrong of false advertising gives a strong justification for laches, because without laches a party aggrieved by the wrong could delay suit indefinitely); *EBSCO Indus., Inc. v. LMN Enters., Inc.*, 89 F. Supp. 2d 1248, 1253-55 (N.D. Ala. 2000) (rejecting plaintiff's argument that continued infringement bars defendant's laches argument).

[8] Defendants' unclean hands defense is not limited to delay. Plaintiffs withheld trademark claims for nearly five years, sued first on contract theories through a different plaintiff, and then filed this action combining both after Defendants had built a 107-site business. Doc. 48 at 7-9. Plaintiffs also sought, in December 2021, to register the words "CPR Certification" as a word mark—words Paragraph 7 expressly allows Halabi to use. **Exhibit A,** 89:17-92:13. That conduct is directly related to the marks at issue and to Plaintiffs' effort to use trademark law to obtain what the Agreement did not give them, and Defendants were injured by it. *See Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 450-51 (11th Cir. 1993).

## CONCLUSION

Plaintiffs' Motion asks the Court to adopt their rewritten version of Paragraph 7, resolve questions of ownership, distinctiveness, similarity, confusion, and intent in their favor despite a lack of evidence, and excuse a nearly five-year delay that Joos declined to explain under oath. Rule 56 permits none of that. Defendants respectfully request that the Court deny Plaintiffs' Motion for Partial Summary Judgment [Doc. 47] in its entirety and grant such further relief as the Court deems just and proper.

## DECLARATION

Pursuant to 28 U.S.C. § 1746, I have personal knowledge of the facts stated above, and I declare under penalty of perjury that the above facts are true and correct.

Sami Halabi, Manager of CPR Certification, LLC

Dated: November 18, 2026

Dated: November 18, 2026

Respectfully submitted,

*/s/ John A. Schifino*
John A. Schifino, Esq.
Florida Bar No. 0072321
Justin P. Bennett, Esq.
Florida Bar No. 112833
GUNSTER
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
jschifino@gunster.com
jbennett@gunster.com

and

Brittany J. Maxey-Fisher, Esq.
Florida Bar No. 44586
MAXEY-FISHER, PLLC
7650 W. Courtney Campbell Causeway,
Suite 110
Tampa, Florida 33607
Telephone: (727) 230-4949
bmaxeyfisher@maxeyfisher.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on November 18, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ John A. Schifino*
Attorney

ACTIVE:40760490.1